THOMAS E. DUCKWORTH [SBN 152369]
(tom@dplolaw.com)
MONIQUE OLIVIER [SBN 190385]
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 433-0333
Facsímile:  (415) 449-6556

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| FRED BOWERMAN, and JULIA BOWERMAN on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br>v.<br><br>FIELD ASSET SERVICES, LLC, and Does 1-25,<br>    Defendants. | Case No. C13-00057 WHO<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         August 13, 2014<br>Time:         2:00 p.m.<br>Courtroom:  2. 17th Floor<br>Judge:       Hon. William H. Orrick<br><br>Complaint Filed:   January 7, 2013 |

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION …..……………………………………………………….1

3   MEMORANDUM OF POINTS AND AUTHORITIES …....……………………………..…1

4     I.   INTRODUCTION  …........……………………………………………..…1

5     II.  PROCEDURAL HISTORY ……………………………………………………3

6     III. STATEMENT OF FACTS ………………………………………………………3

7
8        A. Defendant Controls Every Vendor and Every Job of Its Property
             Preservation Business ..………………………………………………...3

9           1.     Class Members Are Hired to Perform Handyman Work for FAS ………..4

10          2.     Class Members Work for FAS and Perform Their Jobs
11                Under the Same Standardized Policies and Procedures …………………5

12            a.   FAS Applies the Same Procedure For Assigning Work Orders
                  to All Class Members ……………………………..………………5
13
14            b.   FAS Requires All Vendors to Assess Each Property and Bid
                  Additional Work Not in the Work Order ………………………...……7

15            c.   FAS Supervises Class Members' Work Through Its
16                 Onerous Daily Update and Photo Documentation Requirements ……..…7

17            d.   FAS Provides Class Members with Detailed Instructions
                  and Specific Requirements Relating to Work Performed
18                 on Properties ………………………………………………………8

19            e.   FAS Enforces a Uniform Practice of Inspecting Work
20                 Performed by Class Members ………………………………………9

21            f.    FAS Controls Payment for Completed Work Orders …..………………9

22            g.   FAS Requires Class Members to Engage in Ongoing Training…………10

23            h.   FAS Scores the Performance of All California Vendors
24                 Using a Uniform Scorecard System ………………………………11

25            i.    FAS Enforces a Progressive Discipline Policy upon All
26                 California Vendors ………………………………………………11

27         B. FAS Does Not Pay California Vendors for All Hours It Suffers or
             Permits Them to Work, Denying Them Overtime Compensation …………….…..11
28

C. FAS Does Not Reimburse Vendors for Business Expenses Incurred ……………..12

IV. ARGUMENT

A. Applicable Legal Standard for Class Certification …………………………………...12

B. Plaintiffs Satisfy the Requirements of Rule 23(a) …………………………………13

    1.    The Class Is So Numerous that Joinder of All
        Members Is Impracticable ……………………………………………13

    2.    There Are Common Questions of Law and Fact that
        Can Provide Common Answers for All Class Members ………………..13

        a.    The Legal Test for Employment Is Common to the Class ………………14

        b.    Whether FAS Failed to Pay Overtime and Failed to
            Reimburse Business Expenses Is Common to the Class ………………..15

    3.    Plaintiffs' Claims Are Typical of the Claims of the Class ………………16

    4.    Plaintiffs Will Fairly and Adequately Protect the
        Interests of the Class ………………………………………………..17

C. Plaintiffs Satisfy the Requirements of Rule 23(b)(3) …………………………...17

    1.    Common Questions Predominate with Respect to
        Plaintiffs' Claims ……………………………………………………...18

        a.    Common Questions Predominate with Respect to the
            Central Issue of Misclassification …………………………………..18

        b.    Common Questions Predominate with Respect to
            Plaintiffs' Overtime and Reimbursement Claims ………………………..20

    2.    Class Resolution Is Superior to Other Available Methods
        for the Fair and Efficient Adjudication of this Controversy ……………..22

        a.    Class Certification Will Provide an Efficient and Beneficial
            Structure for the Resolution of This Dispute ……………………………23

        b.    This Action Is Manageable as a Class Action …………………………..23

V. CONCLUSION ……………………………………………………………………25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................18

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ....................18

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946) ..............................................24, 25

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) .......................19

*Arias v. Super. Ct.*, 46 Cal. 4th 969 (2009) ...................................................................12

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) .....................................13

*Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715 (2004) ..............................24, 25

*Breeden v. Benchmark Lending Corp.*, 229 F.R.D. 623 (N.D.Cal. 2005) ...............................14

*Bufil v. Dollar Fin. Group, Inc.*, 162 Cal. App. 4th 1193 (2008) ........................................23

*Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) .................19

*Dilts v. Penske Logistics, LLC*, 267 F.R.D 625 (S.D. Cal. 2010) .........................................20

*Donovan v. Williams Oil Co.*, 717 F.2d 503 (10th Cir. 1983) ............................................25

*Duran v. U.S. Bank*, S200923, 2014 WL 2219042 (Cal. May 29, 2014) ...............................25

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) .....................................24

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ..........................................12

*Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1 (2007) ...........................22

*Faigin v. Signature Group Holdings, Inc.*, 211 Cal.App.4th 726 (2012) ..............................14

*Gallardo v. AT & T Mobility, LLC*, 937 F.Supp.2d 1128 (N.D.Cal. 2013) (Wilken, J.) ..........12

*Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007) ..................................................................23

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) .............................................25

*Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK,
    2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ..................................................14, 15, 18, 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................... passim

iii

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................16

*Hopkins v. Stryker Sales Corp.*, 5:11-CV-02786-LHK,
    2012 WL 1715091 (N.D. Cal. May 14, 2012) ......................................................16, 22

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)..........................21

*In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*,
    273 F.R.D. 424 (N.D. Ind. 2008) ......................................................................19

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008) .............21

*Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007).....................21

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152, 1162 (9th Cir. 2001) ................................................................18

*Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09-cv-2268,
    2010 WL 3633177 (S.D. Cal. Sept. 13, 2010)................................................14, 15

*Martinez v. Combs, et al.*, 49 Cal. 4th 35 (2010) ....................................................14

*Morgan v. Family Dollar Stores, Inc.*, 557 F.3d 1233 (11th Cir. 2008)................................25

*Narayan v. EGL, Inc.*, 616 F. 3d 895 (9th Cir. 2010)..................................................14

*Norris-Wilson*, 270 F.R.D. 596 (S.D. Cal. 2010)................................................14, 19

*Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) .................................21

*Prince v. CLS Transp., Inc.*, 118 Cal. App. 4th 1320 (2004) ..........................................21

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010).................................................13

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)....................16, 23

*S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*, 48 Cal. 3d 341 (1989) ............1, 14, 15

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004) ..................................25

*Shepard v. Lowe's HIW, Inc.*, Case No. C 12-3893 JSW,
    2013 WL 4488802 (N.D. Cal. Aug. 19, 2013) ................................................ passim

*Smith v. Cardinal Logistics Mgmt. Corp.*, 07-2104 SC,
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008).........................................17, 19, 23

*Soto v. Diakon Logistics, Inc.*, No. 08-CV-33, 2010 WL 3420779
    (S.D.Cal. Aug. 30, 2010)................................................................14, 22

iv

*Stockwell v. City & Cnty. of San Francisco*, -- F.3d --, 2014 WL 1623736
    (9th Cir. Apr. 24, 2014)............................................................................................13, 15

*Valentino v. Carter-Wallace*, 97 F.3d 1227  (9th Cir. 1996)...........................................18, 22

*Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180 (N.D. Ill. Oct. 1, 2007)....................19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541 (2011)..............................12, 13

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ..................................................................17

*Whiteway v. FedEx Kinko's Office & Print Servs.*, 2006 WL 2642528
    (N.D. Cal. Sept. 14, 2006)...............................................................................................21

*Willis v. Ironwood Comm'ns, Inc.*, 2008 WL 2167175 (D. Or. May 22, 2008)......................21

*Willner v. Manpower Inc.*, C 11–02846 JSW, 2012 WL 1570789
    (N.D.Cal. May 3, 2012) (White, J.)..................................................................................12

*Wilson v. Kiewit Pac. Co.*, C 09-03630 SI, 2010 WL 5059522
    (N.D. Cal. Dec. 6, 2010) ...........................................................................................22, 25

*Wixon v. Wyndham Resort Dev. Corp.*, 2009 WL 3353445 (N.D. Cal. Oct. 19, 2009)...........16

*Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .............................................13

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010).......................18, 23

## STATUTES

Cal. Lab. Code. § 203 .............................................................................................................22

Cal. Lab. Code § 226 ..............................................................................................................24

Cal. Lab. Code § 1174 ............................................................................................................24

Cal. Lab. Code § 2699 *et seq.*.................................................................................................12

Cal. Lab. Code § 2802(a).........................................................................................................21

Cal. Lab. Code § 3357 ............................................................................................................14

California Labor Code and the California Industrial Welfare Commission
    Wage Order 2-2001, ¶ 7.................................................................................................24

Fed. R. Civ. P. 23(a) ................................................................................................................2

Fed. R. Civ. P. 23(a)(1) .................................................................................................13

Fed. R. Civ. P. 23(a)(2) .................................................................................................14

Fed. R. Civ. P. 23(b)(3) .....................................................................................2, 12, 17

Fed. R. Civ. P. 23(b)(3)(A)-(D) .....................................................................................22

**OTHER AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and
   Procedure, § 1768 (3d ed. 1986) .................................................................................17

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on August 13, 2014, at 2:00 pm or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor, before the Honorable William H. Orrick of the U.S. District Court for the Northern District of California, Plaintiffs Fred and Julia Bowerman will move the Court for an order, pursuant to Federal Rule of Civil Procedure 23, certifying a class (the "Class").

