UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED BOWERMAN, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>FIELD ASSET SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-00057-WHO<br><br>**INTERIM ORDER ON DAUBERT MOTIONS AND TRIAL PLAN**<br><br>Dkt. Nos. 220, 221 |

    At the initial pre-trial conference, the parties argued motions to strike each other's experts. I have questions about the reliability of the survey data used by Dr. Petersen to reach his opinions. Is the unverified information provided by the survey respondents accurate? Are all the survey respondents class members[1] and, if not, how did their responses affect the opinion? Were class members double counted? And I continue to wonder how helpful it is to reach an aggregate number for class damages when the disparity in the amounts each class member may claim is so great that individualized determinations will ultimately be required.

    That said, until there is evidence presented that answers (at least) the questions posed in the preceding paragraph, I will not rule on the *Daubert* motion for Dr. Petersen. Nor will I

---

[1] Plaintiffs insist that this is a "non-issue" because the survey participants were drawn from a list of "verified" class members. But the "verification" seems to have only concerned one of the three requirements for class membership—that class members did not work for any other entity more than 30 percent of the time. Fully "verified" class members must also have been designated by FAS as independent contractors and personally performed property preservation work in California pursuant to FAS work orders. *See* Order at 14. These components appear to remain an issue for FAS, since they insist that some survey participants were not on the class list of 628 individuals, to whom notice was sent. *See* Saad Decl. ¶ 5(e)(Dkt. No. 221-2). The possibility that non-class members were surveyed, or at least included in any subsequent extrapolation, is highlighted by the fact that plaintiff's expert had to adjust his initial projection of class members because he "included in the random sample of 'verified class members' three individuals … that plaintiff's counsel subsequently informed me had been identified as having been mistakenly included on the list of verified class members[,]" when in actuality these individuals were verified *non*-class members. Revised Petersen Report at 2 n.4 (Dkt. No. 225-3).

1 exclude Dr. Saad as a rebuttal expert.

2 My intention is to try the damages case in two phases. In the first phase, the parties will address the individual damages claims of a representative sample of class members.[2] They should do this with an eye to supporting or undermining the validity of the survey data and the opinions of their experts. At the end of the first phase, the jury will be asked to make individualized determinations of damages of the class members who have testified. The second phase will immediately follow the first phase, and will consist of the presentation of expert testimony regarding aggregate damages for the class. That issue will also go to the same jury that decides phase one unless I find that Dr. Petersen's opinion is unreliable or unhelpful.

Jury selection begins at 8:30 a.m. on May 22, 2017. The parties should plan to spend all day in trial; hopefully, we will select the jury and complete opening statements and some witness testimony the first day. On May 23 - May 25, we will go from 8 a.m. to 1 p.m., with two short breaks each morning. May 26 is dark because I have a conflicting hearing that day, and May 29 is Memorial Day. Trial will continue on May 30 and we will keep the 8 a.m. to 1 p.m. schedule until the trial is done, except for jury deliberations.

Each side shall have 13 hours to present the first phase of the case, using no more than 2 hours of the allotted time for opening and closing. Barring unforeseen circumstances, this means that the first phase will go to the jury on or before June 1, 2017. The second phase will commence promptly after the jury returns its verdict. At the case management conference on May 12, we will discuss whether the parties contemplate calling any witness other than Drs. Petersen and Saad during phase 2.

**IT IS SO ORDERED.**

Dated: April 28, 2017

William H. Orrick
United States District Judge

---

[2] Plaintiffs may put on evidence concerning Ms. Magdaleno in their case as well.

2