THOMAS E. DUCKWORTH (SBN 152369)
(tom@dplolaw.com)
MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 433-0333
Facsimile:  (415) 449-6556

JAMES E. MILLER (SBN 262553)
SHEPHERD, FINKELMAN, MILLER
 AND SHAH, LLP
(jmiller@sfmslaw.com)
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367

*Attorneys for Plaintiffs and the Certified Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| FRED BOWERMAN, and JULIA BOWERMAN on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>FIELD ASSET SERVICES, INC., FIELD ASSET SERVICES, LLC, a successor in interest,<br><br>        Defendants. | Case No. C13-00057 WHO<br><br>**PLAINTIFFS' TRIAL BRIEF REGARDING OVERTIME CALCULATIONS**<br><br>Date:          May 12, 2017<br>Time:         9:00 a.m.<br>Courtroom:   2, 17th Floor<br><br>Complaint Filed:  January 7, 2013<br>FAC Filed:           February 15, 2013<br>Trial Date:           May 22, 2017 |

## I.   INTRODUCTION

Now that this Court has determined that FAS is liable to the class for unpaid overtime (Dkt. 205), FAS has trained its sights on convincing the Court that the class should, as a matter of law, be awarded pennies on the dollar for the significant injuries class members have suffered. The Court should swiftly reject this attempt.

First, FAS's claim that a multiplier of .5 rather than 1.5 is appropriate is without merit. Labor Code § 510 requires that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek *shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee*." Neither the law nor the facts supports an exception to this rule here. Not only does FAS's argument run afoul of the Labor Code's express terms, it also violates well-established California law that requires courts to "liberally construe the Labor Code and wage orders to favor the protection of employees." *Augustus v. ABM Sec. Servs., Inc.,* 2 Cal. 5th 257, 262 (2016).

Second, FAS should not be permitted to obtain a legal ruling as to what regular rate of pay applies, as this is a question of fact for the jury. And if the Court is to decide this question, FAS's contracted hourly rate – not minimum wage – applies.

As the Court has recognized, "[w]hether a worker is classified as an employee or an independent contractor has great consequences. California law gives many benefits and protections to employees; independent contractors get virtually none." Dkt. 85, p.5, *quoting Cotter v. Lyft, Inc*., No. 13-cv-04065-VC, 2015 WL 1062407, at *5 (N.D. Cal. Mar. 11, 2015). By misclassifying class members, FAS unlawfully denied them the protections of minimum wage guarantees, workers' compensation, overtime, reimbursement of business expenses, health insurance, and Medicare and Social Security payment obligations. Now FAS wants to cheat class members further, by convincing this Court it is entitled to some sort of legal discount for its massive overtime violations. It is not.

## II.   RELEVANT FACTS

FAS paid class members per task on a work order. (See Declaration of Monique Olivier in Support of Plaintiffs' Trial Brief, filed concurrently herewith ("Olivier Decl."), Ex. A.) The price per

task varied – from $27 for a small board up, to $75 to an initial rekey, to $48 for an initial lawn cut. (Id.)  In addition, FAS paid class members an hourly rate that typically ranged from $20-35 per hour for certain tasks, such as going to a property to oversee an eviction.  (Olivier Decl., Ex. A, Ex. B.)  These hourly rates were contracted, and were routine.  (Id.)

FAS explicitly did *not* pay class members, however, for the dozens of hours they worked each week in order to meet all of FAS's various, stringent requirements and get paid.  For example, there is no evidence that FAS pays class members for *any* of the hours doing the following: reviewing work orders; downloading work orders; attending trainings, ride alongs, webinars, or meetings with FAS personnel; communicating with FAS personnel about the status of work orders; traveling to worksites; or uploading photos.  (See Olivier, Decl., Ex. A (itemizing piece rate for tasks).)  It is unrefuted that class members spent significant time each week on these matters.  (See, e.g., record in support of Plaintiffs' Motion for Partial Summary Judgment, Dkt. 155 and exhibits thereto.)  For example, FAS concedes that class members on average took at least *1,000 photos per day* that had to be uploaded in order to get paid.  (Olivier Decl., Ex. C.)  FAS did not pay class members for this time.

In addition, FAS requires class members to perform certain services *without pay*.  For example, if FAS deems a work order deficient, it requires class members to correct any purported deficiencies at no further cost to FAS.  (See Olivier Decl., Ex. D.)  What's more, FAS also retains *and frequently exercises* a unilateral right to refuse to pay for work done.  (Olivier Decl., Ex. E; see, also, record in support of Plaintiffs' Motion for Partial Summary Judgment, Dkt. 155 and exhibits thereto.)

The only possible conclusion from these facts is that (1) FAS paid a contracted hourly rate of at least $20/hour; and (2) FAS did not pay class members for all of the time they worked.

