UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED BOWERMAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> FIELD ASSET SERVICES, INC., et al., <br><br> Defendants. | Case No. 13-cv-00057-WHO <br><br> **ORDER DENYING MOTION FOR CLASS DECERTIFICATION/RECONSIDERATION** <br><br> Re: Dkt. Nos. 407, 412 |

Leaving no stone unturned, defendants ("FAS") moved a second time for decertification of plaintiffs' class following a bellwether trial in which the jury found in favor of plaintiffs. Dkt. No. 407. Given that I had already denied FAS's first motion to decertify, Decertification and SJ Order (Dkt. No. 205), I granted plaintiffs' motion to strike the second motion but construed it as a motion for leave to file a motion for reconsideration and called for a response--this case has raised novel issues and I wanted a complete record for myself and the Ninth Circuit. Dkt. No. 412. Having reviewed the parties' memoranda, I again DENY FAS's motion.

FAS asserts that the bellwether trial proved that plaintiffs cannot show by common evidence whether the vendor class members worked overtime hours and whether their claimed expenses are reimbursable under California law; therefore, plaintiffs cannot establish the predominance requirement under Federal Rule of Civil Procedure 23(b)(3). FAS identifies differences in the testimony of the vendors at trial and reminds me that plaintiffs' damages expert was withdrawn after I raised questions about the reliability of his data and opinions concerning an aggregate damages model. It cites *Swamy v Title Source, Inc.*, 2018 WL 1586139 (N.D. Cal. Apr. 2, 2018), *Sanchez v. Capital Contractors, Inc.*, 2017 WL 2462055 (N.D. Cal. June 7, 2017) and *Kizer v Tristar Risk Management*, 13 Cal. App. 5th 830 (2017) to undercut plaintiffs' asserted

basis for class certification.

In *Swamy*, the Hon. William H. Alsup granted class certification for real estate staff appraisers on expense reimbursement claims because common evidence of the company policies showed that class members were required to use cell phones, home internet access and personal vehicles, even though the amount of expenses owed to class members would vary. 2018 WL 1586139, at *3.[1] The wage statements also presented a common issue, and that subclass was certified. *Id.* at *4. But the overtime claim was not certified because Swamy proposed no common method showing that uncompensated work occurred--each class member's testimony was required to prove liability in light of their failure to keep records, a result that Judge Alsup called "the *exact opposite* of common proof." *Id.* at *5–6 (emphasis in original).

The central difference between this case and *Swamy*, and the other cases cited by FAS, is that the plaintiffs here showed that there was "an employer policy or practice that generally required the class members to work overtime"; this was lacking in the other cases. *See Kizer,* 13 Cal. App. 5th at 834; *Sanchez*, 2017 WL 2462055, at *17. FAS adopted a business model that classified vendors as independent contractors, meaning FAS would not pay overtime or reimburse expenses, and required them to complete work within 72 hours. I found that it misclassified the vendors because it imposed such control over them that they were employees under the law. Decertification and SJ Order at 30–44. The evidence at class certification, which was confirmed and amplified at trial, also showed that FAS exerted substantial pressure on its vendors to accept jobs that required them to work substantially more than 8 hours per day or 40 hours per week—traveling from job site to job site, performing their work per the specifications of FAS, carefully documenting that work as dictated by FAS and reporting their completion of each project in the evenings as outlined by FAS. I limited the class to vendors performing 70 percent of their work for FAS—while the amount of overtime and expenses varied by class member, all were subject to those common policies and practices that generally required them to work overtime and expend their own money on business expenses that should have been reimbursed.

---

[1] But he noted, as FAS highlights, "[s]hould individualized questions of damages ultimately render class resolution unmanageable … decertification of the class may be proper." *Id.*

FAS argues that the 72-hour work order completion policy does not dictate its liability for failure to pay overtime because the policy does not mean that vendors necessarily worked any overtime. According to FAS, the question of whether a vendor worked any overtime depends on the vendor's number of work orders at any given time (it is disputed whether vendors could decline work orders without penalty), the number of workers a vendor utilized, and the range of work within each work order (which dictates the time necessary to complete it). However, I have previously determined that in addition to misclassifying the vendors, FAS employed the policies and practices described in the preceding paragraph that generally required the vendors to work overtime.

The issue on decertification here boils down to predominance. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id*. "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotation marks omitted).

Misclassification is the predominant issue in this case. Because the documentary evidence maintained by the vendors regarding the time they worked for FAS was scant at best, the vendors'

3

testimony was required to prove their damages in light of FAS's policy not to pay overtime.[2] The lack of documentation on hours worked makes it unlikely that plaintiffs can create a model that aggregates damages on a class wide basis. Proof by the testimony of vendors is necessary, but that should not be a hurdle to class certification since the lack of documentation was caused by FAS's policies and practices (time records were not necessary under the payment structure FAS utilized). The math for calculating overtime is straight forward and consistent across the class (minimum wage multiplied by the number of overtime hours at the rate set by state law), as is the math for adding up the business expenses. This "methodology" is sufficient under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See id.* at 34. While the damages calculations are necessarily individualized, that does not change my conclusion that class certification in this matter was proper.

Since FAS's first motion to decertify, a jury has resoundingly found that the vendors in the bellwether trial were each entitled to substantial damages and the California Supreme Court has decided *Dynamex Operations W., Inc. v Superior Court*, 4 Cal. 4th 903 (2018), which is consistent in most respects with my rulings in this matter. The common issues described above establish liability and make the differences identified by FAS pale in comparison. The trial testimony viewed as a whole confirmed my view that FAS retained "all necessary control" over vendors' work, Decertification and SJ Order at 25, that the vendors were required to work overtime and expend their own money for business expenses in order to maintain their positions with FAS, and that FAS's denials of those facts were not credible to the jury.

The damages phase of this class action is far messier than promised by plaintiffs' counsel when I certified this case. It is made more onerous by FAS's legitimate but cumbersome choice to try the entire damages phase in front of a jury instead of by using one of a number of alternative methods suggested by the plaintiffs. But as the Ninth Circuit decided in *Briseno v ConAgra*

---

[2] Vendors were not required to maintain time records because FAS paid by the job, not by the hours worked. But it is worth noting that FAS received at least circumstantial evidence of the time and expenses incurred by the vendors in the reports the vendors had to provide in order to get paid, yet it failed to produce those reports in discovery, further necessitating the vendors' testimony.

4

*Foods, Inc.*, 844 F.3d 1121, 1128 (2017), class certification should not be denied solely due to manageability concerns, and in this case certification is proper and the most equitable way to resolve the litigation. Defendants' motion is DENIED.

**IT IS SO ORDERED.**

Dated: August 8, 2018

                                                        William H. Orrick
                                                       United States District Judge