UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED BOWERMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FIELD ASSET SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 3:13-cv-00057-WHO<br>And Related Cases as Noted in Order<br><br>**ORDER ON MOTIONS TO DISMISS IN RELATED CASES**<br><br>Re: Dkt. Nos. 533, 534, 535 |

## BACKGROUND

These cases are related to the underlying worker misclassification and wage-and-hour litigation in *Bowerman v. Field Asset Services*, No. 13-cv-00057 (N.D. Cal. April 4, 2023), which was initially filed on January 7, 2013. ("Bowerman Dkt." No. 1). This Order assumes familiarity with that case and procedural history, as well as the holding in *Bowerman v. Field Asset Services, Inc.*, 39 F.4th 652 (9th Cir. 2022), *as amended*, 60 F.4th 459 (9th Cir. 2023).

After trial, the Ninth Circuit decertified the class and reversed the summary judgment decision. *See id.* I found that the statute of limitations had been tolled from the filing of the *Bowerman* case until 60 days after notice to the former class members. Bowerman Dkt. No. 510. Subsequently, dozens of members of that decertified class filed individual cases, which were related to the original *Bowerman* case under this district's Local Rules. *See* Bowerman Dkt. Nos. 513, 520, 539.

Defendants Field Asset Services, Inc., Field Asset Services, LLC, Xome Field Services LLC, Cyprexx Services, LLC, and ten Doe defendants (collectively, "FAS") began filing motions to dismiss in the individual cases. To comply with Federal Rule of Civil Procedure ("FRCP") Rule 1, and using my discretion as a district court to manage my own docket, I directed FAS to

1   divide the cases into three groups and file an exemplar motion to dismiss for each group, and I

2   stayed the other cases' motions to dismiss pending resolution of those exemplar motions.  *See*

3   Bowerman Dkt. No. 523.  FAS did so.  *See* Bowerman Dkt. Nos. 526-528.  FAS chose as

4   exemplar cases *Leal v. FAS*, No. 23-cv-01176, *Garcia v. FAS*, No. 23-cv-01509, and *Rodriguez v.*

5   *FAS*, No. 23-cv-01436.  Motion to Dismiss Joel Leal, Bowerman Dkt No. 526; Motion to Dismiss

6   Matthew Garcia ("Garcia Mot.") Bowerman Dkt No. 527; Motion to Dismiss Gilberto Rodriguez

7   ("Rodriguez Mot.") Bowerman Dkt No. 528.

8       The plaintiffs filed oppositions.  Opposition to Joel Leal, Bowerman Dkt. No. 533;

9   Opposition to Matthew Garcia ("Garcia Oppo.") Bowerman Dkt. No. 534; Opposition to Gilberto

10  Rodriguez ("Rodriguez Oppo.") Bowerman Dkt. No. 535.

11      FAS filed replies.  Reply to Joel Leal, Bowerman Dkt. No. 541; Reply to Matthew Garcia

12  ("Garcia Repl.") Bowerman Dkt. No. 540; Reply to Gilberto Rodriguez ("Rodriguez Repl.")

13  Bowerman Dkt. No. 542.

14      I held a hearing at which counsel for all parties appeared.  I ordered the parties to file

15  supplemental briefing on the Colorado River Doctrine, an issue that the defendants raised for the

16  first time in their reply briefs, and the parties did so.  ("Pls. Supp. Br.") Bowerman Dkt. No. 549;

17  ("Def. Supp. Br.") Bowerman Dkt. No. 552.

18      After the hearing on these motions to dismiss, the plaintiffs voluntarily dismissed the cases

19  from Group 1, including: *Leal v. Field Asset Servs., Inc.*, No. 4:23-cv-01176-WHO; *Bates v. Field*

20  *Asset Servs., Inc.*, No. 3:23-cv-01206-WHO; *Lewis v. Field Asset Servs., Inc.*, No. 3:23-cv-01177-

21  WHO; *Lewis v. Field Asset Servs., Inc.*, No. 3:23-cv-01177-WHO; *see also* Bowerman Dkt. No.

22  526.

