UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRED BOWERMAN, et al.,

    Plaintiffs,

v.

FIELD ASSET SERVICES, INC., et al.,

    Defendants.

Case No. 3:13-cv-00057-WHO

**ORDER ON WAITING TIME CLAIMS IN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 651, 652

## BACKGROUND

The parties filed cross motions for summary judgment or in the alternative summary adjudication. I issued an order addressing most of the issues raised in those motions, which lays out the background and facts of these cases. ("Prior Order") [Dkt. No. 691]. This Order assumes familiarity with those facts, which are incorporated here by reference.

Based on arguments raised by the parties at the hearing on these motions, I also ordered supplemental briefing relating to the plaintiffs' waiting time claims and the defendants' arguments about the "corporate vendor plaintiffs." [Dkt. No. 686]. The parties filed simultaneous briefs regarding the waiting time claims. Plaintiffs' Supplemental Brief 1 ("P. Supp. Br.") [Dkt. No. 689]; Defendants' Supplemental Brief 1 ("D. Supp. Br.") [Dkt. No. 690]. The defendants also filed a supplemental brief regarding the corporate vendor plaintiffs and the plaintiffs responded. The corporate vendor arguments will be addressed in detail in a subsequent order.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must

1  show the absence of a genuine issue of material fact with respect to an essential element of the
2  non-moving party's claim, or to a defense on which the non-moving party will bear the burden of
3  persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has
4  made this showing, the burden then shifts to the party opposing summary judgment to identify
5  "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary
6  judgment must then present affirmative evidence from which a jury could return a verdict in that
7  party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

8      On summary judgment, the court draws all reasonable factual inferences in favor of the
9  non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility
10 determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
11 facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony
12 does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*
13 *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

14     "If the nonmovant bears the burden of persuasion on the ultimate issue, the movant may
15 make its required initial showing that there is no genuine dispute of material fact by demonstrating
16 that 'there is an absence of evidence to support the non-moving party's case.'" *Pac. Gulf Shipping*
17 *Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897-98 (9th Cir. 2021) (first citing Fed.
18 R. Civ. Proc. 56(c)(1)(A); and then quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th
19 Cir. 2010)). "The burden of production then shifts to the nonmovant, who must go beyond the
20 pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and
21 admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.*
22 (internal quotation marks omitted) (quoting *Celotex Corp.*, 477 U.S. at 324). "The nonmovant's
23 burden of production at this point 'is not a light one'—it 'must show more than the mere existence
24 of a scintilla of evidence' or 'some "metaphysical doubt" as to the material facts at issue.'" *Id.*
25 (quoting *Oracle Sec. Litig.*, 627 F.3d at 387). The nonmoving party "must come forth with
26 evidence from which a jury could reasonably render a verdict in the non-moving party's favor,"
27 assuming that "all justifiable inferences are . . . drawn in its favor." *Id.* (quoting *Oracle Sec.*
28 *Litig.*, 627 F.3d at 387).

**DISCUSSION**

**I.    WAITING TIME CLAIMS**

The analysis in this section applies to the waiting time claims for plaintiffs Tim Miller, Tim Purkett, and Gilberto Rodriguez, for whom I previously determined the business-to-business ("B2B") exception to the ABC test does not apply; the parties agree that each is a sole proprietor not subject to the defendants' arguments about joint employment. Prior Order 24:2-23.

The plaintiffs argue that the ABC test applies to their claims and so summary judgment is warranted for liability for their waiting time claims, with damages to be calculated by the jury. As discussed in the Prior Order, the defendants' opposition contests that the ABC test applies but does not address their liability for the waiting time penalties if the test does apply. *See generally* [Dkt. No. 668]. At the hearing, the defendants raised for the first time the argument that the ABC test cannot apply to waiting time penalties because they are not wage order claims. Because the defendants had not previously raised this potentially dispositive argument[1] and the plaintiffs did not have a chance to respond, I ordered supplemental briefing, which the parties provided. Now I address the merits of the arguments.

The crux of the defendants' argument is that the *Borello* test applies to the plaintiffs' waiting time claims because they are grounded in the California Labor Code, not any wage order. *See* D. Supp. Br. The plaintiffs assert that their claims for waiting time are rooted in violations of the wage order such that, under California law, the ABC test applies to the claims. *See* P. Supp. Br.

The plaintiffs' claims are for violations of California Labor Code sections 201-03, which provide in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until

---

[1] In their initial opposition, the defendants failed to cite or discuss any of the cases or arguments that they now rely on as dispositive, including *Hill*, *Garcia*, and *Gonzales*. Despite this failure, I allowed supplemental briefing out of an abundance of caution to ensure that I address all valid arguments and apply the correct law.

