UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED BOWERMAN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>FIELD ASSET SERVICES, INC., et al.,<br><br>  Defendants. | Case No. 3:13-cv-00057-WHO<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT FOR GROUP 2 PLAINTIFFS**<br><br>Re: Dkt. Nos. 705, 707 |

## BACKGROUND

This case falls under the umbrella of the longstanding litigation in *Bowerman v. Field Asset Services*, which was originally filed as a putative class action in this court in 2013. This Order assumes familiarity with the factual and procedural history of that litigation, a summary of which is provided in my Order at Dkt. No. 691. In a nutshell, *Bowerman* alleged that the defendants (collectively, "Field Asset Services" ("FAS")), misclassified the plaintiffs as independent contractors instead of employees and so were liable for overtime wages, expense reimbursements, and waiting time penalties under California law. The class was certified and went to trial, the verdict favored the plaintiffs, the case was appealed, the Ninth Circuit decertified the class and reversed certain summary judgment decisions, and the case was remanded. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459 (9th Cir. 2023), *as amended*. The plaintiffs then filed dozens of individual cases, I directed the parties to divide the cases into five groups for case management purposes, and the litigation proceeded. [Dkt. No. 550].

Subsequently, in three separate orders, I granted in part and denied in part the parties' cross-motions for summary judgment for the plaintiffs in "Group 1." [Dkt. Nos. 691, 694, 700]. The third order, which is the one relevant here, addressed the claims of only plaintiff Matthew

Cohick, as the other Group 1 plaintiffs settled their cases. ("Prior Order") [Dkt. No. 700]. Cohick's case was then added to the Group 2 plaintiffs. [Dkt. No. 698].

Aside from Cohick, all but one of the Group 2 plaintiffs settled their cases.[1] [Dkt. Nos. 671, 712]. The other remaining plaintiff, Chad McLain, is at issue in this Order.

Relevant undisputed facts are as follows: McLain and his wife owned and operated a corporation called CMD Ventures, d/b/a Junk Out, that contracted with FAS. Deposition of Chad McLain ("McLain Depo.") [Dkt. No. 707-2] Ex. K 19:3–7, 38:8–11. The record shows that McLain was the president and responsible for many administrative functions, like operations, contract review, processing work orders, and hiring workers. *Id.* 38:8–11, 39:9–25, 40:16–24. The record also shows that he was frequently on site and doing inspections, *id.* 51:3-6, and that he personally provided property preservation services, Declaration of Chad McLain ("McLain Decl.") [Dkt. No. 713-1] Ex. 1 ¶¶ 7, 14. He took a paycheck and paid himself, and his salary ranged from about $125,000 to about $300,000 in 2011. McLain Depo. 120:3-25, 122:12-16.

The defendants filed a motion seeking summary judgment on all of McLain's claims. ("Mot.") [Dkt. No. 705]. The plaintiffs opposed. ("Oppo.") [Dkt. No. 713]. The defendants replied. ("Repl.") [Dkt. No. 715]. Finding this matter appropriate for resolution without oral argument under Civil Local Rule 7-1(b), I vacated the hearing set for March 27, 2024. [Dkt. No. 722].

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

---

[1] The plaintiffs filed a cross-motion for summary judgment, but it only addressed plaintiffs whose cases subsequently settled. [Dkt. No. 707]. Accordingly, it was rendered moot by the settlements and is VACATED.

1   made this showing, the burden then shifts to the party opposing summary judgment to identify
2   "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary
3   judgment must then present affirmative evidence from which a jury could return a verdict in that
4   party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

5   On summary judgment, the court draws all reasonable factual inferences in favor of the
6   non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility
7   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
8   facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony
9   does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*
10  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

11  "If the nonmovant bears the burden of persuasion on the ultimate issue, the movant may
12  make its required initial showing that there is no genuine dispute of material fact by demonstrating
13  that 'there is an absence of evidence to support the non-moving party's case.'" *Pac. Gulf Shipping*
14  *Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897-98 (9th Cir. 2021) (first citing Fed.
15  R. Civ. Proc. 56(c)(1)(A); and then quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th
16  Cir. 2010)). "The burden of production then shifts to the nonmovant, who must go beyond the
17  pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and
18  admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.*
19  (internal quotation marks omitted) (quoting *Celotex Corp.*, 477 U.S. at 324). "The nonmovant's
20  burden of production at this point 'is not a light one'—it 'must show more than the mere existence
21  of a scintilla of evidence' or 'some "metaphysical doubt" as to the material facts at issue.'"" *Id.*
22  (quoting *Oracle Sec. Litig.*, 627 F.3d at 387). The nonmoving party "must come forth with
23  evidence from which a jury could reasonably render a verdict in the non-moving party's favor,"
24  assuming that "all justifiable inferences are . . . drawn in its favor." *Id.* (quoting *Oracle Sec.*
25  *Litig.*, 627 F.3d at 387).

