Monique Olivier (SBN 190385)
monique@os-legal.com
Christian Schreiber (SBN 245597)
christian@os-legal.com
**OLIVIER & SCHREIBER PC**
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

James E. Miller (SBN 262553)
jemiller@millershah.com
**MILLER SHAH LLP**
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| *In re Field Asset Services, Inc., et al.* | Case No.: 13-cv-00057-WHO |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPROVE PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT** |
| This Document Relates to: | |
| *Fred Bowerman,* Case No.: 13-cv-00057-WHO; *Julia Magdaleno (f/k/a Bowerman),* Case No.: 13-cv-00057-WHO | Date:          March 26, 2025<br>Time:          2:00 p.m.<br>Courtroom:  2, 17th Floor<br>Judge:        Hon. William H. Orrick |

## NOTICE OF MOTION AND MOTION

Please take notice that on March 26, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor, before the U.S. District Court for the Northern District of California, Plaintiffs Fred Bowerman and Julia Magdaleno (f/k/a Julia Bowerman), will move the Court for an order approving the parties' settlement of this action pursuant to California Labor Code section 2699(l)(2).

This unopposed motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Monique Olivier, and James E. Miller, and supporting exhibits, the pleadings, records, and papers on file in this action; and any oral argument on the motion.

Dated: February 19, 2025                    Respectfully submitted,

                                            OLIVIER & SCHREIBER PC
                                            MILLER SHAH LLP

                                            By: /s/ Monique Olivier
                                                    Monique Olivier
                                                    *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    PROCEDURAL BACKGROUND.......................................................................... 1

III.   SUMMARY OF SETTLEMENT TERMS.............................................................. 3

    A.   Monetary Terms................................................................................................. 3

    B.   Scope of the Release ......................................................................................... 4

    C.   Settlement Funding, Payments, and Settlement Administrator Duties............... 4

    D.   Attorneys' Fees, Costs, and Case Contribution Awards..................................... 5

IV.    ARGUMENT ......................................................................................................... 5

    A.   Legal Standard for PAGA Settlements. .............................................................. 5

    B.   The Terms of the Settlement Are Fair, Reasonable, and Adequate...................... 6

       1.   The Settlement Was Negotiated at Arms' Length by Experienced Counsel and with a Highly Respected Neutral. ....................................................................... 6

       2.   Plaintiffs Face Considerable Ongoing Risk in the Absence of Settlement.................... 7

       3.   This Settlement Fully and Finally Disposes of All Claims in These Consolidated Proceedings. .................................................................................... 9

       4.   The Value of the Settlement to the State and Aggrieved Employees Is Substantial and Allocated Appropriately............................................................... 9

       5.   Plaintiffs Provided the LWDA with Notice of the Proposed Settlement...................... 11

    C.   Plaintiffs' Requested Case Contribution Payments Are Warranted. ................ 11

    D.   Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable and Appropriate. ........ 12

       1.   Counsel Secured an Excellent Settlement for the State and Aggrieved Employees While

Assuming Significant Risk in Litigating This Action....................................... 14

2.  Counsel's Time Was Reasonably Spent. ........................................................ 14

3.  Counsel's Hourly Rates Are Reasonable. ....................................................... 17

4.  Plaintiffs' Counsel's Request for Costs Is Reasonable. .................................. 18

E.  The Settlement Administrator Fees Are Reasonable and Appropriate. ............................ 19

V.  CONCLUSION ................................................................................................................ 19

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO

1

# TABLE OF AUTHORITIES

2

Page(s)

## Cases

3

*Acosta v. Frito-Lay, Inc.*,
4
   2018 WL 2088278 (N.D. Cal May 4, 2018).................................................................. 8

5
*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*,
6
   226 Cal. App. 4th 26 (2014)........................................................................................ 17

7
*Bellinghausen v. Tractor Supply Company*,
   306 F.R.D 245 (N.D. Cal. 2015). ................................................................................ 11
8

9
*Bennett v. SimplexGrinnell LP*,
   2015 WL 12932332 (N.D. Cal. Sept. 3, 2015)............................................................ 13

10
*Betancourt v. Advantage Human Resourcing, Inc.*,
11
   2016 WL 344532 (N.D. Cal. Jan. 28, 2016)................................................................. 8

12
*Bower v. Cycle Gear, Inc.*,
13
   2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ............................................................. 7

14
*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3d 973 (9th Cir. 2008) ....................................................................................... 17
15

16
*Carrington v. Starbucks Corp.*,
   30 Cal.App.5th 504 (2018) .......................................................................................... 10

17
*Chavez v. Netflix, Inc.*,
18
   162 Cal. App. 4th 43 (2008) ........................................................................................ 13

19
*Chen v. Western Digital Corporation*,
   2021 WL 9720778 (C.D. Cal. Jan. 5, 2021)................................................................ 10
20

21
*Children's Hosp. and Medical Center v. Bonta*,
   97 Cal. App. 4th 740 (2002) ........................................................................................ 17

22
*Cicero v. DirecTV, Inc.*,
23
   2010 WL 2991486 (C.D. Cal. July 27, 2010).............................................................. 13

24
*Citizens Against Rent Control v. City of Berkeley*,
25
   181 Cal. App. 3d 213 (1983) ....................................................................................... 16

26
*Clark v. American Residential Services LLC*,
   175 Cal.App.4th 785 (2009) ........................................................................................ 11

27

28

iii

*Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ........................................................................ 13

*Correa v. Zillow, Inc.*,
   2021 WL 4925394 (C.D. Cal. June 14, 2021) ............................................... 10

*Hefler v. Wells Fargo & Company*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................... 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ....................................................................................... 15

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litigation*,
   295 F.R.D. 438 (C.D. Cal. 2014) ................................................................... 18

*Science Applications Internat. Corp. v. Superior Court*,
   39 Cal. App. 4th 1095 (1995) ........................................................................ 19

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ................................................................. 12, 15, 17