Plaintiffs seek certification of a Class consisting of all persons who at any time from January 7, 2009 up to and through the time of judgment (1) performed property preservation and maintenance services for Field Asset Services in California and (2) were designated and paid by Field Asset Services as independent contractors rather than as employees.

This motion is made pursuant to the Court's Order setting the briefing and hearing schedule for class certification. (Dkt. 41.) It is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying declarations and evidence, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Field Asset Services LLC ("FAS") intentionally misclassifies its entire California vendor network as independent contractors, without performing any due diligence to determine whether the vendors were actually employees. In doing so, FAS robs Plaintiffs Fred and Julia Bowerman and the other California vendors of important statutory protections such as payment for overtime and reimbursement of business expenses, which do not apply to independent contractors. This class action arises out of FAS's wage theft from its vendor network. California vendors who have performed work for FAS seek the return of their stolen overtime pay and reimbursement of business expenses and further seek associated penalties for intentionally misclassifying them as independent contractors.

Under California law, a worker performing services for an employer is presumed to be an employee *unless* the employer is able to establish that, among other things, the worker possesses the right to control the manner and means of performing the job, and the work in question is outside of the company's "regular business." *See S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*, 48 Cal. 3d 341, 350-51 (1989). FAS

1

1   uniformly and systematically controls every aspect of the vendor's performance. The vendors typically

2   perform janitorial and minor repair work on foreclosed homes.  The work requires little or no skill, just a

3   willingness to labor tirelessly for long hours every day.  FAS holds the contracts with the property owners and

4   controls assignment and payment of work to vendors.  The vendors are uniformly assigned multiple work

5   orders a day, which need to be completed within strict time deadlines so it is virtually impossible for a vendor

6   to work for any other company. FAS supervises the vendors by employing a team of inspectors to inspect the

7   vendors' work on completed properties.  FAS also requires the vendors to take hundreds of photos including

8   action photos per property to ensure the vendors are performing their work properly.  If FAS determines in its

9   sole discretion that a vendor has completed a work order, it pays the vendor. FAS pays vendors a piece rate

10  for each task to better control the vendor's work performance.

11          Indeed, the simplicity of the work, the supervision over the work performed, the required daily

12  updates of the progress of the work, the existence of a piece-rate based payment, the training, the instructional

13  memos, the discipline for poor performance and the total control over the timing of payment, cumulatively

14  underscore the vendors' status as employees and not independent contractors.

15          By this motion the Bowermans seek to represent the following class on their California state wage

16  and hour and related UCL claims:

17          All persons who at any time from January 7, 2009 up to and through the time of judgment (1)
            performed property preservation and maintenance services for Field Asset Services in California and
18          (2) were designated and paid by Field Asset Services as independent contractors rather than as
            employees.
19

20          Class certification is appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).  This action satisfies

21  all of the prerequisites to a class action in Rule 23(a): numerosity, commonality, typicality, and adequacy.

22  The proposed class is comprised of over 490 members.  The common, predominant issues are whether the

23  class members have been misclassified as independent contractors instead of employees, whether FAS has

24  failed to pay class members overtime compensation as required by California law, and whether FAS has

25  failed to reimburse class members for business expenses. The same legal structure of the Bowermans' case

26  applies equally to all proposed class members. The particulars of FAS's control over class members can be

27  determined from a common set of facts, mostly gleaned from FAS's own documents and testimony, which

28  highlight the uniform and systematic nature it treated the entire class.

2

1    Plaintiffs Fred and Julia Bowerman worked for FAS for over five years.  Like the other members of

2    the class, they performed property preservation services for FAS, and were designated and paid by FAS as

3    independent contractors rather than as employees. They will adequately represent the class, and have retained

4    counsel who, collectively, have the resources and experience to represent the class effectively.  Class

5    certification is appropriate under Rule 23(b)(3).  Common questions of law and fact with respect to the legal

6    sufficiency of FAS's policies and practices predominate over any individual issues, and a class action is

7    superior to litigating a vast multitude of separate actions, all examining the same evidence. As a result, the

8    Bowermans' motion to certify should be granted.

9    **II.     PROCEDURAL HISTORY**

10   Plaintiffs filed an original complaint on January 7, 2013 and a First Amended Complaint (FAC) on

11   February 15, 2013.  (Dkt. 1, 4.)  The FAC alleges claims for (1) breach of contract; (2) breach of the covenant

12   of good faith and fair dealing; (3) willful misclassification of independent contractor status; (4) failure to pay

13   overtime wages; (5) failure to pay wages for hours worked; (6) failure to pay reasonable business expenses;

14   (7) violations of the Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.* (UCL); and

15   (8) violations of the Private Attorney General Act, Labor Code §§ 2699 *et seq.* (PAGA).  The parties have

16   engaged in  discovery including the exchange of documents and the depositions of FAS and Plaintiffs.

17   **III.    STATEMENT OF FACTS**

18   **A.      Defendant Controls Every Vendor and Every Job of Its Property Preservation
              Business.**

19   FAS is a property preservation, maintenance, and repair services company for foreclosed and real

20   estate owned (REO) properties. (Declaration of Thomas E. Duckworth In Support of Plaintiffs' Motion for

21   Class Certification ("Duckworth Decl."), ¶¶ 6, 7, Ex. 1 [FAS002058]; Ex. 2 [PMK Depo. at 343:17-344:2].)

22   FAS contracts with mortgage and asset management companies nationwide and services more than 41,000

23   properties on a recurring basis. (Id., ¶¶ 6, 8, 24, Ex. 1 [FAS002058]; Ex. 3 [Fred Bowerman Depo. at 25:2-7];

24   Ex. 19.) FAS owns all contracts with its clients and controls all interaction with its clients, including pricing

25   and payments for services that are ultimately provided by the vendors. FAS forbids its clients from contacting

26   vendors and vendors do not have the opportunity to interact with FAS's clients. (Duckworth Decl., ¶¶ 7, 23,

27   Ex. 2 [Deposition of Sarah Hunter as the Person Most Knowledgeable for FAS ("PMK Depo.") at 65:23-

28

3

66:5; Ex. 18 [FAS001930-1932].)

FAS manages a network of "vendors" to service its clients. (Duckworth Decl., ¶ 6, Ex. 1 [FAS002058].) FAS advertises "[w]e handle every detail of the vendor relationship" and  "[o]ur technology and our expertise enable us to scrutinize every order from placement to completion…[t]his enables us to measure every vendor on every step of every job." (Duckworth Decl., ¶¶ 6, 7, 9, Ex. 1 [FAS002059]; Ex. 2 [PMK Depo. at 347:20-348:8]; Ex. 4.). FAS manages the training, quality control, bid management, and invoicing of the vendor relationship. (Id.) Plaintiffs and all other vendors are part of this vendor network as long-term workers, working virtually exclusively for FAS. (Duckworth Decl., ¶¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 18:7-9]; Ex. 5 [J. Bowerman Depo. at 12:19-22]; Declaration of Fred Bowerman ("F. Bowerman Decl.") ¶ 3; Declaration of Julia Bowerman ("J. Bowerman Decl.") ¶ 2; Supplemental Declaration of Jacqueline Acevedo ("Supp. Acevedo Decl.") ¶ 9; Supplemental Declaration of Janeen Cloud ("Supp. Cloud Decl.") ¶ 9; Declaration of Matthew J. Cohick ("Cohick Decl.") ¶ 2; Supplemental Declaration of Jared Frankian ("Supp. Frankian Decl.") ¶ 9; Supplemental Declaration of John Gowan ("Supp. Gowan Decl.") ¶ 10; Supplemental Declaration of David Haskill ("Supp. Haskill Decl.") ¶ 10; Declaration of Steve Mezin ("Mezin Decl.") ¶ 3; Supplemental Declaration of Tim Purkett ("Supp. Purkett Decl.") ¶ 10; Supplemental Declaration of Bennett Vinson ("Supp. Vinson Decl.") ¶ 2; Supplemental Declaration of Anthony Yager ("Supp. Yager Decl.") ¶ 12.) The Bowermans, like all other vendors, are treated like employees but classified as independent contractors by FAS.

### 1.   Class Members Are Hired to Perform Handyman Work for FAS.

The following facts are largely undisputed. FAS hires handymen and women to perform the work necessary to repair and maintain its clients' properties.  All applicants communicate with a FAS representative who assists them with the same application process. (Duckworth Decl., ¶¶ 7, 8, Ex. 2 [PMK Depo. at 19:24-20:1], Ex. 3 [F. Bowerman Depo. at 20:15-21:1].) The applicants are permitted to state the geographic area in which they wish to provide services and also check boxes for the types of services they will provide. (Id., ¶ 7, Ex. 2 [PMK Depo. at 20:24-21:1].)