**III.   ARGUMENT**

    **A.   The Correct Formula for Overtime Calculations Under the California Labor Code Is 1.5 Times the Regular Rate of Pay.**

FAS has attempted to argue – through its expert who admits that the formula for overtime calculations is a question of law for this Court – that this Court should find FAS liable for only a fraction of its overtime violations against the class.  FAS has yet to articulate any legal basis for this position and, in fact, its argument is without any factual or legal support.  Overtime compensation due to class

members is calculated (in this case, due to FAS's failure to maintain records) by taking a reasonable estimate of their daily and weekly overtime hours, multiplying those hours by the regular rate of pay, and multiplying that total by 1.5x.

> The starting point of this analysis is the Labor Code, which explicitly provides:
>
> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek *shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.* Any work in excess of 12 hours in one day shall be compensated at the rate of no less than *twice the regular rate of pay* for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than *twice the regular rate of pay* of an employee.

Lab. Code § 510(a)(emphasis added); *see also* Lab. Code § 515(d)(1) (regular rate of pay calculated by assuming 40 hours of work per week); *Villalpando v. Exel Direct Inc.,* No. 12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 53773, at *44-45 (N.D. Cal. Apr. 21, 2016) (the Labor Code requires "that employees be paid one and a half times their regular rate of pay for hours worked in excess of 40 hours per week and eight hours per day"). Section 510 has exceptions to this formula for three alternative workweek scenarios. It contains *no* other exceptions. Lab. Code § 510.

Two canons of statutory interpretation thus reign here. First, when the language of a statute is unambiguous, a court's task is simply to apply the unambiguous statutory provision to the case at hand. As the Supreme Court explained: "[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there … When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Second, when a statute includes certain matters, it necessarily is excluding others. *See, e.g., Sharp v. Waterfront Rests.,* Case No. 99-CV-200 TW (AJB), 1999 U.S. Dist. LEXIS 15376, at *14-15 (S.D. Cal. Aug. 2, 1999) ("Defendant's construction violates the well-established maxim of statutory interpretation, *expressio unius est exclusio alterius*--the expression of one thing is the exclusion of another."). The fact that section 510 includes certain exceptions to the overtime formula indicates that other exceptions should *not* be written into the statute and are disallowed. *Id.*

Moreover, even if this Court could discern ambiguity from the statute's express terms, any ambiguity must be resolved with an eye toward the broad protections and strong public policy in favor of California's employees. *CPR for Skid Row v. City of L.A.*, 779 F.3d 1098, 1104 (9th Cir. 2015) (citation omitted) ("Under California law, the 'fundamental task' of statutory interpretation is 'to determine the Legislature's intent so as to effectuate the law's purpose.'"). It is firmly established that California's statutes "governing conditions of employment are to be construed broadly in favor of protecting employees." *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4th 662, 667 (2014); *Augustus*, 2 Cal. 5th at 262. The "Legislature and our courts have accorded to wages special considerations" in order to protect the "welfare of the wage earner." *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319, 330 (1962); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).

The 1.5x multiplier requirement is based on the recognition that base pay rates, such as salary or piece rate, are intended to compensate employees for a full work week, i.e., forty hours, and that overtime compensation must include *both* base pay and the .5 premium to achieve what the law requires: a rate of time-and-a-half (or double time) for all overtime hours. FAS attempts to claim that it paid class members according to a "piece rate" intended to cover all hours worked in a week, whether or not those hours exceeded eight in a day or forty in a week. Even if section 510 does not put that argument to rest – which it should – ***FAS's contention is wrong for the simple reason that it did not pay class members for all hours worked, so it certainly cannot claim it paid a base rate to class members for any overtime hours***.

California law requires employers to pay their employees "*for all hours worked.*" *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 323 (2005) (emphasis added). "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Wage Order 5-2001, § 2(K); Unlike federal law, an employer cannot meet this requirement by averaging pay over paid and non-paid work to comply with California law. *Id.*; Wage Order 5-2001, § 4(B); *see Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1154 (9th Cir. 2016) ("California law also prohibits 'averaging' to meet minimum wage requirements."); *Quezada v. Con-Way Freight, Inc.*, No. C 09-03670 JSW, 2014

4

U.S. Dist. LEXIS 5922, at *5 (N.D. Cal. Jan. 16, 2014) (provisions of the California Labor Code "require courts to consider whether an employee earns at least minimum wage for every hour (or part of every hour) in isolation as opposed to on average").