23  **LEGAL STANDARD**

24      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

25  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

26  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

27  face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when

28  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

United States District Court
Northern District of California

1   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

I.   **GROUP 2 CASES –** ***GARCIA V. FAS***, **NO. 23-CV-01509**[1]

FAS selected these five cases for Group 2 because all involve plaintiffs who allege that they started working for FAS after January 10, 2010, which was three years prior to the date that the original *Bowerman* case was filed. *See* Bowerman Dkt. No. 527. In the lead case for this group, *Garcia v. FAS*, no. 23-cv-01509, plaintiff Matthew Garcia alleges that he began working for FAS in 2012 and continued working for FAS until about 2014. Garcia Dkt. No. 1 ("Garcia

---

[1] This ruling applies to the following cases: *Garcia v. Field Asset Servs., Inc.*, No. 3:23-cv-01509-WHO; *Dolack v. Field Asset Servs., Inc.*, No. 3:23-cv-01431-WHO; *Fowler v. Field Asset Servs., Inc.*, No. 3:23-cv-01296-WHO; *Ibarra v. Field Asset Servs., Inc., v. Field Asset Servs., Inc.*, No. 3:23-cv-01317-WHO; *Jaques v. Field Asset Servs., Inc.*, No. 3:23-cv-01150; *see also* Bowerman Dkt. No. 527.

3

Compl.") ¶ 49.

FAS moves to dismiss each of Garcia's claims. Garcia Mot. It argues that Garcia fails to state a claim for overtime compensation and for expense reimbursement, that the waiting time penalty claim fails because the predicate offenses fail, and that the UCL claim should be dismissed for legal reasons.[2] Garcia contests each argument and provided supplement briefing explaining his request to dismiss the UCL claim without prejudice. Garcia Oppo. I address each argument in turn.

### A. Overtime Compensation

FAS moves to dismiss Garcia's claim for overtime for (1) failure to identify a specific work week in which he worked more than 40 hours without receiving overtime compensation as it argues is required by *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26, 2015); (2) failure to explain why time spent traveling to job location is compensable; and (3) failure to clarify that all hours worked were worked for FAS. Garcia Mot. 4:11-5:27. Garcia's complaint alleges that his work day "typically started . . . at 8 a.m." when he "reviewed the work order, went to the designated job location and performed the job tasks" then took the required photos and "typically returned home at 6 p.m.," at which time he "typically [spent] one to two hours" uploading photos and completing paperwork. Garcia Compl. ¶ 52. He says he "typically worked five days a week, 10 to 12 hours a day." *Id.* The complaint also alleges that work assignments had to be completed within three days, *id.* ¶ 32, that payment was provided by job completion rather than by hour, *id.* ¶ 33, and that Garcia "was required to regularly work over eight hours in a day and/or forty hours in a work week to meet FAS's [3 day] deadlines," *id.* ¶ 55.

FAS's first argument is nearly identical to that made by the defendant in *Huynh v. Jabil Inc.*, No. 22-CV-07460-WHO, 2023 WL 1802417 (N.D. Cal. Feb. 7, 2023). In that case, the defendant "assert[ed] that under *Landers*, [the plaintiff] must allege the specific workweeks that he

---

[2] I address Garcia's UCL claim in Part III below.

4

believes he and class members were not properly paid all wages."[3] *Id.* at *3. But in rejecting that argument, I explained "[t]hat level of detail is not necessary to state a plausible individual or class claim for unpaid wages." *Id.* (citing *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2021 WL 2554054, at *3 (N.D. Cal. June 22, 2021) (similarly rejecting the argument that a plaintiff needs "to point to a particular instance" of a wage and hour violation, although recognizing "with the pleading of more specific facts, the closer the complaint moves toward plausibility" (quoting *Landers*, 771 F.3d at 645))). "What is required post-*Landers* are facts that establish a plausible claim by, for example, alleging facts regarding the length of an average workweek during the applicable period and the average rate of pay." *Id.*

Here, Garcia's complaint sufficiently alleges the length of an average workweek—50 to 60 hours per week, *see* Garcia Compl. ¶ 52—and provides specific examples and reasons why he was not paid for overtime—he had to work overtime to accomplish his assigned tasks within the 3 day period, was threatened with consequences for failing to do so, and was paid by the job task rather than by the hours works, *see id.* ¶¶ 32-33, 45, 48. As in *Huynh*, these "details make [Garcia's] wage claim plausible and satisfy *Landers*." 2023 WL 1802417, at *3.