3

an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.  The plaintiffs' complaints cite Labor Code sections 201-03 and assert, "Defendants failed to pay all wages, including overtime pay, owed to Plaintiff at the conclusion of his employment, and their failure, as alleged above, was willful."  *Purkett v. Field Asset Servs.*, Case No. 23-cv-01112, Complaint [Dkt. No. 1] ¶ 100; *Miller v. Field Asset Servs.*, Case No. 23-cv-01342, Complaint [Dkt. No. 1] ¶ 100; *Rodriguez v. Field Asset Servs.*, Case No. 23-cv-01346, Complaint [Dkt. No. 1] ¶ 100.

In *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019), the California Court of Appeal addressed a question left open by *Dynamex*, which was "whether the ABC test applies to non-wage order related Labor Code claims."  It concluded that the *Borello* test applies to "Labor Code claims that are *not* either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order," but that "the ABC test applies to Labor Code claims which *are* rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order."  *Id.* (emphases added).  There, the plaintiff sued the putative employer for failure to pay minimum wage, provide meal and rest periods, supply accurate wage statements, and reimburse expenses, each of which allegedly violated provisions of the relevant wage order *and* the Labor Code.  *See id.* at 1157-58.  The court found "close, if not inseparable ties between the[] alleged Labor Code violations and wage order provisions" such that "most of the statutory claims [were] rooted in wage order protections and requirements," so the ABC test "applied to those claims to resolve the employee vs. independent contractor issues."  *Id.* at 1158-59.

In line with *Gonzales* and in an opinion letter issued a few months prior, the California Division of Labor Standards and Enforcement ("DLSE") noted that applying the ABC test "would be appropriate" where waiting time claims "serve[] to enforce the underlying . . . overtime obligations of the wage orders."  Op. Letter from Special Couns. to Cal. Lab. Comm'r, Div. of Lab. Standards Enf't (May 3, 2019).  Though not binding law, the DLSE's reasoning is persuasive because it noted the differing paths California courts had taken in addressing this question and recommended that courts consider the "statutory purpose" of waiting time penalties to determine whether the ABC test applies, including whether they "serve to enforce wage order provisions."

4

*Id.*

Finally and most recently, in *Hill v. Walmart, Inc.*, 32 F.4th 811, 819 (9th Cir. 2022), the Ninth Circuit cited *Gonzales*, 40 Cal. App. 4th at 1157, for the proposition that for "Labor Code claims that are not either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order, the *Borello* test remains appropriate." There, the plaintiff modeled in photo shoots and asserted that the defendant failed to pay her immediately at the end of each photo shoot, in violation of her employment rights under Labor Code section 203; her only claims were brought under this statutory section. *Id.* at 814-15. The Ninth Circuit addressed a slightly different question from the issues in this case—whether the defendant was "foreclosed from raising a good-faith defense based on mistakenly classifying an employee as an independent contractor," *id.* at 816—but as relevant here, analyzed which employment test applied to the plaintiff's claims, *id.* at 818-19. It determined that the *Borello* test applied because the plaintiff did not allege that the defendant "violated any wage order." *Id.* at 819-20.

The defendants now cite *Hill* for the proposition that the Ninth Circuit held that *Borello* applies to all section 203 claims, but that is not what the opinion says. Rather, in a case where the plaintiff asserted a single claim for violation of section 203 with no discussion of any wage order whatsoever, the Ninth Circuit applied California case law that applies *Borello* to claims asserting violations of the Labor Code. It did not hold that *Borello* never governs section 203 claims in part because that question was not presented. And while the state appellate court in *Garcia v. Border Transportation Group, LLC*, 28 Cal. App. 5th 558, 571-72 (2018), *as modified on denial of reh'g* (Nov. 13, 2018), held that the relevant wage order did not encompass waiting time penalties and so applied *Borello* rather than the ABC test, that case came before the DLSE letter and the *Gonzales* opinion, both of which clarified the nuanced requirement that courts should look to the basis for the waiting time claims. Indeed, the DLSE letter specifically cited *Garcia* as one of the cases reaching a contradictory conclusion and noted that the *Garcia* court limited its holding to the facts of that case because of the lack of counterargument from the parties.[2] Op. Letter at 3 (citing

---

[2] The defendants also cite *Henry v. Central Freight Lines*, No. 2:16-CV-00280-JAM-JDP, 2021 WL 3187257, at *2-3 (E.D. Cal. July 28, 2021), for support. There, the district court initially held

5

*Garcia*, 28 Cal. App. 5th at 571 n.11).  Notably, *Garcia* was one of the first state appellate court cases to wrestle with applying *Dynamex*.