26  **DISCUSSION**

27  The defendants make five arguments in their motion. Their main argument is that
28  misclassification and joint employment claims are distinct under California law, and because

3

1    McLain improperly brings his claims under a misclassification theory rather than a joint employer
2    theory, all his claims fail. Though the defendants provide a few new (irrelevant) case citations and
3    sub-arguments, this is essentially the same argument they made for Cohick, which I rejected in my
4    Prior Order. For the same reasons, as explained below, the argument again fails. The defendants
5    provide four additional arguments, addressed below, that are either undeveloped or may be
6    considered by the jury but do not serve as reasons to grant summary judgment. I address the five
7    arguments in turn.

**I.    MISCLASSIFICATION AND JOINT EMPLOYMENT CLAIMS**

The defendants previously argued that certain plaintiffs must present their overtime, expense reimbursement, and waiting time penalty claims under a joint employment theory, rather than an independent contractor misclassification theory, because the two areas of law are mutually exclusive and because the plaintiffs were "employed" by the small businesses that contracted with FAS—an argument I rejected in my Prior Order. Prior Order 4–16. The defendants argued that California law requires plaintiffs to bring joint employment claims in this factual context, and while I noted that there is no law directly on point, as a general matter California law emphasizes that hiring entities cannot structure their businesses in a way that classifies workers as independent contractors solely to avoid liability under employment law. *See id.* 14–15. Because that was what Cohick alleged—that FAS required him to establish a corporation so that it could contract with him as an independent contractor and not have to provide employment law protections—and there was evidence in the record supporting that theory, Cohick was correctly proceeding under a misclassification theory. *See id.* 14–16. I also explained that the *Borello* test rather than the ABC test[2] would apply to Cohick's claims if the defendants showed that the statutory business-to-

---

[2] The multi-factor Borello test for employment considers:
(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-

business ("B2B") exception applied. *See id.*; Cal. Lab. Code § 2776. I noted that many of the defendants' arguments about Cohick's salary, his hiring of other workers for his entity, and his performance of administrative tasks rather than preservation work, among other arguments, went to factors considered within the B2B exception. Prior Order 14–15.

The defendants renew their arguments that McLain's claims cannot be brought as misclassification claims and instead must be brought as joint employment claims. *See* Mot. 22:27–24:28. I will again reject this argument, for all the reasons outline in my Prior Order, which is incorporated here by reference. The additional citations do not help the defendants' argument because they relate to what joint employers can or cannot be liable for, not whether a misclassification claim should have been pleaded as a joint employment claim.

For example, the defendants cite *Noe v. Superior Court*, 237 Cal. App. 4th 316 (2015), for the proposition that direct employment claims and joint employment claims are treated differently. Mot. 23:11–24:8. First, it is not novel to show that different claims are treated differently. Second, this is not quite what *Noe* stands for. Rather, *Noe* provides that liability for misclassifying an employee extends to a joint employer if the joint employer "knowingly acquiesces" to the misclassification decision of a co-employer, but will not be held liable under joint and several liability or agency theory without knowing acquiescence. 237 Cal. App. 4th at 329; *see also Serrano v. Aerotek, Inc.*, 21 Cal. App. 5th 773, 783 (2018) (concluding the same, with respect to violations of workers' meal period rights) (subsequent history omitted). Here, not only does McLain's claim not concern joint employment, agency theory, or joint and several liability, but

---

employee.
*S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 351, 769 P.2d 399, 404 (1989).
The ABC test provides:
> A worker is properly considered an independent contractor to whom a wage order does not apply only if the hiring entity establishes: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

*Dynamex Ops. W. v. Superior Ct.*, 4 Cal. 5th 903, 916-17, 416 P.3d 1, 7 (2018).

also the defendants do not contest that they *did* classify McLain—through Junk Out—as an independent contractor.[3] Clearly there is sufficient evidence that they knowingly acquiesced to the misclassification decision. For similar reasons, the defendants' reliance on *Miller v. Amazon.com Inc.*, No. 17-CV-03488-MMC, 2018 WL 6421868 (N.D. Cal. Dec. 6, 2018), and *Gomez v. Elite Labor Services Weeklys, Ltd.*, No. 21-CV-03860-MMC, 2023 WL 2214172 (N.D. Cal. Feb. 24, 2023), is unpersuasive.[4]

Next, the defendants contend that my Prior Order was legally incorrect, asserting that "[t]here is no legal basis for using the ABC test or the B2B exception to determine joint employer status." Mot. 25:1-27:24; *see also id.* 30:3-31:5. They rely on the Prior Order's analysis of *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289 (2018), *as modified* (May 18, 2018), and *Henderson v. Equilon Enterprises, LLC*, 40 Cal. App. 5th 1111 (2019). That discussion rejected the defendants' then-position that these cases showed that the plaintiffs were required to bring their misclassification claims as joint employment claims. Prior Order 7, 12–14. Instead, I found—which the defendants now agree with, Mot. 25:15–22—that *Curry* and *Henderson* provide

---

[3] This is a recurring source of confusion for the defendants—they continually argue that the plaintiffs, like McLain, could not possibly bring misclassification claims because they were considered employees of their corporations. But the defendants do not contest that they classified these plaintiffs as independent contractors via their corporations. *That* classification is the source of the *mis*classification claims.