*Kullar v. Foot Locker Retail, Inc.*,
   168 Cal.App.4th 116 (2008) ........................................................................ 7, 8

*Laffitte v. Robert Half Internat. Inc.*,
   1 Cal.5th 480 (2016) .......................................................... 12, 13, 14, 15

*Mandel v. Lackner*,
   92 Cal. App. 3d 747 (1979) ........................................................................... 18

*MBNA America Bank, N.A. v. Gorman*,
   147 Cal. App. 4th Supp. 1 (2006) .................................................................. 16

Moniz v. Adecco USA, Inc.,
   72 Cal. App. 5th 56 (2021) .............................................................................. 6

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ....................................................................... 15

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   221 F.RD. 523 (C.D. Cal. 2004) ...................................................................... 8

*North v. Superior Hauling and Fast Transit, Inc*,
   2020 WL 12967997 (C.D. Cal. May 29, 2020) ............................................. 10

iv

*Officers for Justice v. Civil Service Comm'n of City & County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................................ 8

*Quinn v. State of California*,
  15 Cal.3d 162 (1995) ................................................................................................... 12

*Reyes v. Experian Info. Sols., Inc.*,
  2020 WL 5172713 (C.D. Cal. July 30, 2020).............................................................. 11

*Ruch v. AM Retail Grp., Inc.*,
  2016 WL 5462451 (N.D. Cal. Sept. 28, 2016) ........................................................... 10

*Syed v. M-I, LLC*,
  2017 WL 3190341 (E.D. Cal. July 27, 2017)............................................................. 11

*Syers Properties III, Inc. v. Rankin*,
  226 Cal. App. 4th 691 (2014) ..................................................................................... 15

*Thomas v. MagnaChip Semiconductor Corp.*,
  2018 WL 2234598 (N.D. Cal. May 15, 2018)............................................................ 18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................... 13, 14, 15, 17

*Vo v. Las Virgenes Municipal Water District*,
  79 Cal. App. 4th 440 (2000) ....................................................................................... 15

*Williams v. Superior Court*,
  3 Cal.5th 531 (2017) ..................................................................................................... 5


**<u>Statutes</u>**

Cal. Lab. Code § 2699 ........................................................................................ 1, 5, 10, 12


**<u>Rules</u>**

Federal Rule of Civil Procedure 23 ............................................................................... 5

California Rules of Court, Rule 3.769 ............................................................................. 5

N.D. Cal., L.R. 54-5 ..................................................................................................... 15

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO

1  **I.      INTRODUCTION**

2          Plaintiffs Fred Bowerman and Julia Magdaleno (f/k/a Julia Bowerman) (collectively

3  "Plaintiffs" or "the Bowermans") seek approval of the settlement of Plaintiffs' claim under the

4  Private Attorneys General Act, Labor Code §§ 2699 *et seq.* ("PAGA"), against Defendants

5  Field Asset Services, Inc., Field Asset Services, LLC, n/k/a Xome Field Services LLC, and

6  Cyprexx Services, LLC (collectively "Defendants" or "FAS").  This PAGA settlement was

7  reached after several years of hard-fought litigation, after the parties had engaged in substantial

8  discovery, motion practice, and efforts to resolve the case through direct settlement

9  negotiations and negotiations facilitated by experienced mediators and, ultimately, Magistrate

10 Judge Spero.  The settlement resolves the PAGA claim alleged in the operative complaint for

11 $250,000 and finally and fully resolves the remaining existing claim brought by the

12 Bowermans in this wage and hour action.[1]  The settlement provides significant civil penalties

13 to the State of California and is fair, reasonable, and adequate under the relevant legal

14 standards.  Accordingly, Plaintiffs respectfully request that the Court enter an order approving

15 the proposed settlement.

16 **II.     PROCEDURAL BACKGROUND**

17         The tortured procedural history of this action is well known to the Court, and will be

18 briefly summarized again here.  On January 7, 2013, Plaintiffs, on behalf of themselves and a

19 proposed class of similarly situated individuals, commenced this action, a putative class action

20 against FAS asserting that FAS had violated provisions of the Labor Code and Wage Orders by

21 misclassifying them as independent contractors. This operative complaint includes claims for:

22 (1) failure to pay overtime; (2) failure to reimburse business expenses; (3) waiting time

23 penalties; and (4) violations of the Unfair Competition Law, Business & Professions Code §§

24 17200 *et seq.* ("UCL"); and (4) violations of the Private Attorneys General Act, Labor Code §§

25

26 [1] The PAGA Settlement Agreement is submitted herewith.  *See* Declaration of Monique
   Olivier in Support of Motion for Approval of PAGA Settlement ("Olivier Decl."), Ex. A.
27 Plaintiffs have reached a separate confidential settlement with FAS resolving their individual
   wage claims.  *Id.* ¶ 7.

28

1  2698 *et seq.* ("PAGA").

2  On January 26, 2015, the Court certified a Class of 156 "vendors" who worked for FAS

3  between January 7, 2009 and December 20, 2016 and were designated by FAS as independent

4  contractors.  *See* ECF 78.  On March 17, 2017, the Court granted partial summary judgment in

5  favor of the Class, finding that FAS misclassified the Class members as independent

6  contractors, failed to pay them overtime wages, and failed to reimburse them for business

7  expenses.  *See* ECF 205.  In July 2017, a jury awarded Plaintiff Fred Bowerman and ten Class

8  members substantial damages.  After their UCL claims were tried to the Court, the Court

9  entered a partial judgment of over $2.8 million in favor of the ten Class members, and FAS

10 appealed.  *See* ECF 358.

11 On July 5, 2022, the Ninth Circuit Court of Appeals reversed the orders certifying the

12 Class and granting summary judgment and vacated the judgment.  *See* ECF 487.  On August 8,

13 2022, Plaintiffs filed a Petition for Rehearing or Rehearing En Banc and for Certification of

14 Questions to the California Supreme Court, which the Ninth Circuit denied on February 14,

15 2023. *See* ECF 489.  The Ninth Circuit issued a mandate on February 22, 2023, returning

16 jurisdiction to this Court.  *See* ECF 490.  Pursuant to this Court's orders, on April 14, 2023,

17 notice was sent to all Class members, informing them of the developments in the case and

18 tolling their claims through June 13, 2023.  *See* ECF 494.