As part of the application process, FAS provides each applicant a standard vendor packet. (Id., ¶ 7, Ex. 2 [PMK Depo. at 22:4-5].) While FAS provided different versions of the vendor packet to class members during the relevant class period (2009 to present), all vendor packets include the same key provisions: a

4

vendor qualification package, insurance coverage requirements, release authorization, zip code/territory specifications, at-will termination provision, a standardized pricing list for all services, and a list of services to be provided by the vendor. (Id. [PMK Depo. at 25:6-11; 27:19-28:1; 30:23-31:13; 35:15-36:24; 40:17-21; 42:6-43:10; 78:18-79:2].) The vendor qualification package contains instructions for performing tasks such as rekeys, board ups, debris removal, yard services, maid services, pool services, and snow removal, which vendors must acknowledge and initial. (Id. [PMK Depo. at 27:19-28:1; 31:1-20].) The package also contains provisions relating to invoices, photographs, quality control, timeframe for vendor work, and forfeiture of a vendor's right to place a lien on any property he services. (Id. [PMK Depo. at 35:5-38:19; 152:22-153:23].). There is no opportunity for applicants to modify any of the terms of the vendor packet dictating the manner in which and under what circumstances the services are to be performed, and indeed, no vendor has. (Id. [PMK Depo at 150:13-151:12].) Vendors may note territory requests, services to be provided, and requests for an increase to the standard pricing, which FAS can either accept or reject in its sole discretion.

Next in the hiring process, the applicant completes, signs and sends the vendor packet back to FAS for review and processing. (Duckworth Decl., ¶ 7, Ex. 2 [PMK Depo. at 48:3-6].) FAS then performs a thorough background check, which it has done since 2009. (Id. [PMK Depo. at 80:2-4; 80:11-20].) Next, FAS reviews the applicant's background check and insurance verification, and confirms the applicant has a business license, which FAS requires. (Id. [PMK Depo. at 84:10-13]; ¶ 8, Ex. 3 [F. Bowerman Depo. at 13:7-11; 40:24-41:5]). FAS then assigns a username and password for the applicant to interface its software systems (FAStrack, My FAStrack, and FAStrack Mobile) and sends the applicant a welcome letter. (Id., ¶ 7, Ex. 2 [PMK Depo. at 84:14-19; 84:20-85:3; 244:14-19].).

Finally, from 2010 until the present, before a vendor can start receiving work orders, FAS requires the vendor to engage in initial training regarding FAS' proprietary software. (Duckworth Decl., ¶ 7, Ex. 2 [PMK Depo. at 85:12-15; 87:2-22].).

### 2.   Class Members Work for FAS and Perform Their Jobs Under the Same Standardized Policies and Procedures.

#### a.   FAS Applies the Same Procedure For Assigning Work Orders to All Class Members.

Once vendors complete the initial hiring process, FAS assigns work orders exclusively on its

5

proprietary online database, known as FAStrack. (Duckworth Decl., ¶¶ 7, 8, 10, 11, Ex. 2 [PMK Depo. at 159:22-24; 161:1-16]; Ex. 3 [F. Bowerman Depo. at 30:21-31:6]; Ex. 5 [J. Bowerman Depo. at 97:19-24]; Ex. 6 [FAS001089]; J. Bowerman Decl. ¶ 4; Acevedo Decl. ¶ 3; Cloud Decl. ¶ 3; Cohick Decl. ¶ 4; Frankian Decl. ¶ 3; Gowan Decl. ¶ 3; Haskill Decl. ¶ 3; Mezin Decl. ¶ 4; Montes Decl. ¶ 3; Purkett Decl. ¶ 3; Vinson Decl. ¶ 3; Yager Decl. ¶ 4.) FAS notifies the vendors that a new work order is assigned through an email notification or a phone call. (Id.; Duckworth Decl., Ex. 2 [PMK Depo. at 160:8-161:25].) A work order typically includes information regarding the vendor, property location, FAS contact information, and detailed specifications on how each service is to be performed. (Duckworth Decl., ¶¶ 7, 12, Ex. 2 [PMK Depo. at 128:14-18**;** 129:4-11; 129:18-19; 129:22-23; 131:7-11; 158:15-159:17]; Ex. 7.) The vendors are prohibited from contacting FAS's clients regarding any work order and are not allowed to solicit or accept work directly from FAS's clients. (Id. ¶ 7, Ex. 2 [PMK Depo. at 65:23-66:5].)

FAS assigns work orders 7 days a week. (F. Bowerman Decl. ¶ 5; J. Bowerman Decl. ¶ 4; Acevedo Decl. ¶¶ 3, 4; Cloud Decl. ¶¶ 3, 4; Cohick Decl. ¶¶ 4, 6; Frankian Decl. ¶¶ 3, 4; Gowan Decl. ¶¶ 3, 5; Haskill Decl. ¶¶ 3, 4; Mezin Decl. ¶¶ 4, 5; Montes Decl. ¶¶ 3, 4; Purkett Decl. ¶¶ 3, 4; Vinson Decl. ¶¶ 3, 4; Yager Decl. at ¶ 3.) When vendors are assigned a group of work orders, they are not allowed to "cherry pick" among the assigned work orders. (F. Bowerman Decl. ¶ 6; J. Bowerman Decl. ¶ 5; Supp. Acevedo Decl. ¶ 2; Supp. Cloud Decl. ¶ 2; Cohick Decl. ¶ 7; Supp. Frankian Decl. ¶ 2; Supp. Gowan Decl. ¶ 2; Supp. Haskill Decl. ¶ 2; Mezin Decl. ¶ 15; Supp. Purkett Decl. ¶ 2; Supp. Vinson Decl. ¶ 3; Supp. Yager Decl. ¶ 3.)  For example, if a group contains 15 work orders, a vendor cannot select work orders at her discretion. (J. Bowerman Decl. ¶ 5.)

Once FAS assigns a work order, it "expect[s] acceptance or decline responses within a few hours, but will reassign a work order to another vendor, with or without notification, if a response has not been received within 24 hours." (Duckworth Decl., ¶¶ 7, 11, Ex. 2 [PMK Depo. at 126-20-22; 162:1-11; 174:17-175:11]; Ex. 6 [FAS001089].) FAS requires the vendors to complete an accepted work order within 3 days. (Id., ¶ 7, 8, Ex. 2 [PMK Depo. at 175:19-24]; Ex. 3 [F. Bowerman Depo. at 73:15-20; 100:22-24]; J. Bowerman Decl. ¶ 7; Acevedo Decl. ¶ 3; Cloud Decl. ¶ 3; Frankian Decl. ¶ 3; Gowan Decl. ¶ 3; Haskill Decl. ¶ 3; Mezin Decl. ¶ 4; Montes Decl. ¶ 3; Purkett Decl. ¶ 3; Vinson Decl. ¶ 3; Yager Decl. ¶ 4.) In theory the Bowermans and other vendors can decline a work order.  In practice, however, if they do, FAS penalizes them for doing so by, among other things, providing less work in the future. (Duckworth Decl., ¶ 8, Ex. 3 [F. Bowerman Depo. at

6

39:9-22; 152:20-153-10].) FAS claims it allows vendors to set a cap on the number of work orders, but it expects vendors to accept work orders; therefore vendors consistently exceed their caps. (Duckworth Decl., ¶ 8, Ex. 3 [F. Bowerman Depo. at 153:15-154:1]; J. Bowerman Decl. ¶ 6; Supp. Frankian Decl. ¶ 3; Supp. Gowan Decl. ¶ 3; Supp. Haskill Decl. ¶ 3; Mezin Decl. ¶ 16; Supp. Purkett Decl. ¶ 3; Supp. Vinson Decl. ¶4).

### b.  FAS Requires All Vendors to Assess Each Property and Bid Additional Work not in the Work Order.

FAS calls vendors the "eyes and the ears at a property," and requires them to assess the condition of the properties. (Duckworth Decl., ¶¶ 7, 11, Ex. 2 [PMK Depo. at 88:8-89:7; 152:22-25]; Ex. 6 [FAS001092].) FAS makes it clear to vendors that "all deviations from standard services require[s] a bids prior to any work being done" and that "all work must be authorized directly through FAS." (Id., ¶ 11, Ex. 6 [FAS001090]; see also id., ¶¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 37:17-23]; Ex. 5 [J. Bowerman Depo. at 125:21-127:6].)

### c.  FAS Supervises Class Members' Work through Its Onerous Daily Update and Photo Documentation Requirements.

FAS systematically requires vendors, once at the job site, to submit daily updates throughout the day on the progress of all assigned work orders.  (Duckworth Decl., ¶ 8, Ex. 3 [F. Bowerman Depo. at 74:20-25; 75:11-25]; J. Bowerman Decl. ¶ 8; Acevedo Decl. ¶ 4; Cloud Decl. ¶ 4; Cohick Decl. ¶ 6; Frankian Decl. ¶ 4; Gowan Decl. ¶ 5; Haskill Decl. ¶ 4; Mezin Decl. ¶ 5; Montes Decl. ¶ 4; Purkett Decl. ¶ 4; Vinson Decl. ¶ 4; Yager Decl. ¶ 5.)  FAS "would send additional emails each day asking when the job would be finished and why it was taking longer than expected" and "expected a response to these email update requests within 24 hours, even on Saturdays." (F. Bowerman Decl. ¶ 9;  see also J. Bowerman Decl. ¶ 8; Acevedo Decl. ¶ 4; Cloud Decl. ¶ 4; Cohick Decl. ¶ 6; Frankian Decl. ¶ 4; Gowan Decl. ¶ 5; Haskill Decl. ¶ 4; Mezin Decl. ¶ 5; Montes Decl. ¶ 4; Purkett Decl. ¶ 4; Vinson Decl. ¶ 4; Yager Decl. ¶ 5.). If FAS does not receive updates, it contacts the vendors by phone. (Id.) FAS closely supervises the vendors' daily progress on the work orders through this constant contact.