This principle applies equally in the piece rate context. Wage Order 5-2001, § 4(B) (employees must be paid for *all hours worked* whether the pay is "measured by time, piece, commission or otherwise). That is, employers who pay employees based on a piece rate must pay employees separately for all non-productive work not covered by the piece rate. *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36, 49 (2013) (employees paid on a piece rate basis were "entitled to separate hourly compensation for time spent waiting for repair work or performing other non-repair tasks directed by the employer during their work shifts"); *Bluford v. Safeway Inc.,* 216 Cal. App. 4th 864, 867 (2013) (drivers paid based on miles driven and performance of specific tasks must also separately be paid for rest periods); *Reinhardt v. Gemini Motor Transport,* 869 F.Supp.2d 1158, 1168 (E.D.Cal. 2012) (piece-rate pay system that did not separately pay truck drivers for non-driving duties violates California law requiring pay for each hour worked); *Cardenas v. McLane Food Services, Inc*. 796 F.Supp.2d 1246, 1252 (C.D.Cal. 2011) (piece-rate pay system that did not separately pay truck drivers for non-driving duties and rest periods violates California law requiring pay for each hour worked). In *Bluford*, for example, the California Court of Appeal found that Safeway had violated the wage rights of drivers by failing to pay them for their rest periods. There, the drivers' pay was based on miles driven and the performance of specific tasks, and did not account for rest periods. 216 Cal.App.4th at 870-71. The Court held that this compensation system violated California law, finding, "contrary to Safeway's argument, a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law." *Id.* at 872.

FAS did not pay class members for all hours worked, and retained the unilateral right – which it frequently exercised – to not pay them even when it promised to. (See Olivier Decl., Ex. C-E.) Given that FAS was not even paying class members for all hours worked (and thus regularly and repeatedly violating minimum wage laws), it plainly cannot claim that it was paying class members for all hours over forty in a week, such that class members received any sort of base pay for those hours that would permit FAS to reduce the multiplier to .5. *See Brunozzi v. Cable Communs., Inc.,* 851 F.3d 990, 996

(9th Cir. 2017)(noting a .5x multiplier in FLSA appropriate *only* "where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked."); *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251-52 (N.D. Ill. 1994) ("[o]vertime pay, as required by the FLSA, has not been paid unless both straight time pay and overtime pay have been fully paid and have been paid based on an employee's regular pay.").

Indeed, the fact that FAS is urging the Court to adopt the minimum wage – an hourly rate – rather than calculate what class members were in fact paid proves the point. It plainly has no evidence to compute what class members were *actually* paid in any given week, and therefore cannot credibly claim that class members were paid for all hours worked whether those hours were 40 or 60. As a result, the Labor Code *requires application of a 1.5x multiplier* to all overtime hours. FAS simply has no credible rebuttal to the clear language of section 510.

Further, FAS is seeking a windfall for its failure to record class members' total weekly earnings and total hours worked in violation of its legal obligations. At bottom, FAS is arguing that because it shirked its legal obligations, the Court should assign minimum wage, assume that minimum wage was paid for all hours worked (an assumption contradicted by unrefuted facts), and then award overtime at the rate of .5 x minimum wage. This is plainly not the law, and would result in even further egregious wage violations. *See Gonzalez*, 215 Cal.App.4th at 49 (finding any calculation of "total earnings" for purposes of overtime *had to include* all hours worked and provided no safe harbor from the law against averaging in the piece rate context).

Because FAS only paid piece rate for specific tasks, and undisputedly did not pay for a variety of work that class members performed, FAS did not pay class members for all of their regular hours of work, let alone any overtime hours. As a result, FAS is liable to the class at a rate of 1.5x each overtime hour they worked. Combined with FAS's argument (addressed below) that minimum wage is the appropriate measure of "regular rate of pay," this method using a .5 multiplier would result in class members being paid *half* of the minimum wage for overtime hours worked. Such a conclusion flouts the letter and purpose of California's wage laws.

### B. The Regular Rate of Pay Is a Question of Fact for the Jury and, in Any Event, Is the Contracted Hourly Rate that FAS Paid Class Members.

FAS insists that the Court should find, as a matter of law, the class members' "regular rate of pay" is the California minimum wage rate. This argument fails for several reasons.

First, while this Court should confirm, as a matter of law, the overtime calculation applicable here is that set forth in Labor Code § 510 (i.e., 1.5x), the applicable regular rate of pay is a factual determination for the jury. *Bryant v. Serv. Corp. Int'l,* No. C 08-01190 SI, 2011 U.S.Dist.LEXIS 29106, at *24 (N.D.Cal. Mar. 9, 2011)(proposed class claim presented common "factual question" regarding the method of calculating the regular rate of pay); *cf. Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 U.S. Dist. LEXIS 93881, at *26 (N.D. Cal. July 6, 2012) (regular rate of pay is a purely legal question where no factual dispute as to how rate was calculated). Plaintiffs have and will present evidence that FAS paid class members a contracted hourly rate of at least $20 per hour. (Olivier Decl. Ex. A-B.)