Second, I am not persuaded by FAS's argument about the compensability of time spent traveling to job location. Even if this time were not compensable under California law, Garcia's allegations that he had to work from 10 to 12 hours a day, regularly worked over eight hours each day to meet the 3 day deadlines, and worked 1 to 2 hours each night to finish paperwork, are together sufficient to infer that his time spent *other than* traveling to and from job site amounted to more than 40 hours each week.

Third, by arguing that Garcia did not specify that all his asserted hours were spent working for FAS, as opposed to another company, FAS asks me to infer both that Garcia worked for another company and that he spent some of his pleaded hours working for that company. But based on the allegations in the complaint, it is plausible to infer that all of the hours stated in the

---

[3] In that case, the plaintiff asserted claims for unpaid wages under nine separate statutes, including Labor Code sections 510, 1194, and 1198, which are pleaded in Garcia's complaint as the basis for his overtime claims.

5

1  complaint were spent working for FAS. And at a motion to dismiss, reasonable inferences are
2  made for the plaintiff, not the defendant. *See Usher*, 828 F.2d at 561.

3  Accordingly, the motion to dismiss this cause of action is DENIED.

### B.  Expense Reimbursement

FAS argues that Garcia's allegations about reimbursements of expenses are too general and conclusory to survive a motion to dismiss, that Garcia fails to allege the expenses were incurred as a direct consequence to his work for FAS, and that Garcia fails to allege FAS was aware of the expenses. *See* Garcia Mot. 6:1-7:14.

The California Labor Code provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Lab. Code § 2802(a); *see also Johnson*, 2021 WL 2554054, at *4.

Garcia's allegations are sufficient to plead a claim under Labor Code section 2802. Garcia asserts that he had to use his cell phone; pay for mileage, dump fees, and insurance; and purchase tools and equipment to do his work for FAS. *See* Garcia Compl. ¶ 88. The complaint alleges in detail how FAS required workers to meticulously photograph their work and upload hundreds of photos, *id.* ¶¶ 29, 41-43, 47, which is sufficient to show that phone expenses were incurred as a direct consequence of the work, *cf. Huynh*, 2023 WL 1802417, at *6 (denying motion to dismiss a claim for expense reimbursement where plaintiff pleaded he was required to use his phone to provide updates for his manager on his tasks).

Further, Garcia alleges that his tasks "included removing trash and debris from properties, winterization, minor repairs, board-ups, rekeys, yard maintenance, janitorial work, installing smoke detectors and straps on water heaters, and removing vehicles and appliances," Garcia Compl. ¶ 51, which required him to purchase "fuel, insurance, supplies, office supplies, tools and equipment" and also to pay for "maintenance and repair of equipment and vehicles, storage fees, [and] telephone and dump fees," *id.* ¶ 56. Combined with the allegations that FAS's business model involved "board ups, debris removal, and yard and maid services," *id.* ¶ 26, and required

specific tools and equipment necessary for tasks, *id.* ¶¶ 34, 37, 42, these allegations are more than enough to plausibly allege that Garcia's mileage, dump fees, insurance, tools, and equipment were all expenses incurred as a direct result of his work for FAS. *Cf. Huynh*, 2023 WL 1802417, at *6. It is unclear why FAS argues that the complaint "does not allege any facts to suggest he was working for FAS when he incurred expenses"—the above allegations make clear that is not accurate. *See* Garcia Mot. 7:1-5.

Finally, the complaint alleges that each of these costs were incurred because they were "require[d]" by FAS, *id.* ¶ 23, which is sufficient to plausibly plead that FAS was aware of the expenses.

Accordingly, the motion to dismiss this cause of action is DENIED.