Here, the plaintiffs' claims for waiting time penalties arise from and are rooted in the wage orders because the plaintiffs bring their claims "to enforce payment of [their] wages due." *Id.*; *Gonzales*, 40 Cal. App. 5th at 1158-59.[3]  The statutory purpose of the waiting time claims is to ensure prompt payment of wages; here they rise or fall on the overtime claims and would not exist but for those claims.  And while the defendants argue that the plaintiffs did not cite the wage orders specifically within the waiting time penalties cause of action, the court in *Gonzales* was unpersuaded by similar arguments, instead looking to the "general allegation" at the opening of the complaint asserting that the defendants violated Labor Code and wage order protections.  40 Cal. App. 5th at 1157; *see also* Purkett Compl. ¶ 3 (alleging, in the opening of the complaint, that the defendants violated Labor Code and wage order protections); Miller Compl. ¶ 3 (same); Rodriguez Compl. ¶ 3 (same).  And here, the complaints specifically note that the waiting time penalties are grounded in the overtime claims.  *See* Purkett Compl. ¶ 100; Miller Compl. ¶ 100; Rodriguez Compl. ¶ 100.  That is more than enough to allege that the waiting time claims are rooted in and seek to vindicate rights provided by the wage order.

Accordingly, the ABC test applies to the waiting time penalty claims of the sole proprietor

---

that *Borello* applied to the waiting time claims and the plaintiff moved for reconsideration after the publication of *Gonzales*, arguing there was a change in controlling law.  *Id.* at *2.  The court denied the motion for reconsideration because, as a nonbinding state appellate court decision, *Gonzales* was not binding authority that could serve as a proper basis to grant reconsideration.  *Id.* at *3.  Though the remainder of the order was arguably dicta, I note that its reliance on *Garcia* to decline application of the ABC test did not analyze whether the claims were rooted in the wage orders such that the claims served to enforce provisions of the wage orders.  *See id.* at *2-3.  Here, I follow the reasoning of the DLSE Opinion Letter, which persuasively recommends such an approach.

For similar reasons, *Salter v. Quality Carriers, Inc.*, No. CV 20-479-JFW(JPRX), 2021 WL 5049054, at *7 (C.D. Cal. Oct. 27, 2021), is not persuasive.  That case cited *Henry* in declining to apply the ABC test to waiting time claims, emphasizing that the plaintiff's claims were broader than those contemplated by *Gonzales* because he argued they were "related" to—not "rooted in" or "served to enforce"—the wage orders.  *See id.* at *7-8.  The plaintiffs here make different arguments.

[3] In the absence of any binding authority from the California Supreme Court, and without any reason to believe that the state's highest court would hold differently from the appellate court in *Gonzales*, given the DLSE's recommendations, I will follow that case's reasoning.  *See Edgerly v. City & Cnty. of San Francisco*, 713 F.3d 976, 982 (9th Cir. 2013).

plaintiffs: here, Miller, Purkett, and Rodriguez. For the same reasons provided in the prior order, and because the Ninth Circuit in *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 477 (9th Cir. 2023), explained that summary judgment is proper for sole proprietor plaintiffs under prong B, here summary judgment is granted to these plaintiffs for these claims. *See also* Prior Order 24:2-23. They were employees as a matter of law and the jury will decide the amount in damages.

## II.  JOINT EMPLOYMENT CLAIMS

I will issue a more comprehensive written order on the arguments about the corporate vendor plaintiffs in the near future. For the parties' reference as they prepare for trial, this is a very brief synopsis of what that Order will hold.

After considering the parties' arguments at the hearing as well as their supplemental briefs, the corporate vendor plaintiffs' misclassification claims will survive summary judgment and will not be deemed joint employment claims. The protections provided by the claims are different, the case law neither precludes the plaintiffs from bringing such claims nor requires them to bring them as joint employment claims, the Ninth Circuit did not instruct otherwise, and the business-to-business exception provides an avenue for the defendants' arguments and defenses against liability. Given the arguments, the first order on summary judgment will be amended so that the jury will decide whether the business-to-business exception applies to the claims of Bush, Cherrin, and Cohick, and then whether they were employees of FAS.

## CONCLUSION

For those reasons, summary judgment is GRANTED as to liability for the waiting time claims of Miller, Purkett, and Rodriguez. A subsequent order will deny the defendants' motion for summary judgment and summary adjudication.

**IT IS SO ORDERED.**

Dated: January 24, 2024

William H. Orrick
United States District Judge