For similar reasons, I am unpersuaded by their argument that *Vasquez*, *Roman*, and *Jinks* are inapplicable because they address only "the question [of] whether the worker is either an independent contractor or an employee" and do not apply "where the issue to be decided is possible joint employer liability." Mot. 26:15-27:1. Of course, the issue to be decided here *is* whether McLain was an independent contractor or employee—indeed the defendants never argue that they classified him as anything but an independent contractor. The issue is not joint employer liability because McLain did not sue under a joint employer theory. The defendants' repeated attempts to force this misclassification claim into a joint employment theory are unavailing. However, they may ultimately succeed in persuading the jury that they did not require McLain to structure his business in a particular way, or make other arguments under the B2B exception and *Borello* that they did not employ McLain.

[4] The defendants also cite *Quinn v. LPL Financial LLC*, 91 Cal. App. 5th 370, 374–76 (2023), *review denied* (Aug. 9, 2023), which recounted the "challenge" of distinguishing between employees and independent contractors under the law, noting the many "struggle[s]" of California courts and legislatures to do so, as well as the many developments in the law over the years. *Quinn* analyzed a then-new exception to the ABC test. This case also analyzes an exception to the ABC test, the B2B exception. But *Quinn* is not applicable here because it does not—as the defendants contend—show that these plaintiffs must bring joint employment claims on these facts. Indeed, *Quinn* did not even discuss joint employment.

6

1   that the ABC test does not apply to joint employment claims because workers with a primary
2   employer do not need the protections (and assumptions) of the ABC test where the primary
3   employer provides employment protections.  I did *not* find that the ABC test or B2B exception
4   should be used "to determine joint employer status."  That is because the jury here is not going to
5   determine joint employer status; the plaintiffs are not arguing they were jointly employed.  What
6   the jury is going to determine is whether the defendants misclassified McLain.  The defendants
7   may argue that McLain was not misclassified and instead was properly an independent contractor,
8   and they may use the B2B exception to make that argument.  As I said in the Prior Order, all of
9   their arguments *about* joint employment—including, for example, that McLain made a substantial
10  salary, employed others, and only did administrative tasks and not the actual preservation work—
11  also go to the B2B factors and so can properly be asserted under that legal theory.  *See* Prior Order
12  15:6-21.  But I did not find, nor did the plaintiffs argue, that the B2B exception "determine[s]"
13  joint employer status.  This line of argument is accordingly unpersuasive.
14       Finally, the defendants' reply emphasizes that McLain was paid proper wages and expense
15  reimbursements by Junk Out and cannot seek double recovery by suing FAS.  *See* Repl. 4:10–13,
16  10:7–11:6.  Whether McLain was already paid the correct amount in wages and reimbursements,
17  and so did not incur financial damages, goes to calculating damages and can be argued to the jury.
18       For those reasons, the defendants' arguments about joint employment status are legally
19  unpersuasive and do not serve as a basis to grant summary judgment.  And because the joint
20  employment arguments do not apply, the defendants' arguments that they are not liable as joint
21  employers for expenses and waiting time penalties, Mot. 31:6–15, also fail.

22  **II.   REMAINING ARGUMENTS**

23       The defendants make four other arguments, none of which supports granting their motion
24  at this stage.
25       First, the defendants argue that they did not "employ" McLain because they did not control
26  his work.  Mot. 32:17-33:17.  There is plenty of evidence in the record that creates a dispute of
27  fact over this element.  *See, e.g.*, McLain Decl. ¶¶ 8–12 (noting FAS exerted control through
28  instructions, calling, monitoring, and reviewing photos of the work).  The defendants can reassert

1   this argument at trial, where the jury will assess whether the ABC test or *Borello* governs

2   McLain's claims and whether McLain was employed by FAS under the proper standard.

3         Second, the defendants argue that McLain is subject to the Executive and Administrative

4   Exemptions under the applicable Wage Order and so is not eligible for overtime pay. Mot. 33:18-

5   34:21. Because the defendants fail to cite any supporting law, and the plaintiffs fail to address this

6   argument in opposition—which was mentioned again in reply only in passing, Repl. 9:13–16—it

7   is difficult to follow this argument and understand how it might apply here. To the extent

8   relevant, the parties may re-raise this argument before trial or to the jury. I will not address it

9   further here.

10        Third, the defendants seem to argue that they are not liable for failure to pay wages

11  because McLain himself was the one in charge of his own wages, so to the extent that he did not

12  receive proper wages, it was his own fault, and the doctrine of unclean hands bars recovery. Mot.

13  35:1-36:2. This is heavily fact-based argument that depends on who paid McLain and how,

14  among other disputed facts. It can be raised at trial to the jury.

15        Finally, the defendants argue for the first time in reply that McLain cannot seek

16  reimbursement for expenses because they were incurred by Junk Out the corporation, not by

17  McLain personally. Repl. 11:7-26. McLain points to evidence that he incurred expenses that were

18  never reimbursed, *see, e.g.*, McLain Decl. ¶ 15, and so argument must be presented to the jury.

## CONCLUSION

20  For those reasons, the defendants' motion is DENIED.

21  **IT IS SO ORDERED.**

22  Dated: March 27, 2024

William H. Orrick
United States District Judge