19 Following these events, 88 former Class members filed individual actions.  In total, 72

20 federal cases were ordered related and consolidated to this action.  FAS subsequently moved to

21 dismiss all the federal cases except this one.  All motions were denied with the exception of the

22 plaintiffs' UCL claims, which were all dismissed without prejudice to refiling in state court on

23 the basis that the federal courts lacked equitable jurisdiction over the UCL claims.  Plaintiffs

24 then filed over sixty additional state cases to preserve their UCL claims. Olivier Decl. ¶ 4.

25 Per this Court's direction, the individual actions in the consolidated action were split

26 into five groups, all of which were scheduled for trial and for individual settlement

27 conferences.  Between October 2023 and October 2024, the Parties attended eleven (11)

28

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO

settlement conferences with the Honorable Joseph C. Spero.  All plaintiffs who engaged in one or more of these Settlement Conferences resolved their individual claims with FAS.  As part of the settlement of those claims, each plaintiff also released their entitlement to any payment relating to the Bowermans' PAGA claim.  Olivier Decl. ¶ 5.

All other actions in the consolidated action were settled by October 2024.  With respect to the Bowermans, the parties directly negotiated by providing demands and counters with the assistance of Judge Spero and then attended a settlement conference with Judge Spero on November 12, 2024.  At the end of that settlement conference, the parties had reached a settlement as to the Bowermans' individual claims and a separate settlement as to the Bowermans' representative PAGA claim.  Olivier Decl. ¶ 6.

This motion for approval follows.

### III.    SUMMARY OF SETTLEMENT TERMS

#### A.  Monetary Terms

The parties have agreed to resolve the PAGA claim asserted in this action for a Gross Settlement Amount of $250,000, subject to Court approval.  See Olivier Decl., Ex. A, ¶ 3.1.[2] A detailed proposed Plan of Allocation is submitted herewith.  *See* Olivier Decl., Ex. B. Plaintiffs propose a Net Settlement Amount, of which 75% shall be paid to the Labor and Workforce Development Agency (LWDA) and 25% shall be paid to the Aggrieved Employees, i.e., those former Class members who performed services for FAS between January 11, 2012 and December 31, 2024.  The Net Settlement Amount is the Total Settlement Amount less the following: (1) costs of settlement administration not to exceed $9,950; (2) service awards to Fred Bowerman and Julia Magdaleno in the amount of $10,000 each; and (3) attorneys' fees and costs in the amount of one-third of the Total Settlement Amount, or $83,333.33, inclusive of costs.  *See* Olivier Decl., Ex. B.  This results in a Net Settlement Amount of $136,716.67 to be allocated 75% to the LWDA and 25% to the Aggrieved Employees.  *Id.*

---

[2] Capitalized terms not otherwise defined herein have the same meaning as the terms defined in the Settlement Agreement.

There are 83 Aggrieved Employees.  *See* Olivier Decl., Ex. C.  Those Aggrieved Employees who litigated and settled their individual wage claims and, as part of that settlement, released their right to PAGA penalties, will receive a flat payment of $50 (the "Aggrieved Employee Litigants").  *See* Olivier Decl., Ex. B.  For those Aggrieved Employees who did not litigate their individual claims, those employees will receive a pro rata amount of the Net Settlement Amount based upon the total number of days worked during the relevant period (the "Aggrieved Employee Non-Litigants").  *Id.*  The minimum individual settlement amount for those Aggrieved Employee Non-Litigants is $56.16, the maximum individual settlement amount is $4,719.51, and the average settlement amount is $861.26.  *See* Olivier Decl., Ex. C.  The range of payment amounts is attributable to the number of days worked during the relevant period, with 24 days on the low end and 2,017 days on the high end.  *Id.*

**B.  Scope of the Release**

Pursuant to the Settlement Agreement, Plaintiffs, on behalf of themselves and the State of California, and all Aggrieved Employees, release their claims for civil penalties under PAGA that arose during the PAGA Period based on the same facts and/or claims alleged in the Action and Plaintiffs' letters to the LWDA.  *See* Olivier Decl., Ex. A, ¶ 5.

**C.  Settlement Funding, Payments, and Settlement Administrator Duties.**

The parties propose that the Court appoint Strategic Claims Services, Inc. ("SCS") as the settlement administrator.  SCS was established in 1999 and has administered thousands of settlements.  SCS has agreed to cap its settlement administration costs at $9,950.  *See* Olivier Decl., ¶¶ 22, Ex. D.

Pursuant to the Settlement Agreement, FAS will deposit the Gross Settlement Amount into a Qualified Settlement Fund administered by SCS within fifteen (15) days of the Court's approval of the Settlement.  At the same time, FAS will also provide SCS with the most recent contact information and mailing addresses in its possession for all Aggrieved Employees.  Olivier Decl., Ex. A, ¶ 4.  Prior to mailing settlement checks to Aggrieved Employees, SCS will update the mailing addresses contained in data provided by FAS against the National

1    Change of Address Database.  Payments to all Aggrieved Employees and to the LWDA will be

2    issued by SCS within 30 days of FAS funding the Gross Settlement Amount.  *Id.* at ¶ 4.3.

3    Should any check be returned as undeliverable, SCS will attempt to determine the correct

4    address and will perform a re-mailing within seven (7) days of receiving a returned check.  *Id.*

5    at ¶ 4.3.b.  Any Individual Settlement Payment checks that remain undeliverable or uncashed

6    one-hundred eighty (180) calendar days after the postmarked date of the initial mailing will be

7    cancelled and the funds associated with such checks will be sent, subject to the Court's

8    approval, to Legal Aid at Work, as a *cy pres* beneficiary.  Legal Aid at Work provides legal

9    services to low-income California workers.  *Id.* at ¶ 4.4; Olivier Decl. ¶ 25.  SCS will also

10   disburse any case contribution fees to Plaintiffs and any attorneys' fees and costs to Plaintiffs'

11   counsel as approved by the Court.  Olivier Decl., Ex. A, ¶ 4.3.