 FAS also requires all vendors to take before, during, and after photos "from the same perspective, frame, and angle" of all work performed at the job sites as another tool to supervise its vendor network. (Duckworth Decl., ¶¶ 7, 8, 10, 11, Ex. 2 [PMK Depo. at 196:20-197:9; 219:20-23]; Ex. 3 [F. Bowerman Depo. at 76:14-77:6]; Ex. 5 [J. Bowerman Depo. at 101:19-103:23]; Ex. 6 [FAS001091]; J. Bowerman Decl.

¶ 13, Ex. 3;  Acevedo Decl. at ¶ 7; Cloud Decl. ¶ 7; Cohick Decl. ¶ 11; Frankian Decl. ¶ 6; Gowan Decl. ¶ 6; Haskill Decl. ¶ 7; Mezin Decl. ¶ 8; Montes Decl. ¶ 7; Purkett Decl. ¶ 7; Vinson Decl. ¶ 6; Yager Decl. ¶ 7.) FAS requires vendors to upload the photos through its proprietary FAStrack Mobile application, which time stamps each photo and identifies the geographic location of the photos. (Duckworth Decl., ¶¶ 7, 8, Ex. 2 [PMK Depo. at 241:20-243:5]; Ex. 3 [F. Bowerman Depo. at 145:20-146:12]; J. Bowerman Decl. ¶ 13, Ex. 4; F. Bowerman Decl. ¶ 10; Acevedo Decl. at ¶ 7; Cloud Decl. ¶ 7; Cohick Decl. ¶ 11; Frankian Decl. ¶ 6; Gowan Decl. ¶ 6; Haskill Decl. ¶ 7; Mezin Decl. ¶ 8; Montes Decl. ¶ 7; Purkett Decl. ¶ 7; Vinson Decl. ¶ 6; Yager Decl. ¶ 7.)  The "during" or "action" photo requirement is to ensure vendors are performing the work to FAS's stringent specifications including using specific tools or products such as air compressors, vacuums and air fresheners. (Duckworth Decl., ¶¶ 7, 8, 10, Ex. 2 [PMK Depo. at 219:20-23]; Ex. 3[F. Bowerman Depo. at 35:4-15]; Ex. 5 [J. Bowerman Depo. at 101:19-103:23]; Acevedo Decl. ¶¶ 11, 12; Cloud Decl. ¶ 12; Cohick Decl. ¶¶ 15, 16; Frankian Decl. ¶¶ 7, 8; Gowan Decl. ¶¶ 9, 10; Haskill Decl. ¶¶ 12, 13; Mezin ¶¶ 12, 13; Montes Decl. ¶¶ 12, 13; Purkett Decl. ¶¶ 12, 13; Vinson Decl. ¶ 11; Yager Decl. ¶ 9.)

### d.   FAS Provides Class Members with Detailed Instructions and Specific Requirements Relating to Work Performed on Properties.

In addition to the specifications in the work orders, FAS has a uniform practice of providing detailed instructions to vendors regarding how to perform work on the properties they service.  (Duckworth Decl., ¶ 7, Ex. 2 [PMK Depo. at 205:15-20; 220:25-221:3; 295:5-297:5; 297:15-298:12; 299:2-5]; F. Bowerman Decl. ¶ 11; J. Bowerman Decl. ¶ 10; Supp. Acevedo Decl. ¶ 3; Supp. Cloud Decl. ¶ 3; Cohick Decl. ¶ 17; Supp. Frankian Decl. ¶ 4; Supp. Gowan Decl. ¶ 4; Supp. Haskill Decl.¶ 4; Mezin Decl. ¶ 17; Supp. Purkett Decl. ¶ 4; Supp. Vinson Decl. ¶ 5; Supp. Yager Decl. ¶ 7.) Even a small sampling of the memoranda sent by FAS underscores the control FAS exercised over class members. (See, e.g.,: "When placing shrink wrap on the toilets, please poke two holes in the wrap to allow for ventilation;" "Please date and initial the zip tie with your company name and the person installing the tie using a permanent marker;" "The quality of work must improve & you all are the key to our success!!;" "Bleeder pins should be removed only if necessary to drain a Monoflow Boiler System. If removal is necessary, you must provide action photos of removing the bleeder pin and after photos replacing a bleeder pin." (Duckworth Decl., ¶ 7, 13-17, Ex. 2 [PMK Depo.] at 294:10-297:5; 297:15-22; 299:8-15; 300:2-7; 303:20-304:6; Exs. 8-12; J. Bowerman Decl., ¶¶ 11, 12, Exs. 2, 3.)

8

e.    **FAS Enforces a Uniform Practice of Inspecting Work Performed by Class Members.**

Once the Bowermans and all other vendors submit all the required information on FAStrack to complete a work order, FAS inspects the work they perform and photos they submit. (F. Bowerman Decl. ¶ 13; J. Bowerman Decl. ¶ 17; Acevedo Decl. ¶ 10; Cloud Decl. ¶ 10; Cohick Decl. ¶ 14; Haskill Decl. ¶ 10; Mezin Decl. ¶ 11; Montes Decl. ¶ 10; Purkett Decl. ¶ 10; Vinson Decl. ¶ 9; Yager Supp. Decl. ¶ 5 ; Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 219:3-7].) FAS tells vendors that "[p]hotographs from every work order are reviewed by FAS' Quality Control department and every property is physically inspected…[s]hould unacceptable or incomplete work be found, you will be required to go back to the property to correct your work at no cost." (Duckworth Decl. ¶ 11, Ex. 6 [FAS001091]).

FAS further warns vendors that they fail to respond as FAS dictates, "FAS will utilize the services of another vendor to remedy the problem at the expense of the original vendor." (Id.; ¶ 7, Ex. 2 [PMK Depo. at 222:11-18; 332:11-22]; F. Bowerman Decl. ¶ 9; J. Bowerman Decl. ¶ 8; Acevedo Decl. ¶ 6; Cloud Decl. ¶ 6; Cohick Decl. ¶ 10; Haskill Decl. ¶ 6; Mezin Decl. ¶ 5; Montes Decl. ¶ 6; Purkett Decl. ¶ 6; Vinson Decl. ¶ 9; Supp. Yager Decl. ¶ 6.) FAS employ inspectors to examine the class members' work. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 197:10-21].)

f.    **FAS Controls Payment for Completed Work Orders.**

FAS requires that all photos and requests for payments "must be uploaded to the website within 24 hours of the work order completion date." (Duckworth Decl. ¶¶ 7, 11, Ex. 2 [PMK Depo at 176:2-16]; Ex. 6 [FAS001089-1091].) Vendors *must* follow this procedure in order to request payment. (Id., ¶¶ 7, 8, Ex. 2 [PMK Depo. at 177:16-179:4]; Ex. 3 [F. Bowerman Depo. at 33:11-22]; J. Bowerman Decl. ¶ 15; Supp. Acevedo Decl. ¶ 4; Supp. Cloud Decl. ¶ 4; Cohick Decl. ¶ 18; Supp. Frankian Decl. ¶ 5; Supp. Gowan Decl. ¶ 5; Supp. Haskill Decl. ¶ 5; Mezin Decl. ¶ 18; Supp. Purkett Decl. ¶ 5; Supp. Vinson Decl. ¶ 6; Supp. Yager Decl. at ¶ 8.) FAS's policy is to not pay vendors for any work until it has reviewed the photos and approved the work. (Duckworth Decl. ¶11, Ex. 6 [FAS001090-1091].)

FAS has the sole discretion to approve or decline work orders marked completed by all vendors. (Duckworth Decl., ¶ 7, Ex. 2 [PMK Depo. at 194:16-195:1].) As a result, the Bowermans, like all other vendors, were paid after FAS approved a work order. (Id.) In addition, if FAS initially declines payment of a

9

work order and later reverses the decline, FAS automatically assesses the vendors a 10% penalty on the entire work order. (Duckworth Decl., ¶¶ 7, 11, Ex. 2 [PMK Depo. at 152:22-25; 196:14-19]; Ex. 6 [FAS01090].) FAS also declines payment of a work order if vendors do not comply with every minute detail of the work orders. (J. Bowerman Decl. ¶ 16, Ex. 6.) FAS regularly reassigns completed work orders it declines, issues chargebacks or debit adjustments to the initial vendor's payables, or does not pay for the entire work performed. (Duckworth Decl. ¶ 8, Ex. 3 [F. Bowerman Depo. at 33:11-18]; J. Bowerman Decl. ¶ 8; Acevedo Decl. ¶ 3; Cloud Decl. ¶ 3; Cohick Decl. ¶ 4; Frankian Decl. ¶ 3; Gowan Decl. ¶ 3; Haskill Decl. ¶ 3; Mezin Decl. ¶ 4; Montes Decl. ¶ 3; Purkett Decl. ¶ 3; Vinson Decl. ¶ 4; Supp. Yager Decl. ¶ 6.)

**g.   FAS Requires Class Members to Engage in Ongoing Training.**

FAS requires all California vendors to engage in mandatory training directly related to the work they perform[1] as illustrated by this typical e-mail: "[t]his is a follow up email to inform you of the final mandatory training classes. If you have not yet registered please do so today!...[p]lease remember **this training is mandatory. If you are not in attendance of a makeup class, your account will be placed on hold.**" (J. Bowerman. Decl. ¶ 14, Ex. 5) (emphasis added).)