Second, FAS's argument is foreclosed by the fact that under California law, the regular rate of pay for purposes of overtime calculations is minimum wage *only* if there is not a higher, contracted rate. *See Armenta*, 153 Cal. App. 4th at 323 (2005) (noting that Labor Code sections 221-223 confirm a contracted rate hourly rate must be honored); *Quezada v. Con-Way Freight, Inc.,* No. C 09-03670 JSW, 2013 U.S. Dist. LEXIS 189954, at *5 (N.D. Cal. Dec. 16, 2013) (minimum wage would apply only where no evidence of a contracted wage rate).

Third, if the Court were to accept FAS's bald claim that minimum wage should apply in the face of evidence of a contracted rate, this would violate yet another provision of the Labor Code, Labor Code § 223 which renders it "unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Lab. Code § 223; *Quezada,* 2013 U.S. Dist. LEXIS 189954, at *5 (noting paying less than a contracted rate would violate § 223); *see also Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251 (N.D. Ill. 1994) (holding, under the FLSA, that "[o]vertime rates cannot be avoided by manipulating the pay for regular hours or otherwise reducing the pay for regular hours to make up for the 150% overtime rate that will have to be paid.")

Fourth, buying FAS's argument would permit FAS to profit from its failure to maintain the hours

7

worked and wages paid to class members in violation of California law. California law requires employers who use a piece rate compensation system to maintain payroll and accurate production records. Cal. Labor Code §1174(d); IWC Wage Order 5-2001 §7. California law grants mandatory record inspection rights to employees. Labor Code §226(b); *Carrillo v. Schneider Logistics, Inc.* (C.D.Cal. 2011) 823 F.Supp.2d 1040, 1044. Section 226 requires an employer to separately specify the amount of the wages, because unless the employer does this, there is "employee confusion over whether they received all wages owed them, difficulty and expense [] in reconstructing pay records," and the real possibility of not being paid the actual wages owed. *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009); *see also Kisliuk v. ADT Sec. Servs., Inc.*, 263 F.R.D. 544, 548 (C.D. Cal. 2008).

Here FAS failed to maintain a payroll system which accurately reflects the payments made for hours worked. Consequently, the class cannot determine the true regular rate of pay because FAS failed to comply with the law. FAS should not be permitted to profit from this failure by now claiming minimum wage as the appropriate rate, particularly in light of evidence that FAS did, in fact, pay class members a contracted hourly rate for certain tasks. *See also, Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (noting that penalizing employees where an employer failed to keep proper records "in conformity with its statutory duty" "would allow the employer to keep the benefits of an employee's labors without paying due compensation" and unfairly places a "premium" on the employer's statutory failure.)

Finally, in light of the above, requiring the minimum wage to be applied to the class would be a windfall to FAS. Even in the absence of a contracted *hourly* rate, minimum wage would be inappropriate. There is no dispute that FAS paid piece rate for certain tasks and hourly for certain other tasks. Given FAS's unlawful failures to maintain records of class members' hours of work and rates of pay, FAS should not be permitted to benefit by insisting on a minimum wage rate. Instead, if the jury does not credit the wealth of evidence it will receive regarding the hourly rates that FAS paid for certain work, Plaintiffs should be permitted to present the industry rates that were used by Dr. Petersen. These rates are a more just proxy for the hourly rate than minimum, as they align with the work class members actually performed.

Requiring class members to accept the minimum wage as the regular rate of pay would pave the way for future mischief by employers who could simply fail to comply with recordkeeping requirements to obtain an after-the-fact lower rate of pay.  *See Brunozzi,* 851 F.3d at 996 (citation omitted) ("The regular rate of pay [under the FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.")  Permitting Plaintiffs to produce evidence of a contracted hourly rate or alternative proxy hourly rates also dovetails with Plaintiffs' right under *Mt. Clemens* to present estimates of hours and pay, and to permit the jury to "draw whatever reasonable inferences can be drawn from the employee's evidence" as to the amount of overtime hours worked.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 694; *Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, 136 S. Ct. 103, 1047 (2016) ("when employers violate their statutory duty to keep proper records," the "remedial nature" and public policy embodied in wage laws "militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.'"); *Villalpando*, 2016 U.S. Dist. LEXIS 53773, at *20-21 (estimates must be allowed or it "would unfairly penalize employees to deny recovery because of the employer's failure to keep proper records.").

## IV.   CONCLUSION

The appropriate overtime calculation is 1.5 times the regular rate of pay.  The question of the regular rate of pay must be sent to the jury.  In the alternative, the regular rate of pay should be the contracted rate that FAS paid class members for hourly work.

Date:   May 3, 2017                DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

*/s/ Monique Olivier*
Monique Olivier

*Attorneys for Plaintiffs and the Certified Class*