### C. Waiting Time Penalties

FAS makes two arguments regarding the waiting time claim: it is derivative of the overtime and expense reimbursement claims and so too fails, and does not sufficiently allege the specific unpaid expenses, the date they were due, when or how FAS failed to pay them, and that FAS's failure was willful. *See* Garcia Mot. 7:15-8:25; *see also* Cal. Lab. Code §§ 201, 203. These are identical to the arguments that I recently rejected in *Huynh*, 2023 WL 1802417, at *6, and fail for the same reasons. As in *Huyhn*, Garcia adequately alleged his substantive claims, and so the claim for waiting time penalties survives. The motion is DENIED for this cause of action.

## II. GROUP 3 CASES – *RODRIGUEZ V. FAS*, NO. 23-CV-01436[4]

FAS selected these 46 cases for Group 3 because all involve plaintiffs that began working

---

[4] This ruling applies to the following cases: *Rodriguez v. Field Asset Servs., Inc.*, No. 3:23-cv-01436- WHO; *Aceves v. Field Asset Servs., Inc.*, No. 3:23-cv-01299-WHO; *Ackel v. Field Asset Servs., Inc.*, No. 3:23-cv-01315-WHO; *Anderson v. Field Asset Servs., Inc.*, No. 3:23-cv-01298-WHO; *Bautista v. Field Asset Servs., Inc.*, No. 3:23-cv-01545-WHO; *Baxley v. Field Asset Servs., Inc.*, No. 3:23-cv-01297-WHO; *Bess v. Field Asset Servs., Inc.*, No. 3:23-cv-01147-WHO; *Burgett v. Field Asset Servs., Inc.*, No. 3:23-cv-01251-WHO; *Bush v. Field Asset Servs., Inc.*, No. 3:23-cv-01321-WHO; *Canepa v. Field Asset Servs., Inc.*, No. 3:23-cv-01253-WHO; *Carr v. Field Asset Servs., Inc.*, No. 3:23-cv-01497-WHO; *Carriere v. Field Asset Servs., Inc.*, No. 3:23-cv-01430-WHO; *Cherrin v. Field Asset Servs., Inc.*, No. 3:23-cv-01525-WHO; *Cino v. Field Asset Servs., Inc.*, No. 3:23- cv-01476-WHO; *Cohick v. Field Asset Servs., Inc.*, No. 3:23-cv-01154-WHO; *Coleman v. Field Asset Servs., Inc.*, No. 3:23-cv-01462-WHO; *Croy v. Field Asset Servs., Inc.*, No. 3:23-cv-01383-WHO; *Davis v. Field Asset Servs., Inc.*, No. 3:23-cv-01341-WHO; *Davitian v. Field Asset Servs., Inc.*, No. 3:23-cv-01463-WHO; *Frankian v. Field Asset Servs., Inc.*, No. 3:23-cv-01316-WHO; *Freeborn v. Field Asset Servs., Inc.*, No. 3:23-cv-01152-WHO; *Frost v. Field*

for FAS before January 10, 2010, and continued working after that point. *See* Bowerman Dkt. No. 528. In the lead case for this group, *Rodriguez v. FAS*, no. 23-cv-01436, plaintiff Gilberto Rodriguez alleges that he began working for FAS in 2008 and continued through 2016. Rodriguez Dkt. No. 1 ("Rodriguez Compl.") ¶ 54.

FAS moves to dismiss each claim for nearly identical reasons (and with a nearly identical motion) as those addressed in *Garcia*. Rodriguez makes nearly identical counterarguments, and his complaint is nearly identical to Garcia's except for the specifics concerning his job timing, duties, and daily schedule.[5] *See* Rodriguez Compl. ¶¶ 54-58.

First, Rodriguez's opposition dismisses all Labor Code claims that accrued before January 10, 2010. *See* Rodriguez Oppo. At 5 n.2. Accordingly, these claims are DISMISSED.