12       **D.  Attorneys' Fees, Costs, and Case Contribution Awards.**

13       The Settlement Agreement provides for attorneys' fees and costs of one-third of the

14   settlement fund, or $83,333.33, inclusive of costs, subject to the approval of the Court.  Olivier

15   Decl., Ex. A, ¶ 4.3. The Agreement also provides, subject to Court approval, for case

16   contribution awards for Plaintiffs Fred Bowerman and Julia Magdaleno of $10,000 each, in

17   recognition of the burdens they assumed and efforts they made on behalf of the State and

18   aggrieved employees.

19   **IV.    <u>ARGUMENT</u>**

20       **A.  Legal Standard for PAGA Settlements.**

21       PAGA settlements are subject to court review, "ensuring that any negotiated resolution

22   is fair to those affected."  *Williams v. Super. Ct of Los Angeles County*, 3 Cal.5th 531, 549

23   (2017) (quoting Cal. Lab. Code 2699(l)(2)) (internal quotation marks omitted).  Although

24   PAGA does not set forth the particular standards against which a PAGA settlement should be

25   evaluated, some of the factors for review of a class action settlement under Federal Rule of

26   Civil Procedure 23, California Code of Procedure § 382, and California Rules of Court, Rule

27   3.769 may be "useful in evaluating the fairness of a PAGA settlement" by the reviewing court.

28

*See Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021).  In particular, "while PAGA does not require the trial court to act as a fiduciary for aggrieved employees, adoption of a standard of review for settlements that prevents 'fraud, collusion or unfairness,' and protects the interests of the public and the LWDA in the enforcement of state labor laws is warranted." *Id*.  Furthermore, "[b]ecause many of the factors used to evaluate class action settlements bear on a settlement's fairness—including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement." *Id*.

**B.  The Terms of the Settlement Are Fair, Reasonable, and Adequate.**

**1.    The Settlement Was Negotiated at Arms' Length by Experienced Counsel and with a Highly Respected Neutral.**

At all times, the parties negotiated at arms' length with the significant assistance and facilitation of Judge Spero.  Plaintiffs and the interests of the Aggrieved Employees were represented in settlement negotiations by a team of attorneys who have considerable experience in representative and wage and hour litigation, and who are, therefore, well-versed in the legal and factual issues.  Olivier Decl. ¶¶ 26.  FAS was similarly represented by counsel with extensive experience defending complex litigation, including wage and hour representative actions.  The settlement negotiations were contested and conducted in good faith.  *Id.* ¶ 28.

Judge Spero presided over the settlement discussions and ultimate resolution of all Aggrieved Employees who prosecuted their individual wage lawsuits after the class in this action was decertified (many with a second lawsuit in state court on the UCL claim) before presiding over the negotiations that culminated in this settlement.  As a result, not only were the parties ably represented by counsel, but the neutral who presided over this PAGA Settlement also had a deep understanding of the complexities and challenges of the over 80 separately prosecuted individual actions and an understanding of the individual recoveries in those lawsuits at the time that this PAGA settlement was reached. The participation of a well-

respected neutral in this case is strong assurance that the Settlement is the result of arm's-length negotiations. *See Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 129 (2008) ("The court . . . should give considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in assuring itself that a settlement agreement represents an arm's length transaction entered without self-dealing or other potential misconduct."); *see also Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016) ("[T]he parties reached their settlement after two full-day mediation sessions before impartial and experienced mediators, which strongly suggests the absence of collusion or bad faith by the parties or counsel.").

The Settlement is the product of an adversarial and careful negotiation with the assistance of a well-respected and experienced neutral, Plaintiffs with a proven commitment to litigate this action for the benefit of others, and experienced and skilled class action counsel. The arms' length nature of the negotiations, the expertise of counsel, and the involvement of Judge Spero, therefore, all weigh in favor of approval of this PAGA settlement. *See Kullar*, 168 Cal. App. 4th at 129.

### 2. Plaintiffs Face Considerable Ongoing Risk in the Absence of Settlement.

The settlement is fair and reasonable in light of the strength of Plaintiffs' case and the potential risks. The parties did not come to this Settlement lightly, but after over a decade of hard-fought litigation with wins and losses on both sides. While Plaintiffs believe in the merits of their claims, i.e., that they and all Aggrieved Employees have been misclassified as independent contractors, they have already experienced the consequences of the inherent risks posed by litigation. Although the Class was certified in 2015 and a jury awarded Plaintiff Fred Bowerman and ten Class members substantial damages following the 2017 jury and Court trials, the Ninth Circuit ultimately reversed the order certifying the class and vacated the judgment, gutting both the legal wins and the sizeable awards several of the Plaintiffs had obtained, and resulting in subsequent lengthy and complex litigation.

1   The parties have vigorously contested the merits issues for years, including through

2   several motions for summary adjudication and an appeal.  Without a negotiated resolution,

3   both sides will continue to face significant time, expenses and risk.  In addition, as the Court is

4   aware, California law with respect to independent contractor misclassification has changed

5   several times over the course of this litigation.  Plaintiffs submit that although in certain

6   respects the law is now more protective of workers, new legislation, including the business-to-

7   business defense available to FAS, is not without risk of findings in favor of defendants with

8   respect to employment classification.  *See*, *e.g*., Labor Code § 2776.

9   "[U]nless the settlement is clearly inadequate, its acceptance and approval are

10  preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*

11  *Corp. v. DIRECTV, Inc.*, 221 F.RD. 523, 527 (C.D. Cal. 2004). The outcome of this action,

12  should it proceed to further motion practice and/or trial, is by no means certain.  In addition,

13  even upon judgment, post-trial motions and an appeal would be likely.  *See Betancourt v.*

14  *Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2016 WL 344532, at *4 (N.D. Cal.