FAS requires all vendors to engage in training, on how to complete various tasks performed by vendors.  (Duckworth Decl. ¶¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 55:13-56:10; 70:5-25; 109:3-14]; Ex. 5 [J. Bowerman Depo. at 40:21-42:3]; Acevedo Decl. ¶ 13; Supp. Cloud Decl. ¶ 5; Cohick Decl. ¶ 20; Frankian Decl. ¶¶ 9, 10; Supp. Frankian Decl. ¶ 6; Supp. Gowan Decl. ¶ 6; Supp. Haskill Decl. ¶ 6; Mezin Dec. ¶ 19; Montes Decl. ¶ 14; Purkett Decl. ¶ 14; Supp. Purkett Decl. ¶ 6; Vinson Decl. ¶ 12; Supp. Vinson Decl. ¶ 7; Yager Decl. ¶ 10; Supp. Yager Decl. ¶ 9.) FAS also provides training guides to all vendors, which includes step by step instruction on how to perform particular types of work, such as a winterization of a property or control of work orders and how to get passed FAS' quality control. (Duckworth Decl., ¶¶ 7, 18, 19, 25, Ex. 2 [PMK Depo. at 293:6-8; 303:6-13]; Exs.13, 14, 20.)

---

[1] At the PMK deposition, FAS repeatedly testified that it did not train vendors.  Given the wealth of FAS documentation about training, this assertion is disingenuous and casts a shadow on the PMK's credibility on this issue. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo.] at 85:4-86:19; 286:12-18; 288:11-16.)

**h.   FAS Scores  the Performance of All California
Vendors Using a Uniform Scorecard System.**

FAS continuously scores the work performance of all vendors by using a scorecard system, which

scores completion rate, *amount of work declined*, inspection results, proper photos taken and broker's signoff.

(Duckworth Decl., ¶ 7, 10, 20, 21, Ex. 2 [PMK Depo. at 225:1-2; 226:6-10; 226:22-229-18; 228:12-17;

231:19-232:1]; Ex. 5 [J. Bowerman Depo. at 109:11-23; 123:25-124:4]; Exs. 15, 16; F. Bowerman Decl. ¶

14; Acevedo Decl. ¶¶ 5, 8, 9; Cloud Decl. ¶¶ 5, 8, 9; Cohick Decl. ¶ 9; Frankian Decl. ¶ 5; Gowan Decl. ¶ 4;

Haskill Decl. ¶¶ 5, 8, 9; Mezin Decl. ¶¶ 6, 9, 10; Montes Decl. ¶¶ 5, 8, 9; Purkett Decl. ¶¶ 5, 8, 9; Vinson

Decl. ¶¶ 5, 7, 8; Supp. Yager Decl. ¶ 4.) If a vendor's scorecard rating is low he or she can be disciplined,

deactivated or suffer a reduction in future work. (Acevedo Decl. ¶¶ 5, 8, 9; Cloud Decl. ¶¶ 5, 8, 9; Cohick

Decl. ¶ 9; Frankian Decl. ¶ 5; Gowan Decl. ¶ 4; Haskill Decl. ¶¶ 5, 8, 9; Mezin Decl. ¶¶ 6, 9, 10; Montes

Decl. ¶¶ 5, 8, 9; Purkett Decl. ¶¶ 5, 8, 9; Vinson Decl. ¶¶ 5, 7, 8; Supp. Yager Decl. ¶ 4.)

**i.   FAS Enforces a Progressive Discipline Policy upon All California
Vendors.**

FAS also has a written policy to counsel and discipline vendors.  (Duckworth Decl., ¶ 7, Ex. 2 [PMK

Depo. at 217:8-25; 218:1-17].) FAS's progressive discipline policy results in a charge to the vendors'

payables, verbal and written reprimands, suspension, and culminates in immediate termination of a vendor's

employment. (Id. ¶¶ 7, 22 [PMK Depo. at 103:7-12; 211:3-8]; Ex. 17 [FAS01009-1012].)

**B.      FAS Does Not Pay California Vendors for All Hours It Suffers or Permits Them
to Work, Denying Them Overtime Compensation.**

Because FAS classifies all vendors as independent contractors it has a policy of not paying overtime

for any time class members worked over 8 hours a day or 40 hours a week. (Duckworth Decl. ¶ 8, 10, Ex. 3

[F. Bowerman Depo. at 148:16-24]; Ex. 5 [J. Bowerman Depo. at 66:7-67:16]; F. Bowerman Decl. ¶ 15;

Supp. Acevedo Decl. ¶ 8; Supp. Cloud Decl. ¶ 8; Cohick Decl. ¶ 21; Supp. Frankian Decl. ¶ 8; Supp. Gowan

Decl. ¶ 9; Supp. Haskill Decl. ¶ 9; Mezin Decl. ¶ 21; Supp. Purkett Decl. ¶ 9; Supp. Vinson Decl. ¶ 9; Supp.

Yager Decl. ¶ 11.) The Bowermans and other vendors regularly worked on average over 10 hours a day and

often 6 days a week during their employment with FAS. (Id.)

### C. FAS Does Not Reimburse Vendors for Business Expenses Incurred.

FAS has a practice of not reimbursing the Bowermans and all other vendors for the following expenses: gas mileage, insurance, job and office supplies, tools and equipment purchase and rental, equipment and vehicle repair, payments to workers, telephone, and dump fees. (Petersen Decl. ¶ 3, Ex. 1; Duckworth Decl. ¶ 8, Ex. 3 [F. Bowerman Depo. at 132:13-21; 134:4-6: 136:2-12:137:12-17]; J. Bowerman Decl. ¶ 20; Supp. Acevedo Decl. ¶ 10; Supp. Cloud Decl. ¶ 10; Cohick Decl. ¶ 22; Supp. Frankian Decl. ¶ 10; Supp. Gowan Decl. ¶ 11; Supp. Haskill Decl. ¶ 9; Mezin Decl. ¶ 22; Supp. Purkett Decl. ¶ 11; Supp. Vinson Decl. ¶ 10; Supp. Yager Decl. ¶ 13.)  FAS does not reimburse for these expenses because it considers the vendors independent contractors. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 354:5-10].)

## IV. ARGUMENT

### A. Applicable Legal Standard for Class Certification.[2]

Class certification is proper if a plaintiff satisfies the requirements of Federal Rule of Civil Procedure 23(a) - numerosity, commonality of facts or law, typicality, and adequacy of representation - and one prong of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2551 (2011).  Because Plaintiffs seek certification pursuant to Rule 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

While the "rigorous analysis" a court must conduct may entail some overlap with the merits of Plaintiffs' underlying claims, the court's inquiry is limited to whether common questions exist, "not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco*

---

[2]  Plaintiffs do not seek certification of their claims for breach of contract, breach of covenant of good faith and fair dealing, or the UCL claims not predicated on the Labor Code violations.  (See FAC, Dkt. 4 ¶¶ 36-44, 67-74.) Plaintiffs also pursue civil penalties under the California Private Attorney General Act, Cal. Lab. Code § 2699 *et seq.* ("PAGA").  The PAGA authorizes an aggrieved employee to act as a private attorney general to recover civil penalties "on behalf of himself . . . and other current or former employees."  Cal. Lab. Code § 2699(a).  Class action requirements do not apply to enforcement actions brought under the PAGA. *Arias v. Super. Ct.,* 46 Cal. 4th 969, 984 (2009); *Gallardo v. AT & T Mobility*, LLC, 937 F.Supp.2d 1128, 1137–38 (N.D.Cal. 2013) (Wilken, J.); *Willner v. Manpower Inc.*, C 11–02846 JSW, 2012 WL 1570789, *9 (N.D.Cal. May 3, 2012) (White, J.).

*Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). "To hold otherwise would turn class certification into a mini-trial." *Id.*

The decision to certify a class falls within the discretion of this Court. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 716 (9th Cir. 2010); *Wolin v. Jaguar N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) ("[w]hen reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification.") (quotation omitted).

> **B.      Plaintiffs Satisfy the Requirements of Rule 23(a).**
>
> **1.      The Class Is So Numerous that Joinder of All Members Is Impracticable.**

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, FAS has produced a class list with over 490 vendors – far too many to practically join in a single suit. (Duckworth Decl. ¶ 26.) The numerosity requirement is satisfied.

> **2.      There Are Common Questions of Law and Fact that Can Provide Common Answers for All Class Members.**

Under Rule 23(a)(2), Plaintiffs must show one or more questions of law or fact common to the class. "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted). "All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The claims "must depend upon a common contention … of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2551.

Under the "permissive" and "flexible" standard for commonality under Rule 23(a)(2), either "shared legal issues or a common core of facts" suffices. *Rodriguez*, 591 F.3d at 1122. As the Supreme Court has noted, "even a single [common] question will do." *Dukes*, 131 S.Ct. at 2556; *see Stockwell v. City & Cnty. of San Francisco*, -- F.3d --, 2014 WL 1623736 (9th Cir. Apr. 24, 2014) ("Rule 23(a)(2) requires ... 'a single significant question of law or fact.'").

1

            **a.**        **The Legal Test for Employment Is Common to the Class.**

2

      Plaintiffs' claims for misclassification, unpaid overtime and unreimbursed business expenses all rest

3

principally upon resolution of a single common issue: whether putative class members are misclassified as

4

independent contractors under California law.