Second, Rodriguez's overtime claim survives for the same reasons that Garcia's claim survives. Rodriguez pleaded that he started his day at 6 a.m. by reviewing his work order, then traveled to the job sites, undertook the required tasks, took photographs, traveled home and arrived between 6 p.m. and 7 p.m., and spent three to four more hours uploading photographs and completing required documents. Rodriguez Compl. ¶ 54. He alleges that he worked 15 to 17 hours per day, five days per week. *Id.* His complaint also includes the same allegations as Garcia's about having to work overtime to accomplish assigned tasks within the 3-day period, being threatened with consequences for failing to do so, and being paid by the job task rather than

---

*Asset Servs., Inc.*, No. 3:23-cv-01153-WHO; *Gonzalez v. Field Asset Servs., Inc.*, No. 3:23-cv-01179-WHO; *Hart v. Field Asset Servs., Inc.*, No. 3:23- cv-01221-WHO; *Haskill v. Field Asset Servs., Inc.*, No. 3:23-cv-01434-WHO; *Hill v. Field Asset Servs., Inc.*, No. 4:23-cv-01294-WHO; *Hopper v. Field Asset Servs., Inc.*, No. 3:23-cv-01529-WHO; *Jones v. Field Asset Servs., Inc.*, No. 3:23-cv-01218-WHO; *Miller v. Field Asset Servs., Inc.*, No. 3:23- cv-01342-WHO; *Miller v. Field Asset Servs., Inc.*, No. 3:23-cv-01175-WHO; *Moore v. Field Asset Servs., Inc.*, No. 3:23-cv-01458-WHO; *Murray v. Field Asset Servs., Inc.*, No. 3:23-cv-01261-WHO; *Parra v. Field Asset Servs., Inc.*, No. 3:23-cv-01219-WHO; *Pinto v. Field Asset Servs., Inc.*, No. 3:23-cv-01223-WHO; *Purkett v. Field Asset Servs., Inc.*, No. 3:23-cv-01112-WHO; *Rodriguez v. Field Asset Servs., Inc.*, No. 3:23-cv-01510-WHO; *Romo v. Field Asset Servs., Inc.*, No. 3:23-cv-01212-WHO; *Rosiak v. Field Asset Servs., Inc.*, No. 3:23-cv-01479-WHO; *Seko* v *Field Asset Servs., Inc.*, No. 3:23-cv-01224-WHO *Seman v. Field Asset Servs., Inc.*, No. 3:23-cv-01384-WHO; *Sibilla v. Field Asset Servs., Inc.*, No. 3:23-cv-01215-WHO; *Turri v. Field Asset Servs., Inc.*, No. 3:23-cv-01220-WHO; *Webster v. Field Asset Servs., Inc.*, No. 3:23-cv-01254-WHO; *Whitmore v. Field Asset Servs., Inc.*, No. 3:23-cv-01491-WHO; *Wulf v. Field Asset Servs., Inc.*, No. 3:23-cv-01432-WHO; *Yager v. Field Asset Servs., Inc.*, No. 3:23-cv-01151-WHO; *see also* Bowerman Dkt. No. 528.

[5] I address Rodriguez's UCL claim in Part III below.

by the hours worked.  *See id.* ¶¶ 32-33, 37, 50, 53.  Rodriguez, then, alleges that he worked 75 to 85 hours per week each work and provides specific allegations describing why he did so and why he was not paid overtime for doing so.  Like Garcia's allegations, Rodriguez's are sufficient under *Landers* and *Huyhn*.  The motion is DENIED on this basis.

Third, Rodriguez's expense reimbursement claim also survives for the same reasons that Garcia's claim survives.  He makes the same allegations about failure to pay for cell phones, mileage, dump fees, insurance, tools, and equipment.  *See* Rodriguez Compl. ¶ 95.  He alleges the same facts about the required use of phones for taking photos and uploading pictures.  *See id.* ¶¶ 29, 46-48, 52.  Similar to Garcia, Rodriguez contends that his tasks "included removing trash and debris from properties, minor repairs, board-ups, rekeys, yard maintenance, janitorial work, and installing smoke detectors and straps on water heaters," *id.* ¶ 56, which required him to purchase "fuel, insurance, supplies, office supplies, tools and equipment" and also to pay for "maintenance and repair of equipment and vehicles, storage fees, [and] telephone and dump fees," *id.* ¶ 62.  Combined with identical allegations about FAS's business model and required tools and equipment, *see id.* ¶¶ 26, 34, 42, 47, and similar to Garcia, these allegations are more than enough to plausibly allege that Rodriguez's mileage, dump fees, insurance, tools, and equipment were all expenses incurred as a direct result of his work for FAS.

Fourth, like Garcia, because Rodriguez's underlying claims survive, his derivative waiting time penalty claim survives.