15  Jan. 28, 2016).  "[I]t is the very uncertainty of outcome in litigation and avoidance of

16  wastefulness and expensive litigation that induce consensual settlements." *Officers for Justice*

17  *v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

18  The substantial information the Parties received through discovery, motion practice,

19  and court guidance, as well as the additional information and data exchanged during settlement

20  negotiations, has been more than sufficient to create "an understanding of the amount that is in

21  controversy and the realistic range of outcomes of the litigation." *Kullar*, 168 Cal. App. 4th at

22  120.  In considering settlement, Plaintiffs and their counsel carefully balanced the risks of

23  continuing to engage in protracted and contentious litigation as well as the challenges in

24  collecting a large judgment against the benefits to the State and the Aggrieved Employees of

25  resolving the PAGA claim now.

26  The Parties' informed decisionmaking and negotiation, in light of the risks known

27  from this lengthy litigation, favor approval of the Settlement. *See Acosta*, 2018 WL

28

2088278, at *9 (favoring approval of a settlement where the parties "participated in several rounds of discovery production and two rounds of mediation").

Thus, these circumstances support approval of the proposed settlement.

### 3.    This Settlement Fully and Finally Disposes of All Claims in These Consolidated Proceedings.

The parties have reached this settlement after over a decade of litigation and after all other individual claims have been resolved.  Plaintiffs and counsel have had the benefit of years of discovery, motion practice, depositions and the exchange of tens of thousands of documents.  In addition, the parties have extensively litigated each of the wage claims present in this case which serve as the predicate for the PAGA claims.  This PAGA settlement thus comes on the heels not only of significant litigation including dozens of orders from this Court and a Ninth Circuit opinion, but also extensive post-appeal litigation and then negotiation of over 40 individual settlements.  With the assistance of Judge Spero, the parties reached an agreement to resolve the PAGA claims after all other claims and lawsuits were resolved. Approval of the PAGA settlement will inure to the benefit of the State and Aggrieved Employees and will also fully and finally conclude all claims, actions and interests consolidated with this action.

### 4.    The Value of the Settlement to the State and Aggrieved Employees Is Substantial and Allocated Appropriately.

The Parties have agreed to resolve the PAGA claims on behalf of the State and 83 Aggrieved Employees for $250,000.  This is a significant recovery in PAGA penalties.

The State will receive a payment of over $100,000.  Olivier Decl., ¶ 33.  Those Aggrieved Employees who resolved their individual wage claims will receive a payment of $50 each.  These Aggrieved Employees chose to pursue individual lawsuits after this action was decertified and achieved individual settlements to recover lost wages and business expenses.  Thus, these Aggrieved Employees have achieved a benefit from this litigation separate and apart from the PAGA claim.

The remaining Aggrieved Employees will receive a pro rata payment based upon the number of days they worked for FAS during the PAGA period, i.e., January 11, 2012 to December 31, 2024.  The minimum payment is $56.16 and the maximum payment is $4,719.51.  Olivier Decl., Ex. C.

Further, the proposed distribution plan is straightforward.  The Settlement Administrator will mail payments directly to the LWDA and the Aggrieved Employees without any need to complete claim forms.  Payments will be distributed expeditiously as soon as this Court enters judgment and the time for any appeals runs.

The PAGA claims being resolved through this settlement are willful misclassification, overtime, wage statement, meal break, and business expense claims.  The potential value of these claims, should Plaintiffs prevail on everything, is between $1M and $2.3M, with a mid-point of $1.65M.  A negotiated resolution resulting in a PAGA settlement that is over 15% of the mid-point value of an uncertain and far distant judgment, is a very reasonable settlement. Given the risks of trial as described above, as well as the Court's discretion to reduce penalty amounts under PAGA at trial, the settlement amount is fair, adequate and reasonable. (*See* Lab. Code § 2699(e)(2).)

The settlement is also well within the range that courts routinely approve. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (affirming trial court's penalty award of $5 per pay period after a PAGA trial); *see also Chen v. W. Digital Corp.,* 2021 WL 9720778, at *7 (C.D. Cal. Jan. 5, 2021) (approving settlement amount that was between 10.8% to 15.9% of total exposure); *Correa v. Zillow, Inc.*, 2021 WL 4925394, at *5 (C.D. Cal. June 14, 2021)  (approving settlement at 13.75% of total exposure); *North v. Superior Hauling & Fast Transit, Inc.*, 2020 WL 12967997, at *7 (C.D. Cal. May 29, 2020) (approving settlement at 8.8% of total exposure); *Ruch v. AM Retail Grp., Inc*.,  14-cv-05352, 2016 WL 5462451, at *7 (N.D. Cal. Sept. 28, 2016) (approving PAGA recovery representing less than 2% of maximum potential recovery).

The value of the settlement in light of the litigation risks described above favors approval

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO

of the settlement.

### 5.      Plaintiffs Provided the LWDA with Notice of the Proposed Settlement.

The LWDA was given notice of the settlement on February 6, 2025, and the LWDA has not raised any objection.  Olivier Decl. ¶ 53.  Plaintiffs will advise the Court prior to the hearing if they learn that the LWDA objects to the settlement.

### C. Plaintiffs' Requested Case Contribution Payments Are Warranted.

Plaintiffs Fred Bowerman and Julia Magdaleno request case contribution payments of $10,000 each to recognize the time and effort that they spent on behalf of all Aggrieved Employees and the State.  The traditional basis for awarding service payments to named plaintiffs in class action settlements supports the award of service payments in PAGA settlements.  *See Clark v. American Residential Services LLC*, 175 Cal.App.4th 785, 806 (2009) (reviewing caselaw and noting that "the rationale for making enhancement or incentive awards to named Plaintiffs is that he or she should be compensated for the expense or risk he has incurred in conferring a benefit on other members of the class"); *Kinney v Harvest AL Management Sub LLC*, no. 2:12-CV-02716-TLN-CKD (E.D. Cal., Sep. 6, 2013) (approving a service payment in a PAGA-only settlement in recognition of the plaintiff's efforts).