5

      Under California law, a person performing work for another is presumed to be an employee. *Narayan*

6

*v. EGL, Inc.*, 616 F. 3d 895, 900-03 (9th Cir. 2010); *see* Lab. Code, § 3357. The employer has the burden of

7

proof to overcome this presumption. *Faigin v. Signature Group Holdings, Inc.,* 211 Cal.App.4th 726, 737, fn.

8

4 (2012); *Borello*, 48 Cal. 3d at 349, 354. Courts considering whether an employee has been misclassified as

9

an independent contractor ask "whether the person to whom service is rendered has the right to control the

10

manner and means of accomplishing the result desired." *Borello*, 48 Cal. 3d at 350.  "[I]t is the *right* to

11

control, not the exercise of the right, which bears on the status of the work arrangement." *Borello,* 48 Cal. 3d

12

at 357 n.9 (emphasis added).[3]

13

      Courts in this Circuit have held that "whether workers are properly classified as employees or

14

independent contractors is, by itself, a factual and legal issue that satisfies Rule 23(a)." *Norris-Wilson*, 270

15

F.R.D. 596, 604 (S.D. Cal. 2010); *Guifu Li v. A Perfect Franchise, Inc*., No. 5:10-CV-01189-LHK, 2011 WL

16

4635198 (N.D. Cal. Oct. 5, 2011) ("District Courts throughout this circuit have found that commonality is

17

met when the proposed class of plaintiffs asserts that class members were improperly classified as

18

independent contractors instead of employees."); *see also Shepard v. Lowe's HIW, Inc.,* Case No. C 12-3893

19

JSW, 2013 WL 4488802, *4-5 (N.D. Cal. Aug. 19, 2013); *Breeden v. Benchmark Lending Corp*., 229 F.R.D.

20

623, 629 (N.D.Cal. 2005); *Soto v. Diakon Logistics, Inc.,* No. 08-CV-33, 2010 WL 3420779, *2 (S.D.Cal.

21

Aug. 30, 2010).  Further, "variation among individual claims does not defeat a finding of commonality under

22

Rule 23(a)(2) so long as there are common factual or legal questions." *Lopez v. G.A.T. Airline Ground*

23

*Support, Inc.,* No. 09-cv-2268, 2010 WL 3633177, *4 (S.D. Cal. Sept. 13, 2010) (quotation omitted).

24

      The control test set forth in *Borello* presents common questions and will be answered here by

25

26

27

      [3] There are three alternate tests for employment.  A business is an employer where it (1) exercises control over the wages, hours or working conditions; (2) suffers or permits individuals to work; *or* (3) engages individuals to work. *Martinez v. Combs, et al.*, 49 Cal. 4th 35, 63-66, 71 (2010).  While Plaintiffs can succeed on any of these theories, and all lend themselves to common questions and answers, most courts apply the *Borello* "control" test to answer the question of employment in the independent contractor arena.

28

common proof.  As FAS admits, it "does and always has considered the vendors independent contractors…[t]hat's the business model." (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 354:5-10.) All prospective class members have suffered the identical harm -- they were improperly classified as independent contractors rather than as employees -- and will rely on the same legal and factual arguments to prove that FAS improperly misclassified them. Whether FAS employs class members is a common question – the answer will "be so for all class members or for none; their claims rise and fall together." *Stockwell*, -- F.3d --, 2014 WL 1623736.

The contracts between FAS and class members are all materially identical.  They all contain, an at-will termination provision, and detailed instructions for performing and completing job tasks. (Duckworth Decl., Ex. 2 [PMK Depo.] at 25:6-11; 27:19-28:1; 30:23-31:20; 35:15-36:24; 40:17-21; 42:6-43:10; 78:18-79:2.) Any minor variations between the contracts are irrelevant to the issue of right to control, but rather address additional and different requirements imposed by FAS on the vendor network as a whole over time. Whether FAS has the right to control the manner of performance is therefore common among all class members. Because a common question has been identified, "variation among individual claims does not defeat a finding of commonality." *Lopez*, 2010 WL 3633177, *4.

FAS also concedes that its policies and practices apply to class as a whole.  For example, all vendors go through the same application process, background check, and training.  (See, e.g.,  (Duckworth Decl., Ex. 2 [PMK Depo.] at 48:3-6; 80:2-4; 80:11-20; 84:10-85:3, 85:12-15; 87:2-22; 244:14-19; Duckworth Decl., Ex. 3 [F. Bowerman Depo.] at 13:7-11; 40:24-41:5.) In addition and without delving too deeply into the merits, the secondary indicia of employment noted in *Borello* also present a host of common questions capable of classwide resolution. *Borello*, 48 Cal. 3d at 351.  For example, whether or not the work is "part of the regular business" of FAS, the kind of occupation, and the method of payment are necessarily common to the class because they focus solely on FAS's business and conduct. *Id.*; *See Shepard*, 2013 WL 4488802, *4-6 (finding secondary *Borello* factors present common questions); *Li*, 2011 WL 4635198, *12 (same).

### b.    Whether FAS Failed to Pay Overtime and Failed to Reimburse Business Expenses Is Common to the Class.

Plaintiffs' claims for overtime and reimbursement also present common questions.  While FAS disputes these claims on the merits, the legal structure remains the same for the entire class.

15

Because FAS classifies all class members as independent contractors, as a policy it does not pay overtime wages. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 119:11-120:6, 354:5-10].)  The evidence demonstrates that class members routinely work more than eight hours in a day or forty hours in a week. (Duckworth Decl. ¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 148:16-24]; Ex. 5 [J. Bowerman Depo. at 66:7-67:16]; F. Bowerman Decl. ¶ 15; Supp. Acevedo Decl. ¶ 8; Supp. Cloud Decl. ¶ 8; Cohick Decl. ¶ 21; Supp. Frankian Decl. ¶ 8; Supp. Gowan Decl. ¶ 9; Supp. Haskill Decl. ¶ 9; Mezin Decl. ¶ 21; Supp. Purkett Decl. ¶ 9; Supp. Vinson Decl. ¶ 9; Supp. Yager Decl. ¶ 11; Petersen Decl., ¶ 3, Ex. 1.) Whether FAS is liable for overtime is thus a question common to the class.

In addition, FAS does not reimburse class members for the following expenses: gas mileage, insurance, job and office supplies, tools and equipment purchase and rental, equipment and vehicle repair, payments to workers, telephone, and dump fees.  Class members have to pay for each of these categories of expenses. (Petersen Decl., ¶ 3, Ex. 1; Duckworth Decl. ¶ 8, Ex. 3 [F. Bowerman Depo. at 132:13-21; 134:4-6: 136:2-12:137:12-17]; J. Bowerman Decl. ¶ 20; Supp. Acevedo Decl. ¶ 10; Supp. Cloud Decl. ¶ 10; Cohick Decl. ¶ 22; Supp. Frankian Decl. ¶ 10; Supp. Gowan Decl. ¶ 11; Supp. Haskill Decl. ¶ 9; Mezin Decl. ¶ 22; Supp. Purkett Decl. ¶ 11; Supp. Vinson Decl. ¶ 10; Supp. Yager Decl. ¶ 13.) Whether FAS reimburses for certain business expenses are therefore questions that are common to the class.  *See, e.g.,Hopkins v. Stryker Sales Corp.*, 5:11-CV-02786-LHK, 2012 WL 1715091 (N.D. Cal. May 14, 2012) (reimbursement claims).

### 3.  Plaintiffs' Claims Are Typical of the Claims of the Class.

"[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (citation omitted).  The typicality inquiry focuses on "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."  *Wixon v. Wyndham Resort Dev. Corp.*, 2009 WL 3353445, at *3 (N.D. Cal. Oct. 19, 2009) (quotation omitted)).

Here, Plaintiffs' claims are typical of the claims of the class because they all arise out of FAS's uniform conduct toward Plaintiffs and the class.  *See e.g., Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D.

474, 489 (E.D. Cal. 2006) (typicality satisfied where the plaintiffs seek relief "based on the same conduct of Defendant: the failure to pay overtime wages [and] Defendant does not contend that the Named Plaintiffs' claims arise from conduct that Defendant directed at them alone"); *Smith v. Cardinal Logistics Mgmt. Corp.*, 07-2104 SC, 2008 WL 4156364, at * 5 (N.D. Cal. Sept. 5, 2008) (typicality satisfied where evidence shows that defendant had a common practice of classifying drivers as independent contractors). Whether Plaintiffs are employees and whether FAS has paid them for all hours worked and failed to reimburse for all business expenses will be answered in the same manner as the class.  Plaintiffs and the class are thus in a materially identical position vis-à-vis FAS with respect to these practices.  Plaintiffs' claims are, therefore, typical.

### 4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Adequacy has two elements: (1) that the proposed representatives do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel.  *See, e.g.,* *Hanlon*, 150 F.3d at 1020.  The law governing adequacy is well-settled that "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  7A Charles Alan Wright, Arthur R. Miller, *et al.*, Federal Practice and Procedure, § 1768 (3d ed. 1986).

Both elements of adequacy are satisfied here.  Like all other class members, Plaintiffs have served as vendors classified by FAS as independent contractors during the liability period.  They have no interests that are antagonistic to the interests of the proposed class. (F. Bowerman Decl. ¶ 17; J. Bowerman Decl. ¶ 21.) While FAS may point to differences between Plaintiffs and class members, such factual differences do not defeat adequacy.  *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (factual differences in the merits of the named plaintiffs' underlying claims "have no bearing on the class representatives' abilities to pursue the class claims vigorously and represent the interests of the absentee class members").