Accordingly, the motion is DENIED as to these causes of action.

**III.    DISMISSAL OF UCL CLAIMS**

Both groups of plaintiffs assert claims under the UCL.  The defendants moved to dismiss the UCL claims with prejudice, and while the plaintiffs agree to dismiss, they request dismissal without prejudice as to refiling in state court, citing *Guzman v. Polaris Industries Inc.,* 49 F.4th 1308 (9th Cir. 2022).  *Compare* Rodriguez Mot. 6:7-16:11 *and* Rodriguez Repl. 1:22-9:5 *with* Rodriguez Oppo. 13:12-14:26.[6]  Though FAS made several arguments in its motion, after

---

[6] At the hearing, plaintiffs' counsel clarified it seeks dismissal without prejudice for Garcia's Group Two UCL claims.

9

Rodriguez requested to dismiss the UCL claims without prejudice, FAS's arguments narrowed in reply: first, this case is distinguishable from *Guzman* (which FAS did not address in its motions), and so dismissal without prejudice is not warranted; and second, if the claim is dismissed with prejudice and refiled in state court, it will lead to inefficient and duplicative litigation and FAS will likely remove it back to federal court.

In *Guzman*, the Ninth Circuit built on its decision in *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834, 837 (9th Cir. 2020), where the plaintiff dismissed her sole state law damages claim "[o]n the brink of trial" and instead proceeded on only her state law equitable claims for restitution and injunctive relief. The Ninth Circuit held that the plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL" and another state statute. *Id.* at 844 (citations omitted). Given that requirement, the Ninth Circuit upheld the district court's dismissal of the plaintiff's equitable claims. *Id.*

The plaintiff in *Guzman* brought UCL claims for equitable relief as well as two state law claims for damages. 49 F.4th at 1310. The district court dismissed the damages claims as time-barred and subsequently entered summary judgment for the defendant on the UCL claim, reasoning that a plaintiff's inability to bring damages claims due to the statute of limitations "does not make the remedy [at law] inadequate" so as to permit a district court to exercise equitable jurisdiction over the UCL claims under *Sonner*. *Id.* at 1310-11. The Ninth Circuit agreed that the district court lacked equitable jurisdiction to hear the UCL claim because the plaintiff "had an adequate legal remedy in his time-barred [damages] claim," but held that the district court "should have . . . dismissed [the plaintiff's] UCL claim without prejudice for lack of equitable jurisdiction." *Id.* at 1313. The court explained that a district court must have equitable jurisdiction before hearing the merits of an equitable claim, or else it cannot "make a merits determination." *Id.* at 1313-14. "In accordance with this general rule, the district court should have dismissed [the plaintiff's] UCL claim without prejudice to refiling the same claim in state court." *Id.* at 1314 (citations omitted).

In *Guthrie v. Transamerica Life Insurance Co.*, 561 F. Supp. 3d 869, 872-74 (N.D. Cal. 2021), a pre-*Guzman* case, I analyzed the history, development, and practical significance of

10

1  equitable jurisdiction. There the plaintiff filed a single state law claim for equitable relief in state
2  court and the defendant removed it to federal court. *Id.* at 872. I found that I was required to have
3  subject matter and equitable jurisdiction to hear the equitable claim, but because the plaintiff
4  specifically asserted that he would *not* argue that he lacked adequate legal remedies, under
5  *Sonner*—and its requirement that a plaintiff establish a lack of adequate legal remedies for a
6  federal court to have equitable jurisdiction to hear a claim for equitable relief—I did not have
7  equitable jurisdiction. *Id.* at 875-76. Further, I reasoned that because the Supreme Court
8  explicitly permitted dismissal or remand for lack of equitable jurisdiction, remand to state court
9  was appropriate in that case. *Id.* at 879-80 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706,
10 718, 721 (1996)); *see also Cates v. Allen*, 149 U.S. 451 (1983). In dicta, I also explained that if I
11 dismissed the claim rather than remanding, "it seems that plaintiffs could simply refile their claims
12 in state court . . . . (*Sonner*, to put a fine point on it, was refiled in state court after the Ninth
13 Circuit affirmed dismissal.)." *Guthrie*, 561 F. Supp. 3d at 880.