Without Plaintiffs' efforts, there would be no recovery at all.  Each Plaintiff has been engaged in diligently prosecuting this action with counsel from its outset in 2013.  Plaintiffs were deposed twice, participated in at least five mediations or settlement conferences, responded to substantial written discovery, assisted in preparing the case for trial, testified at trial, worked with counsel on strategy and litigation after the appeal, and assisted counsel in reaching a negotiated resolution of these PAGA claims on behalf of the State and Aggrieved Employees.  Plaintiffs' burdens and efforts support their request.  *See, e.g., Reyes v. Experian Info. Sols., Inc.*, No. 16-cv-563, 2020 WL 5172713, at *5 (awarding a $15,000 service award to the class representative) (C.D. Cal. July 30, 2020); *Syed v. M-I, LLC* (E.D. Cal. July 27, 2017) No. 12-cv-1718, 2017 WL 3190341, at *9 (awarding service awards of $15,000 and $20,000 to

1  the class representatives, noting that the amounts were "not outside the realm of what has been

2  approved as reasonable by courts") (collecting cases); *Bellinghausen v. Tractor Supply Co.,* 306

3  F.R.D 245, 267-68 (N.D. Cal. 2015) (approving $15,000 service payment where plaintiff took

4  on risk of retaliation, expended time participating in mediation and assisted counsel to

5  investigate the claims, and agreed to a general release of claims).

6  **D. Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable and Appropriate.**

7  Plaintiffs request that the Court approve a payment of one-third of the Gross Settlement

8  Amount, or $83,333.33, for attorneys' fees and expenses.  The amount requested is *inclusive* of

9  costs – which amount alone exceeds the amount requested in fees and expenses.  Olivier Decl.

10  ¶ 35.  The requested fees and costs award is warranted under the relevant legal standards and is

11  reasonable in light of the results achieved by the Settlement.

12  Counsel are entitled to an award of reasonable attorneys' fees and costs under the fee-

13  shifting provisions of PAGA.  *See* Lab. Code § 2699(g)(1) ("Any employee who prevails in

14  any [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs[.]").  A

15  primary purpose of statutory fee-shifting is "encouraging attorneys to act as private attorneys

16  general and to vindicate important rights affecting the public interest." *Ketchum v. Moses*, 24

17  Cal. 4th 1122, 1133-34 (2001). To further this aim, "fee awards should be fully compensatory."

18  *Id.* at 1133.

19  Counsel are also entitled to recover attorneys' fees under California's common fund

20  doctrine. "California has long recognized . . . the propriety of awarding an attorney fee to a

21  party who has recovered or preserved a monetary fund for the benefit of himself or herself and

22  others." *Laffitte v. Robert Half Int'l, Inc.,* 1 Cal.5th 480, 488-89 (2016); *see also Quinn v. State*

23  *of Calif.,* 15 Cal.3d 162, 167 (1995) ("[O]ne who expends attorneys' fees in winning a suit

24  which creates a fund from which others derive benefits, may require those passive beneficiaries

25  to bear a fair share of the litigation costs.").

26  In line with past similar cases, Plaintiffs seek the benchmark fee of one-third of the

27  common fund. California state and federal courts routinely award attorneys' fees equaling one-

28

1   third of the common fund. *See, e.g.*, *Laffitte*, 1 Cal. 5th at 485 (affirming fee award of one-third

2   of the common fund); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009)

3   ("Empirical studies show that, regardless whether the percentage method or the lodestar

4   method is used, fee awards in class actions average around one-third of the recovery." (internal

5   quotation marks omitted); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (same);

6   *Cicero v. DirecTV, Inc.,* No. 07 Civ. 1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010)

7   (California district courts "usually award attorneys' fees in the 30-40% range in wage and hour

8   class actions that result in recovery of a common fund under $10 million"); *Bennett v.*

9   *SimplexGrinnell LP,* No. 11 Civ. 01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015)

10  (38.8%; $4.9 million fund).

11      Not only is Plaintiff's Counsel's requested fee within the ordinary range approved by

12  courts, but it is amply justified under the factors courts consider in assessing a request for

13  attorneys' fees.  When assessing the reasonableness of a fee award under the common fund

14  approach, courts consider "all of the circumstances of the case," including the results achieved,

15  the risk of litigation, the skill required and the quality of work, the contingent nature of the fee

16  and the financial burden carried by the plaintiffs, and the time and labor required. (*See*

17  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Laffitte*, 1 Cal.5th at 504

18  ("Before approving the settlement agreement and percentage fee award in this case, the trial

19  court supplemented its own familiarity with the case by obtaining additional information from

20  class counsel on the risks and potential value of the litigation; the court carefully considered

21  that information on contingency, novelty and difficulty together with the skill shown by

22  counsel, the number of hours worked and the asserted hourly rates"].)

23      As detailed in this motion and in the declaration submitted with this motion, Plaintiffs'

24  request for attorneys' fees and costs is reasonable and well-supported given these

25  considerations.

26

27

28

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO

1

### 1. Counsel Secured an Excellent Settlement for the State and Aggrieved Employees While Assuming Significant Risk in Litigating This Action.

In light of the difficulties faced in this action, and the challenges specific to the PAGA claims, counsel secured a fair and reasonable settlement that confers a substantial benefit on the State and Aggrieved Employees.

As detailed above, the Settlement will result in a payment of over $100,000 to the State. In addition, 83 Aggrieved Employees shall receive a proportion of their allocated amount, from $50 to more than $4,700, depending on whether they litigated their individual claims (and thus obtained additional sums from those claims), and if not, depending on the amount of days performing work for FAS. The total value of the Settlement is more than 10% of the total value of the PAGA claim. The payments will be made directly to the State and Aggrieved Employees, with no reversionary amount to FAS, and no claims process required.