Likewise, the second prong of this inquiry is also easily satisfied.  Plaintiffs' chosen counsel is experienced and qualified in class action litigation and have secured certification of employment, civil rights and consumer class actions and brought them to successful conclusions.  (Olivier Decl. ¶¶ 6, 7; Duckworth Decl., ¶¶ 4, 5.). Proposed Class Counsel is qualified and able to conduct the proposed litigation.  (*Id.*) Plaintiffs and proposed Class Counsel will therefore adequately represent the Class.

### C.   Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Certification is appropriate under Rule 23(b)(3) because Plaintiffs demonstrate that (1) common

17

questions predominate over questions affecting only individual members; and (2) class resolution is the superior form for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3); *see Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). These two considerations – predominance and superiority – are interrelated because "[i]mplicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### 1.   Common Questions Predominate with Respect to Plaintiffs' Claims.

The Ninth Circuit repeatedly has held that "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting *Hanlon*, 150 F.3d at 1022.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  Individual questions regarding damages will not adversely affect plaintiffs' ability to demonstrate predominance.  *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("in this circuit [] damages calculations alone cannot defeat certification").

### a.   Common Questions Predominate with Respect to the Central Issue of Misclassification.

Because FAS controls the work of all class members using the same contract terms, policies and procedures, questions common to the class will predominate over individual issues.  Whether FAS's conduct demonstrates the right to control the manner and means of the work is the gatekeeper liability issue which lends itself to classwide adjudication.

Indeed, courts have repeatedly held that whether workers are employees or independent contractors under the *Borello* factors is an issue that is particularly well-suited for class treatment.  *See, e.g., Shepard*, 2013 WL 4488802, *4-6 ("Because the contract and standards at issue are substantially identical and provide the legal structure for the relationship and the scope of Defendant's right to control [class members], the Court finds class certification is appropriate."); *Li*, 2011 WL 4635198, *12 (common questions "predominate in the

inquiry as to whether [class members] were independent contractors or not. The central question to be resolved—whether [defendant] has the right to control the [class members]—will be determined based on evidence common to the class."); *Cardinal Logistics*, 2008 WL 4156364, at *8-10 (common questions predominate where evidence shows that company "exercises pervasive control over the manner in which Plaintiffs, as delivery drivers, operate…"); *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, at *4 (N.D. Ill. Oct. 1, 2007) ("[h]ere, the common overarching legal issue is whether [Defendant] misclassified agents as independent contractors [under California law]"); *Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764, at *2-6 (N.D. Cal. Oct. 31, 2006) (common questions predominate where wage claims stemmed from whether class members were misclassified as independent contractors); *Ansouana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) ("[t]he central issue posed by the case is whether the Plaintiffs were employees or independent contractors, and … [thus c]ommon questions of law and fact predominate"); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 424, 459 (N.D. Ind. 2008) ("given the ubiquity of the Operating Agreement, FedEx Ground's right to control its drivers is a common question that predominates over all other questions with respect to the California claims").

In *Shepard v. Lowe's*, the proposed class was a group of garage door installers all of whom had been classified as independent contractors by the defendant. *Shepard*, 2013 WL 4488802, *1. The court analyzed the allegations and evidence in light of the *Borello* factors and determined class certification was appropriate. In particular, the Court noted many of the same common facts present here: class members were required to submit and pass background checks, enter into standard contracts with the defendant, abide by standards of performance, and submit to the same payment method chosen by the defendant. *Id.* at *4-5.[4]

Here, FAS concedes all vendors are treated as independent contractors. In addition, as in *Shepard*, FAS's control over the vendors does not materially vary from vendor to vendor. (Duckworth Decl. ¶ 7, Ex. 2

---

[4] Similarly, in *Norris-Wilson*, the proposed class was a group of healthcare professionals (e.g. psychiatrists, psychologists, nurses, therapists and educators) that brought a lawsuit against the defendant challenging their classification as independent contractors. 270 F.R.D. at 600. Plaintiffs sought certification of the class to pursue several wage and hour claims. *Id.* After considering the *Borello* factors, which are the exact factors at issue here, the District Court found that common issues predominated and certified the class. *Norris-Wilson*, 270 F.R.D. at 607-08, 612.

[PMK Depo. at 119:11-120:6; 354:5-10].) All vendors are required to sign the vendor qualification package, submit to background checks, and abide by all FAS directives. (Id. ¶¶ 7, 11, 13-17, Ex. 2 [PMK Depo. at 27:19-28; 31:1-20; 80:2-4; 80:11-20; Ex. 6, Exs. 8-12.) FAS engages in substantial and repeated training of vendors on everything from various safety issues to field meetings at the properties to performing tasks such as a winterization. (Duckworth Decl. ¶¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 55:13-56:10; 70:5-25; 109:3-14]; Ex. 5 [J. Bowerman Depo. at 40:21-42:3]; Acevedo Decl. ¶ 13; Supp. Cloud Decl. ¶ 5; Cohick Decl. ¶ 20; Frankian Decl. ¶¶ 9, 10; Supp. Frankian Decl. ¶ 6; Supp. Gowan Decl. ¶ 6; Supp. Haskill Dec. ¶ 6; Mezin Dec. ¶ 19; Montes Decl. ¶ 14; Purkett Decl. ¶ 14; Supp. Purkett Decl. ¶ 6; Vinson Decl. ¶ 12; Supp. Vinson Decl. ¶ 7; Yager Decl. ¶ 10; Supp. Vinson Decl. ¶ 9.) FAS controls the manner of work by dictating the materials to be used, such as the specific type of air freshener, and the methods to perform the work, such as requiring vendors to submit photos of vacuum lines in the carpet and "action" photos of all work being performed. (Duckworth Decl. ¶¶ 11, 12, Ex. 6 [FAS001091]; Ex. 7 [P054999].)

In addition, the secondary *Borello* factors are also susceptible of common proof.  For example, the evidence as to "whether or not the work is a part of the regular business" of FAS, runs to the class as a whole, and does not vary with individual class members.  FAS is in the same business as its vendors -- property preservation -- and in fact it and it alone holds the contracts with the property owners, collects all monies on those contracts, and then only after reviewing and approving both the method and the end product of class members' work, pay class members. (Duckworth Decl. ¶¶ 7, 23, Ex. 2 [PMK Depo. at 65:23-66:5; Ex. 18 [FAS001930].)  Similarly, how FAS pays class members and what skills are required to be vendors are consistent and common across the class. (Id., ¶ 7 [PMK Depo. at 19:24-20:1, 22:1-5, 79:23-80:7, 84:10-19, 273:8-20].) It is evident that class members will reply on proof of the same conduct in this regard.

FAS's asserted right to control all aspects of vendors' work applies equally across the class.

### b. Common Questions Predominate with Respect to Plaintiffs' Overtime and Reimbursement Claims.

Should the Court decide the threshold issue of employment status in Plaintiffs' favor, it will then determine liability with respect to the overtime and reimbursement claims, and the derivative waiting time penalty and UCL claims. Common questions also predominate with respect to these adjudications.

20

Courts routinely certify classes of workers seeking to enforce the type of wage and hour violations alleged here, finding that common questions predominate. *See, e.g., Dilts v. Penske Logistics, LLC*, 267 F.R.D 625, 639-40 (S.D. Cal. 2010) (certifying claims for meal and rest breaks, overtime compensation, business expenses, and timely payment of wages); *Li*, 2011 WL 4635198 (certifying minimum wage, overtime and wage statement claims); *Willis v. Ironwood Comm'ns, Inc.*, 2008 WL 2167175, at *5 (D. Or. May 22, 2008) (certifying claims for minimum wage, overtime, straight time and meal and rest breaks); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749, at *15 (N.D. Cal. Feb. 13, 2008) (certifying claims for overtime and inaccurate wage statements); *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, at *7-8 (N.D. Cal. Aug. 30, 2007) (certifying off-the-clock and meal break claims); *Whiteway v. FedEx Kinko's Office & Print Servs.*, 2006 WL 2642528, at *4, 11 (N.D. Cal. Sept. 14, 2006) (certifying overtime, meal period and inaccurate records claims); *see also Prince v. CLS Transp., Inc.*, 118 Cal. App. 4th 1320, 1328 (2004) ("wage and hour disputes … routinely proceed as class actions").

Common questions predominate over individualized inquires as to whether FAS failed to pay overtime. Indeed, FAS does not dispute that it does not pay overtime. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 354:5-10].) In addition, the evidence demonstrates that the vast majority of vendors have worked overtime. (Duckworth Decl. ¶ 8, 10, Ex. 3 [F. Bowerman Depo. at 148:16-24]; Ex. 5 [J. Bowerman Depo. at 66:7-67:16]; F. Bowerman Decl. ¶ 15; Supp. Acevedo Decl. ¶ 8; Supp. Cloud Decl. ¶ 8; Cohick Decl. ¶ 21; Supp. Frankian Decl. ¶ 8; Supp. Gowan Decl. ¶ 9; Supp. Haskill Decl. ¶ 9; Mezin Decl. ¶ 21; Supp. Purkett Decl. ¶ 9; Supp. Vinson Decl. ¶ 9; Supp. Yager Decl. ¶ 11; Petersen Decl., ¶ 3, Ex. 1 (80% of class members surveyed reported working overtime).) While the amount of overtime worked may vary somewhat from worker to worker, these differences do not preclude class certification. *Leyva*, 716 F.3d at 514; *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 372-73 (C.D. Cal. 2009) (rejecting defendant's argument that necessity of individual minimum wage calculations precluded finding of predominance). As one District Court noted in certifying minimum wage and overtime claims, whether class members were "supposed to be paid" overtime and minimum wage and were not "are about the most perfect questions for class treatment. Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007).