14     Here, the plaintiffs do not assert or plead that they lack adequate legal remedies; rather,
15 they agree to voluntarily dismiss their equitable UCL claims without prejudice to refiling in state
16 court.[7] *See* Rodriguez Oppo. By seeking voluntary dismissal, they confirm that they will not
17 plead a lack of adequate legal remedies for their equitable claims. And where a plaintiff does
18 not—or will not—plead that she lacks adequate legal remedies, federal courts do not have
19 equitable jurisdiction over the equitable claims. *See Sonner*, 971 F.3d at 839-41; *Guthrie*, 561 F.
20 Supp. 3d at 875-76. Here, because the plaintiffs intentionally do *not* plead or argue that they lack
21 adequate legal remedies, they do not meet the standard in *Sonner*, and I may not exercise equitable
22 jurisdiction to hear the claim. And because I may not exercise equitable jurisdiction, I cannot
23 reach the merits of the claim. *See Guzman*, 49 F.4th at 1313-14. Therefore, dismissal must be
24 without prejudice.

25     Dismissal without prejudice to refiling in state court is exactly what the Ninth Circuit

---

[7] Unlike FAS's cited cases, *see* Rodriguez Repl. 5:1-18, Rodriguez does not argue that the UCL's longer statute of limitations makes his legal remedies inadequate; he merely asks for dismissal of the claim without prejudice.

11

ordered in *Guzman*, and it is permissible here for the same reasons.[8]  FAS asserts that *Guzman* is not dispositive because the plaintiffs' claims are not "connected to California public policy" and because *Guzman* "dismissed the *only claim*" left in the federal action and did not allow for separate parallel litigation in state court.  *See* Rodriguez Repl. 2:11-4:28.  But *Guzman* was an equitable jurisdiction decision unrelated to the merits of the case,[9] and it did not base its holding on the fact that one claim remained.  Rather, *Guzman* held that "a federal court that dismisses a claim for lack of equitable jurisdiction necessarily declines 'to assume the jurisdiction and decide the cause,'" *id.* at 1314 (citations omitted), meaning that by dismissing the plaintiffs' UCL claims here, I am declining jurisdiction *over those claims* but not over the other claims that remain in this case.  It is not an issue of "get[ting] two bites at the litigation apple," Rodriguez Repl. 1:23-24, because the plaintiffs are not pursuing the UCL claims in two venues—the UCL claim is being dismissed so they can refile in state court, just as the court in *Guzman* ordered.

Additionally, even if I may exercise supplemental or diversity jurisdiction over the UCL claim,[10] *see* Rodriguez Repl. 7 n.4; Def. Supp. Br. 3:16-22, that merely means that I have subject matter jurisdiction—it does not bear on my equitable jurisdiction to hear the claim, *see Guthrie*, 561 F. Supp. 3d at 873-74 (outlining historical and practical differences between subject matter and equitable jurisdiction); *see also Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884, 887 (9th Cir. 1953) (differentiating between subject matter and "equity" jurisdiction).

This jurisdictional question is relevant to FAS's second argument, that dismissal of the

---

[8] Other district courts have dismissed equitable claims without prejudice when the plaintiff so requested or consented.  *See, e.g.*, *Ary v. Target Corp.*, No. 22-CV-02625-HSG, 2023 WL 2622142, at *5 (N.D. Cal. Mar. 23, 2023); *Gomez v. Elite Lab. Servs. Weeklys, Ltd.*, No. 21-CV-03860-MMC, 2023 WL 2214172, at *8 (N.D. Cal. Feb. 24, 2023); *Droesch v. Wells Fargo Bank, N.A.*, No. 20-CV-06751-JSC, 2022 WL 17669713, at *7 (N.D. Cal. Dec. 14, 2022).

[9] It is worth noting that FAS's public policy argument is unpersuasive.  FAS argues that unlike *Guzman*, this case does not involve "enjoin[ing] fraudulent business practices that endangered the public at large."  Rodriguez Repl. 4:18-21.  The complaint's allegations of misclassification and wage theft are, of course, matters of utmost public importance that affect business practices, individuals, communities, and the broader economy of the state as a whole.