Counsel secured this result while litigating this case on completely contingent basis. Olivier Decl. ¶ 36; Miller Decl. ¶ 21. Counsel took this case without any assurance of being awarded fees or reimbursed any costs for efforts or expenditures. Olivier Decl. ¶ 36; Miller Decl. ¶ 21. At the outset, Counsel had no way of anticipating the course taken by this case. In spite of this, Counsel took the case on with every intent of expending all necessary hours and out-of-pocket expenses to ensure vindication of the rights at issue. *Id.* As this Court well knows, litigation of this action has been anything but straightforward. But counsel persevered, continuing to vigorously advocate on behalf of Plaintiffs, the State, and the Aggrieved Employees.

The skill and determination that Counsel has shown throughout the case, as well as the risks incurred, justifies the requested attorneys' fees and costs.

### 2. Counsel's Time Was Reasonably Spent.

A lodestar cross-check further confirms that the fee award requested is reasonable in this case. Courts may use the lodestar method to "cross-check" the percentage-of-the-fund

14

approach. *See Laffitte,* 1 Cal. 5th at 505 ("A lodestar cross-check is simply a quantitative method for bringing a measure of the time spent by counsel into the trial court's reasonableness determination."); *Vizcaino,* 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). In conducting a lodestar cross-check, the court is not "required to closely scrutinize each claimed attorney-hour." *Id.* An evaluation may be done by reviewing "counsel declarations summarizing overall time spent." *Laffitte,* 1 Cal. 5th at 505; *see Syers Properties III, Inc. v. Rankin,* 226 Cal. App. 4th 691, 698 (2014) (courts "do not require detailed time records, and trial courts have discretion to award fees based on declarations of Counsel describing the work they have done and the court's own view of the number of hours reasonably spent."); N.D.Cal., L.R. 54-5.

Counsel has been working on this action for over a decade.  Olivier Decl. ¶ 37.  For purposes of this motion, however, counsel focuses on the period after the Ninth Circuit issued its opinion in July 2022 until the present (when all the work material to this motion was performed).  During that time period, the law firms of Miller Shah LLP and Olivier & Schreiber PC have a total combined lodestar for work done in prosecution of the PAGA claim of $251,164.58.[3]  An award of $83,333.33 in fees results in a negative multiplier of .33 (i.e., the award is 1/3 of the lodestar amount), even before costs, which are also included in the amount requested, are incorporated.

Generally, an attorney's hours are justified if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client."  (*Hensley v. Eckerhart,* 461 U.S. 424, 431  (1983); *see Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1112; *see also Ketchum,* 24 Cal. 4th at 1133; *Vo v. Las Virgenes Mun. Water Dist.,* 79 Cal. App. 4th 440, 446-47 (2000).

---

[3] This number was determined by taking 5% of the total lodestar attributable to work done on behalf of Plaintiffs and the Aggrieved Employees in the consolidated actions since July 2022 (over $5M representing over 9,700 hours), which Plaintiffs submit is a reasonable allocation of the work related to the PAGA claims.  Olivier Decl. ¶ 38; Miller Decl. ¶ 23.

Categories of legal work that are compensable include ordinary litigation activities: "correspondences and telephone conferences with opposing counsel, legal research, drafting legal documents, reviewing opposing counsel's filings, and preparation for and attending hearings." (*MBNA America Bank, N.A. v. Gorman*, 147 Cal. App. 4th Supp. 1, 12 (2006); *Citizens Against Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213, 234 (1983) (research, preparation for oral arguments, and drafting motions).

Counsel's lodestar attributable to the PAGA claims is over $250,000, or approximately 5% of the total lodestar generated by counsel in prosecution of the consolidated actions since February 2023 through the present. Work performed by counsel in furtherance of the PAGA claims includes: (1) reviewing documents produced by FAS relating to the Aggrieved Employees; (2) defending the depositions of Aggrieved Employees; (3) working with Plaintiffs and Aggrieved Employees on fact development and discovery pertinent to the PAGA claims; (4) conducting legal research specific to the PAGA claims; (5) developing models to calculate the PAGA penalties; and (6) negotiating the PAGA settlement. *See* Olivier Decl. ¶¶ 39; Declaration of James E. Miller in Support of Motion for Approval of PAGA Settlement ("Miller Decl.") ¶ 25. Using a blended rate of $512 per hour, Counsel's $250,000 lodestar represents 490 hours spent litigating and settling the PAGA claims. Olivier Decl. ¶ 40. Plaintiffs are requesting one third of that lodestar as payment for attorneys' fees from the PAGA settlement.

The number of hours Plaintiffs' Counsel spent litigating and settling Plaintiffs' claims is reasonable and was required by the circumstances of the case. Counsel's sworn declarations describe the time spent in the successful prosecution and settlement of this action. Olivier Decl. ¶¶ 39-41; Miller Decl. ¶¶ 25-27. As Counsel's declarations make clear, the time reported was devoted to necessary and worthwhile litigation tasks, including conducting discovery, defending depositions, engaging in discovery and dispositive motion practice, and negotiating this Settlement. Olivier Decl. ¶¶ 39-41; Miller Decl. ¶¶ 25-27. Counsel prosecuted the claims efficiently, making every effort to prevent the duplication of work among the firms. *Id.*

1  Further, tasks were delegated appropriately among partners, associate attorneys and other staff

2  according to their complexity.  *Id.*  All of the work performed by the timekeepers in this matter

3  is described in detail in the declarations of counsel. Olivier Decl. ¶¶ 45-49; Miller Decl. ¶¶ 8,

4  18.