Further, Plaintiffs' claim for reimbursement presents predominant common questions. California

1    Labor Code § 2802 requires that employers "indemnify his or her employee[s] for all necessary expenditures

2    or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties." Cal. Lab.

3    Code § 2802(a).  FAS does not reimburse for the categories of expenses Plaintiffs seek to recover here.

4    Instead, its policy is to pass these costs onto its vendors. (Duckworth Decl. ¶ 7, Ex. 2 [PMK Depo. at 119:11-

5    120:6, 354:5-10].)  Thus, whether this policy violates § 2802 predominates over any individual issues such as

6    the specific expenses each particular class member may have incurred.  In addition, Plaintiffs and members of

7    the proposed class are engaged in a common type of job, performing substantially similar tasks that require

8    them to regularly incur the categories of expenses for which Plaintiffs seek reimbursement, include gas

9    mileage, equipment, and certain materials.  The common issues predominate.  *See Soto*, 2013 WL 4500693

10   *8 ("Plaintiffs have shown that there is a 'set of discrete expenses, common to the entire putative class, and

11   that class members were required to cover themselves' such that the Court sees the merits in class

12   treatment."); *Hopkins*, 2012 WL 1715091 (certifying reimbursement claims); *Wilson v. Kiewit Pac. Co.*, C

13   09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010)(same); *see also Estrada v. FedEx Ground Package*

14   *Sys., Inc.*, 154 Cal. App. 4th 1, 13-14 (2007) ("it is clear that common issues – whether the drivers were

15   employees, and, if so, which expenses would be reimbursable – predominated").

16           Finally, Plaintiffs' derivative waiting time penalty and UCL claims rise or fall with the success of

17   their Labor Code claims.  If class members no longer employed by FAS are entitled to overtime, they are also

18   entitled to waiting time penalties. Cal. Lab. Code. § 203. Once the Court adjudicates the issue of overtime, the

19   amount of waiting time penalties owed may be proved up during the damages phase of the case.  Similarly,

20   Plaintiffs' UCL claim predicated on the Labor Code violations are simply derivative of those violations and

21   thus the predominance inquiry with respect to that claim is the same.

22                **2.    Class Resolution Is Superior to Other Available Methods for the Fair and Efficient**
                         **Adjudication of this Controversy.**

23

24           Class treatment is superior "whenever the actual interests of the parties can be served best by

25   settling their differences in a single action."  *Hanlon,* 150 F.3d at 1022 (quotation omitted); *see Valentino,*

26   97 F.3d at 1234 (superiority satisfied where "classwide litigation of common issues will reduce litigation

27   costs and promote greater efficiency"); *Shepard,* 2013 WL 4488802, *4-6. In evaluating superiority, courts

28   consider: (a) the class members' interests in individually controlling the prosecution of separate actions; (b)

                                                           22

the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

> **a.    Class Certification Will Provide an Efficient and Beneficial Structure for the Resolution of This Dispute.**

Here, classwide treatment is superior. The alternative to a class action is for class members to proceed through individual litigation against FAS, an impractical solution that would be inefficient and costly, would "unnecessarily burden the judiciary" and could lead to inconsistent results.  *Hanlon*, 150 F.3d at 1023; *Yokoyama*, 594 F. 3d at 1093. Forcing individual adjudication would also hamper enforcement of the important public policies at stake in this action.  *See Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 462 (2007) (class actions guard against the prospect of "random and fragmentary enforcement" of the employer's legal obligations under California wage laws).

There are no other cases by proposed class members against FAS regarding the claims in this case. There is also no indication that class members have an interest in individually controlling the prosecution of this action.  In addition, the opt-out nature of a (b)(3) class protects the interests of class members who do not wish to participate.  Certification here, therefore, provides a single forum to protect the rights of over 490 class members. *See, e.g., Romero*, 235 F.R.D. at 491 (class treatment superior when no indication that individual members of the class desire to individually control their case, no evidence of parallel litigation, resolution of a common issue may resolve case, and a single state's law will govern outcome); *Cardinal Logistics*, 2008 WL 4156364 at *11-12; *Bufil v. Dollar Fin. Group, Inc*., 162 Cal. App. 4th 1193, 1208 (2008) (reversing denial of class certification for lack of superiority; "[c]ourts regularly certify class actions to resolve wage and hour claims").  FAS did not treat class members individually in deciding to treat them all as independent contractors; it does not make sense to adjudicate the legality of that decision individually, either, especially given the inefficiencies of doing so.

> **b.    This Action Is Manageable as a Class Action.**

Prosecuting this case on a classwide basis is also the best course from a manageability perspective. FAS applies the same practices and policies to all members of the class, a single class definition will be operable for all claims Plaintiffs seek to certify, and all claims are susceptible to common proof.

23

Plaintiffs briefly outline a proposed trial plan to demonstrate manageability.  Plaintiffs propose a phased proceeding.  In Stage I, FAS's liability for misclassification, overtime and business expense reimbursement will be tried.  Plaintiffs and FAS can present their claims and defenses in a class trial using common evidence, including (1) company documents (such as the vendor qualification package, FAS's policies and procedures regarding class members' job duties and performance, training materials, and policies regarding documentation and pay); (2) testimony from FAS employees regarding those policies and practices; (3) a statistical analysis presented through expert testimony based on survey data gathered from class members (see Petersen Decl., ¶ 3, Ex. 1); and (4) testimony of the Plaintiffs and of a fairly representative sample of class member witnesses (like those whose testimony is presently before the Court in declarations in support of this motion).  Each of these categories is common proof that goes to FAS's liability to the class as a whole.  If FAS were to establish that the class members are independent contractors, judgment would be entered in favor of the company and no further liability or relief proceedings would be necessary with respect to the class claims for the Labor Code violations.

If Plaintiffs prevail at Stage I, then liability will be established as to the class.  In that event, Stage II would focus on the allocation of monetary relief to class members.  Using an aggregate approach, Plaintiffs would present representative testimony as well as a statistical analysis of the amount of overtime worked, the amount of business expenses accrued, and the value of the waiting time penalties.  (Petersen Decl., ¶ 3, Ex. 1, ¶¶ 19-20.)  In a case such as this one where the employer is required to maintain accurate payroll and time records (see Cal. Labor Code §§ 226, 1174; Wage Order 2-2001, ¶ 7) and fails to do so, representative testimony is an appropriate form of testimony so that employees will have a means of proving their claims. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946); *Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715, 750 (2004).  The Court can on its own, or through a special master, either distribute the aggregate damages pro rata or establish a procedure by which class members may make individual claims against the fund.  In this way, any individual issues in this case will be effectively managed.

Finally, after determination of the damages owed to the class, the case would proceed to Stage III, which would be the derivative PAGA claims and UCL claims tried to the Court.  These claims would also be subject to common proof in the form of expert testimony (Peterson Decl., ¶ 3, Ex. 1, ¶¶ 19-20) and representative class member testimony.  FAS would be entitled to present evidence on any equitable defenses

24

as to restitution or to argue that the Court should award lesser civil penalties in its discretion than those enumerated in the PAGA.  If liability is shown, the Court would determine the amount of PAGA penalties and restitution to be awarded as well as the appropriate form of any injunctive relief.

This type of phased proceeding has been found appropriate for purposes of manageability.  *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012); *Wilson v. Kiewit Pac. Co.*, C 09-03630 SI, 2010 WL 5059522 (N.D. Cal. Dec. 6, 2010)(finding reimbursement class action "manageable through a number of potential methods, including review by a special master or submission of claims by employees subject to challenge or rebuttal by defendant"). It is also well-established that these forms of proof, whether offered individually or taken together, are sufficient to establish classwide liability and damages in wage and hour cases. *See, e.g.*, *Anderson,* 328 U.S. at 687; *Duran v. U.S. Bank*, S200923, 2014 WL 2219042, *15 (Cal. May 29, 2014)(noting that surveys and statistical sampling can be used to manage class actions); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 333 (2004)(affirming use of statistical sampling); *Bell v. Farmers Insurance Exchange*, 115 Cal. App. 4th 715, 750 (2004) (affirming use of sample of witnesses and expert statistical inference to arrive at aggregate award of class damages "as a matter of just and reasonable inference" where employer failed to keep proper time and payroll records for misclassified employees); *Morgan v. Family Dollar Stores, Inc.*, 557 F.3d 1233, 1276-77 (11th Cir. 2008) ("In addition to the large quantity of testimonial evidence, the non-testimonial evidence was equally high in quality and largely comprised of [defendant's] corporate records."); *Donovan v. Williams Oil Co.*, 717 F.2d 503, 506 (10th Cir. 1983) (representative class member testimony coupled with documentary evidence was sufficient to establish the hours worked); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003) ("not all employees need testify in order to prove FLSA violations or recoup back-wages").

## V.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court certify the Class, appoint Plaintiffs as Class representatives, and appoint Duckworth Peters Lebowitz Olivier LLP as Class Counsel.

Dated:  June 3, 2014

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

By:  /s/ *Monique Olivier*
Monique Olivier
Attorneys for Plaintiffs and the Putative Class

25