[10] Even if I instead have subject matter jurisdiction under CAFA, *see* Rodriguez Repl. 7:19-8:3, of which I am not convinced, I still must have equitable jurisdiction to hear equitable claims.  *See Guthrie*, 561 F. Supp. 3d at 879 (citing *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014)).

UCL claim will inevitably lead to "jurisdictional ping pong" because FAS will remove any UCL claim refiled in state court to federal court. *See* Rodriguez Repl. 7:15-9:5; *see also* Def. Supp. Br. 4 n.2.  At that point in litigation, there would be a single state law claim for equitable relief removed to federal court, the plaintiff could not (and likely would not) assert lack of adequate legal remedy, and the federal court would not have equitable jurisdiction to hear the claim—a situation on all fours with *Guthrie*.  And so under *Guthrie*, the case would be remanded.  FAS's removal of any refiled UCL claim certainly would be jurisdictional ping-pong—but it would be frivolous and unnecessary, given the lack of good faith belief that this court would have jurisdiction over the removal.  *See Guthrie*, 561 F. Supp. 3d at 875-76, 880; *see also Cates*, 149 U.S. at 460-61; *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 690 (1927).  Further, it does not matter which federal court or judge hears the removed case, because under *Guzman* "a federal court's pre-merits determination to withhold relief" by dismissing a claim for lack of equitable jurisdiction—in other words, exactly my decision here—"is binding on other federal courts." *Guzman*, 49 F.4th at 1314.  Accordingly, it seems that if FAS removed the UCL claim back to federal court, that court would be bound by my decision declining to exercise equitable jurisdiction over the claim.

Finally, FAS argued for the first time in reply that the case must be dismissed with prejudice under the *Colorado River* doctrine and related considerations concerning parallel litigation in state and federal courts.  *See* Rodriguez Repl. 5:21-6:22.  The Supreme Court in *Colorado River* explained that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them" and so dismissals or stays are warranted "[o]nly [for] the clearest of justifications."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976).

In supplemental briefing, the plaintiffs correctly point out that *Colorado River* contemplated a federal court staying or dismissing a case pending resolution of a state suit, which is different from the situation here, where the plaintiffs seek to dismiss a single claim without prejudice to refiling in state court.  *See United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1201-02 (9th Cir. 2021) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

13

U.S. 1, 9-12 (1983)). Even if I consider the spirit and goals of the doctrine, I find a clear justification is present here: because the plaintiffs failed to plead that they lack an adequate legal remedy, "traditional equitable principles bar [me] from entertaining" the UCL claim. *Guthrie*, 561 F. Supp. 3d at 874.

Each argument in FAS's supplemental brief asserts that judicial efficiency and related considerations, including those under the *Colorado River* doctrine, counsel against permitting parallel litigation in state and federal court. *See* Def. Supp. Br. 3:23-5:9. But parallel litigation itself is not a reason to dismiss the case with prejudice. *See Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) ("The rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system."); *see also Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017) (explaining that "parallel state litigation" was explicitly contemplated and permitted by *Colorado River*). And while I understand FAS's concerns, it can raise those issues to the state court and seek a stay, streamlined discovery proceedings, or any number of alternative processes that the state court may be able to consider given its jurisdiction to hear the claim. The point of *Guzman*, *Sonner*, and Supreme Court precedent dating back to the 1800s is that I may not exercise equitable jurisdiction over these contested claims; I cannot consider the merits of the argument, despite FAS's assertions that it would be more efficient.

Accordingly, the UCL claims in both cases are DISMISSED without prejudice.

## CONCLUSION

For those reasons, the motions are GRANTED in part and DENIED in part. For any motion to dismiss that was filed after June 6, 2023, the date of my Rule 1 Order, within seven days of the date of this Order, the parties shall meet and confer to confirm which motions are mooted by this Order and which motions raised new or different issues from the ones covered by this Order. For the mooted motions, defense counsel shall file a notice of withdrawal of motion for each of those cases. For any remaining new or different issues, counsel shall meet and confer to

agree upon a briefing and hearing schedule.

**IT IS SO ORDERED.**

Dated: August 9, 2023

William H. Orrick
United States District Judge