5      Typically, a positive multiplier to the lodestar would be warranted and appropriate here

6  before any cross-check is performed.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (noting that

7  multiples ranging from 1.0 to 4.0 are frequently awarded in common fund cases; affirming

8  order awarding common fund fees where lodestar cross-check resulted in a multiplier of 3.65);

9  *Ketchum*, 24 Cal. 4th at 1132.  However, here, although a positive multiplier would be

10 warranted, it is not necessary to apply one –Counsel's lodestar *without* a multiplier exceeds, by

11 over 2x, the $83,333.33 that Counsel seek as fees compensation.  That is, Counsel's lodestar

12 attributable to the PAGA claim already *exceeds* the percentage of the fund that is being sought

13 under the terms of the Settlement.  The one-third percentage of the common fund sought is

14 only 33% of the PAGA lodestar, i.e., a *negative* multiplier.

15     Accordingly, Plaintiffs respectfully request that the Court approve $83,333.33 in fees to

16 Counsel, which is reasonable and justified on a percentage-basis and supported by a lodestar

17 cross-check.

18             **3.  Counsel's Hourly Rates Are Reasonable.**

19     Under California law, Plaintiffs' attorneys are entitled to their requested rates if those

20 rates are "within the range of reasonable rates charged by and judicially awarded comparable

21 attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta,* 97 Cal. App. 4th 740,

22 783 (2002); *see also Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008)  ("the

23 established standard when determining a reasonable hourly rate is the 'rate prevailing in the

24 community for similar work performed by attorneys of comparable skill, experience, and

25 reputation'") (citation omitted). The relevant community for purposes of determining the

26 prevailing market rate is generally "that where the court is located."  *Altavion v. Konica*

27 *Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 71 (2014).

28

1    Here, the billing rates of Plaintiffs' attorneys are commensurate with the prevailing

2    rates in Northern California for attorneys with comparable skill and experience.  Counsel's

3    experience varies from two years to over thirty years of practice, with hourly billing rates that

4    range from $375 to $1300.  In support of Counsel's hourly rates, Counsel have submitted

5    declarations discussing their qualifications and those of their staff.  *See* Olivier Decl. ¶¶ 13-21;

6    Miller Decl. ¶¶ 3-7, 18.  *See Mandel v. Lackner*, 92 Cal. App. 3d 747, 761 (1979) ("The value

7    of an attorney's time generally is reflected in his normal billing rate."].)  Courts routinely

8    approve Counsel's hourly rates and those rates are the same as those charged to paying clients.

9    Olivier Decl. ¶ 51; Miller Decl. ¶ 13.

10    Counsel's billing rates are also commensurate with prevailing rates in the San

11    Francisco Bay Area for attorneys with comparable skill and experience litigating class and

12    representative actions.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018

13    WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving for purposes of lodestar cross-check

14    rates ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates,

15    and $245 to $350 for paralegals in securities class action).

16    Therefore, the rates sought by Counsel are well within the range of reasonableness for

17    attorneys and staff at their respective levels of experience.

### 4.  Plaintiffs' Counsel's Request for Costs Is Reasonable.

19    In the course of this litigation, Plaintiffs' Counsel incurred out-of-pocket costs of

20    approximately $152,434.57. Olivier Decl. ¶ 42; Miller Decl. ¶ 15.  Those costs represent all

21    costs pertaining to the consolidated actions after February 22, 2023 and include filing fees,

22    deposition transcript fees, expert analysis fees, service of process fees, mailing charges, and

23    other costs typical of litigation of this nature.  *Id.*  As with Plaintiffs' request for attorneys'

24    fees, Plaintiffs attribute 5% of total costs in the consolidated actions, or $ $7,621.73, to the

25    PAGA claims.

26    Such costs are appropriate for cost reimbursement. *See Thomas v. MagnaChip*

27    *Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (typical litigation

28

18

1  costs include "photocopying, printing, postage, court costs, research on online databases,

2  experts and consultants, and reasonable travel expenses"); *In re Toys R Us-Delaware, Inc. Fair*

3  *& Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 469 (C.D. Cal. 2014)

4  ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance

5  telephone calls, computer legal research, postage, courier service, mediation, exhibits,

6  documents scanning, and visual equipment are typically recoverable"); *Sci. App. Int'l Corp. v.*

7  *Superior Court,* 39 Cal. App. 4th 1095, 1103 (1995) (courts have discretion to award

8  reimbursement for costs if they are reasonably necessary to the conduct of the litigation, rather

9  than merely convenient or beneficial to its preparation).

10     The costs incurred by Plaintiffs' Counsel benefited Plaintiffs, aggrieved employees, and

11  the State.  Plaintiffs' Counsel's cost request is reasonable and represents the costs that

12  Plaintiffs' Counsel were required to incur to prosecute this action and should therefore be

13  granted.

14     **E.  The Settlement Administrator Fees Are Reasonable and Appropriate.**

15     The settlement administrator has estimated that it will incur fees of approximately

16  $8,815 and has agreed to cap its fees at $9,950 to perform the work required of it under the

17  Settlement Agreement. This work includes confirming mailing addresses, confirming the

18  amounts of each Aggrieved Employee's settlement payment, mailing the payments, making

19  any required tax filings, establishing a Qualified Settlement Fund ("QSF"), periodically

20  providing reports to the parties updating them on the status of its administration duties, and if

21  requested by the Court, preparing, and submitting to the parties, a signed declaration suitable

22  for filing in Court attesting to its disbursement of all payments required under the Settlement.

23  **V.     CONCLUSION**

24     For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order:

25  (1) approving the proposed PAGA Settlement; (2) approving the requested case contribution

26  payments to Plaintiffs; (3) granting Plaintiffs' request for attorneys' fees and costs in the

27  amount of $83,333.33; and (4) approving the settlement administration fees.

28

Dated: February 19, 2025

Respectfully submitted,

OLIVIER & SCHREIBER PC
MILLER SHAH LLP

By: /s/ *Monique Olivier*
        Monique Olivier

Anna K. D'Agostino (*admitted PHV*)
akdagostino@millershah.com
**MILLER SHAH LLP**
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (877) 540-5505

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT
CASE NO.:13-CV-00057-WHO